## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

RAFFEL SYSTEMS, LLC,

        Plaintiff,

    v.

MAN WAH HOLDINGS LTD., INC.,
MAN WAH (USA) INC., AND
XYZ COMPANIES 1-10.

        Defendants.

Case No. 2:18-cv-01765

**JURY TRIAL DEMANDED**

---

## COMPLAINT
---

Plaintiff Raffel Systems, LLC ("Raffel" or "Plaintiff"), by its undersigned counsel, and for its Complaint against Defendants Man Wah Holdings Limited, Inc., Man Wah (USA) Inc., and XYZ Companies 1-10 (collectively "Defendants").

## <u>NATURE OF THE ACTION</u>

1.      This is a civil action for patent infringement, false marking, trade dress infringement, unfair competition and false designation of origin, trade dress dilution, false representation of fact, and misappropriation under federal law and Wisconsin state law resulting from: (i) Defendants' unauthorized manufacturing, causing to be manufactured, selling, offering for sale, and/or importing into the United States counterfeit cup holder products made to imitate Raffel's cup holder products with the intent to deceive consumers as to their origin; (ii) Defendants' false marking of counterfeit cup holder products; (iii) Defendants' manufacturing, causing to be manufactured, selling, offering for sale, and/or importing into the United States cup

1

holder products and theater seating arrangements containing the cup holder products which are not authorized by Raffel; (iv) Defendants' manufacturing, causing to be manufactured, selling, offering for sale, importing into the United States, and/or distributing, without Raffel's authorization, cup holder products which blatantly infringe an issued cup holder design patent owned by Raffel; and (v) Defendants' manufacturing, causing to be manufactured, selling, offering for sale, importing into the United States, and/or distributing, without Raffel's authorization, switches which blatantly infringe an issued switch design patent owned by Raffel.

2.     Raffel's claims arise under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), the patent laws of the United States 35 U.S.C. §§101, *et seq.*, federal common law, and under Wisconsin statutory law.

3.     Raffel seeks to enjoin Defendants from the continued distribution of counterfeit products, which pose a threat to consumer safety and to Raffel's reputation, and seeks monetary and punitive damages for Defendants' unlawful importation, offer for sale, sale, and distribution of counterfeit cup holder products and Defendants' unauthorized and illegal acts.

**PARTIES**

4.     Raffel is incorporated under the laws of the state of Wisconsin and has its principal address at N112 W14600 Mequon Road, Germantown, WI 53022.

5.     Upon information and belief, Man Wah Holdings Ltd. ("Man Wah Holdings") is a foreign corporation incorporated with limited liability in Bermuda, with a registered office at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda. Man Wah Holdings has a principal place of business at 1st Floor, Wah Lai Industrial Center,

2

10-14 Kwei Tei Street, Fotan, New Territories, Hong Kong. On information and belief, Man Wah Holdings is the sole owner or owns a controlling interest in Man Wah (USA), Inc., a Nevada corporation whose listed registered agent is Silver State Legal, 4625 West Nevso Drive, Suite 2, Las Vegas, NV 89103.

6.     Upon information and belief, Man Wah (USA), Inc. is a corporation organized under the laws of the State of Nevada with its principal place of business at 688 North Main Street, High Point, NC 27260. Upon information and belief, Man Wah (USA), Inc. also operates under, does business as, or uses the name "Cheers" or "Cheers / Man Wah (USA), Inc." Man Wah Holdings Limited, Inc. and Man Wah (USA) Inc. are herein referred to collectively as "Man Wah" or "Defendants."

7.     Upon information and belief, Man Wah is acting in conjunction with various Defendant XYZ Companies whose identities are not presently known. If Defendant XYZ Companies identities become known, the Complaint herein will be amended to include the names of these companies.

## JURISDICTION AND VENUE

8.     Raffel's claims arise under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act"), the patent laws of the United States, 35 U.S.C. §§101, *et seq*., federal common law and Wisconsin state law. Therefore, this Court has jurisdiction over the subject matter pursuant to at least 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, and 1338(a) and (b). This Court has supplemental jurisdiction over Raffel's state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court has personal jurisdiction over Defendants because events giving rise to the causes of action alleged herein occurred and are occurring in this

3

district. Defendants' counterfeit products were purchased by independent, third party, *bona fide* purchasers who were fooled into thinking the counterfeit products were made by Raffel. These third party purchasers of counterfeit products contacted Raffel regarding defects, failures, and/or other non-working conditions of the counterfeit products. The third party purchases sent the counterfeit products to Raffel, demanding repair or replacement of the defective, counterfeit products at Raffel's expense. Upon inspecting the products, Raffel personnel determined that they were not made by Raffel, although the counterfeit products were marked with Raffel's patent numbers. The products themselves were articles of furniture made by Defendants and include one or more of Raffel's cup holders and/or switches. Defendants have, without the consent of Raffel, falsely marked their counterfeit products with the numbers of United States patents that are wholly owned and controlled by Raffel. As a result, Defendants are deceiving and inducing the public to believe that the counterfeit products are Raffel's products. Defendants do business in Wisconsin and within this district and/or have otherwise established contacts with Wisconsin making the exercise of personal jurisdiction proper. Defendants market, distribute, and/or sell counterfeit products throughout the United States, including to customers within this judicial district. Defendants market, distribute, and/or sell products that infringe one or more patents owned by Raffel throughout the United States, including to customers within this judicial district. Defendants derive substantial revenue from infringing and counterfeit products provided to customers, distributors and/or vendors residing in Wisconsin and in this district.

10.     Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and 1400: Defendant Man Wah Holdings Limited, Inc. is a foreign

corporation. Injuries from Defendants' actions have been and will continue to be felt in this district. A substantial part of the events and omissions giving rise to the claims herein have occurred in this district. Defendants are subject to personal jurisdiction in this district.

## BACKGROUND FACTS

11.     Raffel is a manufacturing company with a range of products in the seating, bedding, and industrial marketplaces.

12.     Raffel competes in various seating, bedding, and industrial markets. Raffel makes and markets cup holders, including Raffel's Home Theatre and Integrated Cup Holder products.

13.     Raffel has protected its technologies and designs through a broad range of intellectual property rights. Raffel holds over sixty patents related to seating arrangement components.

14.     Raffel is the owner by assignment of all right, title, and interest in and to U.S. Patent. No. 7,766,293 (hereinafter "the '293 Patent") entitled "Lighted Cup Holder for Seating Arrangements," issued on August 3, 2010. A true and complete copy of the '293 Patent is attached to the Complaint as Exhibit 1.

15.     Raffel is the owner by assignment of all right, title, and interest in and to U.S. Patent. No. 8,714,505 (hereinafter "the '505 Patent") entitled "Lighted Cup Holder for Seating Arrangements," issued on May 6, 2014. A true and complete copy of the '505 Patent is attached to the Complaint as Exhibit 2.

16.     Raffel is the owner by assignment of all right, title, and interest in and to U.S. Patent. No. 8,973,882 (hereinafter "the '882 Patent") entitled "Lighted Cup Holder

5

for Seating Arrangements," issued on March 10, 2015. A true and complete copy of the '882 Patent is attached to the Complaint as Exhibit 3.

17.     Raffel is the owner by assignment of all right, title, and interest in and to U.S. Patent. No. 10,051,968 (hereinafter "the '968 Patent") entitled "Lighted Cup Holder for Seating Arrangements," issued on August 21, 2018. A true and complete copy of the '968 Patent is attached to the Complaint as Exhibit 4.

18.     Raffel is the owner by assignment of all right, title, and interest in and to U.S. Patent. No. D643,252 (hereinafter "the '252 Patent") entitled "Cup Holder," issued on August 16, 2011. A true and complete copy of the '252 Patent is attached to the Complaint as Exhibit 5.

19.     Raffel is the owner by assignment of all right, title, and interest in and to U.S. Patent. No. D821,986 (hereinafter "the '986 Patent") entitled "Switch," issued on July 3, 2018. A true and complete copy of the '986 Patent is attached to the Complaint as Exhibit 6.

20.     For many years, Raffel has continuously engaged in the development, manufacture, and sale of theater and integrated cup holder products. Raffel created unique, distinctive, and non-functional designs for its integrated cup holder products.

21.     Raffel also holds trade dress rights relating to the source-identifying features of its integrated cup holder designs. Raffel has extensively and continuously promoted and sold its integrated cup holders for years, throughout in the United States generally and throughout Wisconsin specifically. Through that extensive and continuous promotion and use, Raffel's designs have become well-known indicators of the origin

and quality of Raffel's cup holder products. Raffel's cup holder designs have also acquired substantial secondary meaning in the marketplace.

22.    Raffel sells a variety of integrated cup holder products, including cup holders with the model numbers: "ICH LR TS BLK DIMP MW," "ICH LR HR TS BLK DIMP MW," and others model numbers (see Exhibit 19), each of which possesses an ornamental design encompassed by Raffel's '252 Patent and trade dress rights. Hereinafter these cup holder products are referred to as "Integrated Cup Holder (ICH) Products." Raffel has invested substantially in the design, development, manufacture, and marketing of Raffel's ICH Products.

23.    Raffel has expended significant resources in advertising and marketing the ICH Products.

24.    Raffel has enjoyed significant sales of the ICH Products throughout the United States, including to customers in the state of Wisconsin. Raffel's ICH Products are, and have been, the top-selling cup holder product in the motion furniture industry for over eight (8) years. Raffel's ICH Products are, and have been, essential components in many of the top-selling motion furniture pieces over the last eight (8) years, including the revolutionary "transformer"-style sofa, which is retailed by the vast majority of retail furniture outlets in the United States. Raffel's ICH Products are used by over thirty (30) furniture manufacturers.

25.    Raffel's ICH Products' designs have distinctive and non-functional features that identify to consumers that the origin of the ICH Products is Raffel. As a result of Raffel's continuous and exclusive use of its ICH Products, its marketing, advertising, and sales of the products, its enforcement of its intellectual property rights in

7

the products, and the highly valuable goodwill and substantial secondary meaning acquired as a result, Raffel owns trade dress rights in the designs and appearances of the ICH Products. Consumers have come to associate these designs with Raffel. Raffel's trade dress rights in the designs and appearances of its ICH Products are collectively referred to as "Raffel's Trade Dress."

26.     The '293 Patent, the '505 Patent, the '882 Patent, the '968 Patent, the '252 Patent, and the '986 Patent are presumed to be valid pursuant to 35 U.S.C. § 282(a).

27.     Raffel has enjoyed commercial success in the furniture industry via selling its patented cup holder products, selling its patented switches, and via licensing various third parties to use technology encompassed by Raffel's intellectual property.

### GENERAL ALLEGATIONS – DEFENDANTS' UNLAWFUL ACTIVITIES

28.     Without Raffel's permission, Defendants are making, using, offering for sale, selling, importing and/or distributing cup holder products and seating arrangements (*e.g.*, theater seating arrangements) containing cup holder products that are falsely marked to indicate that the cup holder products are manufactured by, originate from, are authorized by, and/or are licensed from Raffel (referred to herein as "Counterfeit Cup Holder Products"). At least some fraction of the cup holders and seating arrangements sold by Defendants are not made by Raffel, are not authorized by or licensed from Raffel, and do not originate from Raffel in any way.

29.     Specifically, Defendants are making, using, offering for sale, selling, importing and/or distributing Counterfeit Cup Holder Products that, unless disassembled to identify that they are not authentic Raffel products, are verbatim copies or very close imitations of Raffel's proprietary cup holder products.

8

30.     Affixed to Defendants' Counterfeit Cup Holder Products is a label that is an exact imitation of a label that Raffel affixes to its proprietary cup holders. The label recites the model number (MOD#) of the product and the purchase order number (PO#) of the product, followed by its manufacture date, along with the relevant number(s) of the U.S. Patent(s) that cover Raffel's products. The patent numbers listed in the Defendants' Counterfeit Cup Holder Products identify patents wholly owned by Raffel.

31.     Also affixed to Defendants' Counterfeit Cup Holder Products is an inspection sticker that is an exact imitation of the inspection sticker Raffel affixes to its proprietary cup holder products. A comparison of an authentic cup holder proprietary to Raffel and a Defendants' Counterfeit Cup Holder Product is attached hereto as Exhibit 7.

32.     Defendants are making, using, offering for sale, selling, importing, and/or distributing falsely marked, Counterfeit Cup Holder Products with the intent to fraudulently deceive consumers into believing that the cup holder products are Raffel products.

33.     Defendants have deceived consumers to believe that Defendants' Counterfeit Cup Holder Products are Raffel products.

34.     On September 7, 2018, Raffel was contacted by an employee of Flatrock Furniture, Pulaski TN, regarding a cup holder that had failed in a "Cheers Power Recliner" manufactured by Man Wah. The Flatrock employee requested a replacement cup holder. Upon Raffel's inspection of the failed cup holder, Raffel identified the cup holder as a counterfeit. See Exhibit 8. Exhibit 8 is a series of photographs showing the defective "Cheers Power Recliner" that was shipped from Flatrock Furniture to Raffel for

9

repair. Included in Exhibit 8 is a series of photographs depicting the defective Counterfeit Cup Holder and its associated electronic controls.

35.     The failed cup holder in the Cheers Power Recliner manufactured by Man Wah is an exact copy of Raffel's proprietary cup holder model "ICH LR TS BLK DIMP MW." Affixed to Defendants' Counterfeit Cup Holder Product was a label identical to a label that Raffel affixes to its proprietary cup holders that recites the model number (MOD#) and the purchase order number (PO#), followed by the manufacture date, and the numbers of the relevant U.S. patents covering the product. The patent numbers listed identify patents wholly owned by Raffel. Also affixed to Defendants' Counterfeit Cup Holder Product was an inspection sticker identical to the inspection sticker Raffel affixes to its proprietary cup holders. See the second page, middle photograph of Exhibit 8.

36.     The employee of Flatrock Furniture believed the Counterfeit Cup Holder Product to be a Raffel cup holder. The employee of Flatrock Furniture contacted Raffel to have the defective, Counterfeit Cup Holder repaired or replaced, again thinking that the cup holder was made by Raffel. The cup holder was not made by Raffel.

37.     The Cheers Power Recliner contained a second, different, Counterfeit Cup Holder Product. This second Counterfeit Cup Holder was also a slavish copy of Raffel's proprietary cup holder model "PN ICH S BLK LP DIMP MW." This cup holder design includes a light ring controlled by a switch located in the first counterfeit cup holder. Affixed to the second Counterfeit Cup Holder Product was a label identical to a label that Raffel affixes to its proprietary cup holders. Again, this label recites the model number (MOD#), the purchase order number (PO#), the date of manufacture, and the relevant U.S. Patent numbers. The patent numbers listed identify patents wholly owned by Raffel.

10

Also affixed to second Defendants' Counterfeit Cup Holder Product was an inspection sticker identical to the inspection sticker Raffel affixes to its proprietary cup holders. See Exhibit 8.

38.     Upon Raffel's inspection of Defendants' Counterfeit Cup Holder Products, Raffel observed that there had been an electrical failure that caused charring and burning of the cup holder apparatus, including failure of a circuit board to which Defendants' Counterfeit Cup Holder Products were attached through electrical cords.

39.     Both of Defendants' Counterfeit Cup Holder Products present in the Cheers Power Recliner were made and sold with the intent to fraudulently deceive purchasers into believing that Defendants' Counterfeit Cup Holder Products are Raffel products.

40.     By Defendants' acts, purchasers of the Cheers Power Recliner were falsely led to believe that Defendants' Counterfeit Cup Holder Products present in the Cheers Power Recliner were Raffel cup holder products.

41.     On September 18, 2018, Raffel received a phone call from a consumer requesting two replacement cup holders for a sofa marketed and sold to him under the "Pulsar" brand name. The Pulsar brand is manufactured by Man Wah. The consumer purchased the Pulsar-brand sofa from Value City Furniture, Glen Burnie, MD. Raffel requested the consumer send the cup holders to Raffel. According to the consumer, the cup holders had failed to work.

42.     Upon Raffel's inspection of the failed cup holders, Raffel identified the cup holders present in the Pulsar furniture as Counterfeit Cup Holder Products. See

11

Exhibit 9, which is a series of photographs of the failed cup holders described in paragraph 41.

43.     The failed Counterfeit Cup Holder Products present in the Pulsar-brand sofa manufactured by Man Wah were copies of Raffel's proprietary cup holder model "ICH LR HR TS BLK DIMP MW." Affixed to Defendants' Counterfeit Cup Holder Products was a label identical to a label that Raffel affixes to its proprietary cup holders. Again, the label recites the model number (MOD#), the purchase order number (PO#), the date of manufacture date, and the relevant U.S. patent numbers. The listed patent numbers identify patents owned by Raffel. Also affixed to Defendants' Counterfeit Cup Holder Products was an inspection sticker identical to the inspection sticker Raffel affixes to its proprietary cup holders.

44.     The customer that purchased the Pulsar sofa believed Defendants' Counterfeit Cup Holder Products were Raffel cup holders as evidenced by the fact that he contacted Raffel when the Counterfeit Cup Holder Products failed.

45.     Both Counterfeit Cup Holder Products present in the Pulsar sofa were made and sold with the intent to fraudulently deceive purchasers into believing that the cup holder products are Raffel products.

46.     Purchasers of the Pulsar sofa believed that Defendants' Counterfeit Cup Holder Products present in the Pulsar sofa were Raffel cup holder products.

47.     On September 24, 2018, Raffel purchased a Man Wah Pulsar Dual Power Sofa from Value City Furniture, 22 Mountain Road, Glen Burnie, MD 21060. The following are the specifics of this particular Man Wah Pulsar Dual Power Sofa:

Value City SKU – 1787969

Name of Piece of Furniture – Pulsar Dual Power Sofa

Model Number – X9990M-L32ETL-PB

Manufacture Date – Manufactured by Man Wah (Cheers) on 5/31/2018.

48.     The Pulsar Sofa was delivered by Value City to Raffel. Upon inspection, Raffel identified that the sofa contained two counterfeit "ICH LR HR TS BLK DIMP MW" cup holders (Counterfeit Cup Holder Products) See Exhibit 10, which is a series of photographs of the Counter Cup Holders found in the Pulsar Dual Power Sofa.

49.     The Counterfeit Cup Holder Products present in the Pulsar Sofa manufactured by Man Wah are near-verbatim copies of Raffel's proprietary cup holder model "ICH LR HR TS BLK DIMP MW." Affixed to each of the Counterfeit Cup Holder Products was a label identical to the label Raffel affixes to its proprietary cup. The label recites the model number (MOD#), the purchase order number (PO#), the date of manufacture, and the numbers of the relevant U.S. patents. The patent numbers listed identify patents owned by Raffel. Also affixed to each Counterfeit Cup Holder Product was an inspection sticker identical to the inspection sticker Raffel affixes to its proprietary cup holders.

50.     Both Counterfeit Cup Holder Products present in the Pulsar sofa were made and sold with the intent to fraudulently deceive purchasers into believing that the cup holder products are Raffel products.

51.     On October 1, 2018, Raffel purchased a Man Wah Transporter Power Recline sofa from Steinhafels Furniture, W231 N1013 County Hwy F, Waukesha, WI 53186. The following are the specifics of this Man Wah Transporter Power Recline sofa:

Steinhafel SKU – 392302560

13

Name of Piece of Furniture – Transporter Power Recline Sofa

Model Number – X9990M

Manufacture Date – Manufactured by Man Wah (Cheers), July 2018.

52.     The Transporter sofa contained two integrated cup holders. Raffel identified the right side facing (RSF) cup holder as an authentic Raffel "ICH LR HR TS BLK DIMP MW" cup holder. Raffel identified the left side facing (LSF) cup holder as a counterfeit "ICH LR HR TS BLK DIMP MW" cup holder. See Exhibit 11, which is a series of photographs of the Transporter-brand sofa and the cup holders integrated into the sofa.

53     The Counterfeit Cup Holder Product in the Transporter sofa manufactured by Man Wah is a near-verbatim copy Raffel's proprietary cup holder model "ICH LR HR TS BLK DIMP MW." Affixed to the Counterfeit Cup Holder Product was a label identical to the label that Raffel affixes to its proprietary cup holders. As in the other counterfeit products, the label recites the model number (MOD#), the purchase order number (PO#), the date of manufacture, and the numbers of the relevant U.S. patents. The patent numbers listed identify patents owned by Raffel. Also affixed to each Counterfeit Cup Holder Product was an inspection sticker identical to the inspection sticker Raffel affixes to its proprietary cup holders.

54.     The Counterfeit Cup Holder Product present in the Transporter sofa was made and sold with the intent to fraudulently deceive purchasers into believing that the cup holder product is a Raffel product.

55.     Without Raffel's permission, Defendants are making, using, offering for sale, selling, and/or importing components utilized in conjunction with Defendants'

14

Counterfeit Cup Holder Products that are marked to indicate that the components are manufactured by, originate from, are authorized by, and/or licensed from Raffel. These components are referred to herein as "Counterfeit Components." The Counterfeit Components are not Raffel's, are not authorized by Raffel, do not originate from Raffel in any way, nor from a party authorized by Raffel.

56. Defendants are making, using, offering for sale, selling, importing and/or distributing counterfeit cord harnesses (hereinafter "Counterfeit Cord Harness(es)" that are verbatim or near-verbatim copies Raffel's cord harnesses. Affixed to each Counterfeit Cord Harness is a label that is a slavish copy of a label that Raffel affixes to its cord harness component. Both Raffel's *bona fide* label and the counterfeit label recite the model number (MOD#), the purchase order number (PO#), and the date of manufacture.

57. On October 1, 2018, Raffel purchased a Man Wah Transporter Power Recline sofa from Steinhafels Furniture, W231 N1013 County Hwy F, Waukesha, WI 53186. The following are the specifics of this piece of furniture:

Steinhafel SKU – 392302560

Name of Piece of Furniture – Transporter Power Recline Sofa

Model Number – X9990M

Manufacture Date – Manufactured by Man Wah (Cheers), July 2018.

58. As described above, the Transporter sofa contained one authentic Raffel "ICH LR HR TS BLK DIMP MW" cup holder and one Counterfeit Cup Holder Product (a counterfeit "ICH LR HR TS BLK DIMP MW" cup holder). (See paragraphs 51-54, above, and Exhibit 11).

15

59. The Transporter sofa contained two separate, Counterfeit Cord Harnesses, one attached to the authentic Raffel cup holder and one attached to the Counterfeit Cup Holder Product. (See Exhibit 12, which is a series of photos of the Counterfeit Cord Harnesses).

60. Defendants are making, using, offering for sale, selling, importing and/or distributing the Counterfeit Cord Harnesses with the intent to fraudulently deceive consumers into believing that the Counterfeit Cord Harnesses are Raffel products.

61. Defendants are not authorized to manufacture, sell, offer to sell, import and/or distribute products that fall within the scope of one or more claims of the Asserted Patents.

62. Without Raffel's permission, Defendants are making, using, offering for sale, selling, and/or importing cup holder products and seating arrangements (*e.g.*, theater seating arrangements) containing cup holder products that constitute direct infringement of one or more claims of the Asserted Patents and/or induces or contributes to indirect infringement of the Asserted Patents by Defendants and/or Defendants' distributors, vendors, retailers, and/or customers.

63. Upon information and belief, Man Wah is a producer and supplier in the home furnishings and home theater seating industry that makes, sells, offers to sell, imports, and distributes a variety of home furnishing goods containing integrated cup holder products.

64. Upon information and belief, Defendant Man Wah made, used, sold, offered for sale, imported and/or distributed a wide variety of items including home furnishing goods containing cup holder products including, but not limited to, Man

16

Wah's furniture products including power recline home theater chairs, loveseats, and sofas sold under the "Cheers" brand name, under the "Pulsar" brand name, under the "Transporter" brand name, under the "Nicholas" brand name, and under other brand names to be identified, in the United States, in Wisconsin, and in the Eastern District of Wisconsin.

65.     Upon information and belief, Man Wah has infringed (literally and/or under the doctrine of equivalents) and continues to infringe at least one claim of the '293 Patent by making, importing, selling, and/or offering to sell Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products, each of which contain one or more cup holder apparatuses covered by at least claims 1, 10, and 12 of the '293 Patent, within the United States, and/or by contributing to or inducing such infringement.

66.     Claim 1 of the '293 Patent recites:

> 1. A lighted cup holder apparatus for a seating arrangement, the apparatus comprising:
> at least one lighted cup holder having a cup holder body and a light-producing light source, with the cup holder body being adapted for attachment to the seating arrangement and having a cup receptacle therein, and the light-producing light source being disposed within the receptacle for illuminating the receptacle;
> and a lighted element disposed within the cup receptacle and operatively connected to the light source for receiving light from the light source and illuminating the receptacle; wherein the lighted element comprises an elongated member of translucent material having the light source attached thereto;
> wherein the cup holder body includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle, and wherein the side wall or the bottom wall include one or more slots or holes therethrough;
> wherein the lighted element is attached within the receptacle adjacent to the bottom wall of the cup holder body and mounted upon a mounting surface, the tubular sidewall is stepped inward adjacent to the bottom wall to form the mounting surface.

17

67.     Man Wah's seating arrangement products including Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products each include a lighted cup holder apparatus comprising at least one lighted cup holder having a cup holder body and a light-producing light source, with the cup holder body being adapted for attachment to the seating arrangement and having a cup receptacle therein, and the light-producing light source being disposed within the receptacle for illuminating the receptacle.

68.     The lighted cup holder apparatus of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products each have a lighted element disposed within the cup receptacle and operatively connected to the light source for receiving light from the light source and illuminating the receptacle, wherein the lighted element comprises an elongated member of translucent material having the light source attached thereto.

69.     The lighted cup holder apparatus of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products each have a cup holder body that includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle, and wherein the side wall or the bottom wall include one or more slots or holes therethrough.

70.     The lighted cup holder apparatus of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products each have the lighted element attached within the receptacle adjacent to the bottom wall of the cup holder body and mounted upon a mounting surface, the tubular sidewall being stepped inward adjacent to the bottom wall to form the mounting surface.

18

71.     Exemplary pieces of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products are shown in Exhibit 13.

72.     The Claim Chart attached as Exhibit 14 describes how Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products infringe at least Claims 1, 10, and 12 of the '293 Patent.

73.     Upon information and belief, Man Wah has infringed (literally and/or under the doctrine of equivalents) and continues to infringe at least one claim of the '505 Patent by importing, selling, and/or offering to sell Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products, each of which contain one or more cup holder apparatuses covered by at least claims 1, 2, and 3 of the '505 Patent, within the United States, and/or by contributing to or inducing such infringement.

95.     Claim 1 of the '505 Patent recites:

> A cup holder apparatus for a seating arrangement, the apparatus comprising:
> a) a cup holder body adapted for attachment to the seating arrangement and having a cup receptacle therein, wherein the cup holder body includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle; and
> b) a flange extending substantially radially outward from the tubular side wall at the open top end of the cup holder, wherein the flange comprises a control switch, wherein the control switch is operatively linked to and controls:
> > i) a powered reclining mechanism of the seating arrangement, or
> > ii) a massaging mechanism of the seating arrangement.

74.     Man Wah's seating arrangement products including Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products each include a cup holder apparatus comprising a cup holder body adapted for attachment to the seating arrangement and

19

having a cup receptacle therein, wherein the cup holder body includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle.

75.     Each cup holder apparatus integral to Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products has a flange extending substantially radially outward from the tubular side wall at the open top end of the cup holder that includes a control switch that is operatively linked to and controls a powered reclining mechanism or a massage mechanism of the seating arrangement.

76.     A control switch present in the flange of a cup holder apparatus attached to a Man Wah seating arrangement such as a Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating arrangement is an integral component of the entire seating arrangement product in that the control switch is operatively linked to and controls a power recline component of the seating arrangement or a massage component of the seating arrangement.

77.     Exemplary pieces of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products are shown in Exhibit 13.

78.     The Claim Chart attached as Exhibit 15 describes how Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products infringe at least Claims 1, 2, and 3 of the '505 Patent.

79.     Upon information and belief, Man Wah has infringed (literally and/or under the doctrine of equivalents) and continues to infringe at least one claim of the '882 Patent by importing, selling, and/or offering to sell Man Wah's Cheers-, Pulsar-,

20

Transporter-, and Nicholas-branded seating products, each of which contain one or more cup holder apparatuses covered by at least Claims 1, 2, 3, 12, and 13 of the '882 Patent, within the United States, and/or by contributing to or inducing such infringement.

80.     Claim 1 of the '882 Patent recites:

A cup holder apparatus for a seating arrangement, the apparatus comprising:
a) a cup holder body adapted for attachment to the seating arrangement and having a cup receptacle therein wherein the cup holder body includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle; and
b) a flange extending substantially radially outward from the tubular side wall at the open top end of the cup holder, wherein the flange comprises a control switch that is operatively linked to and controls a component of the seating arrangement other than the cup holder apparatus.

81.     Man Wah's seating arrangement products, including Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products, each include a cup holder body adapted for attachment to the seating arrangement and having a cup receptacle therein wherein the cup holder body includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle.

82.     Each cup holder apparatus integral to Man Wah's Cheers, Pulsar, Transporter, and Nicholas seating products has a flange extending substantially radially outward from the tubular side wall at the open top end of the cup holder, wherein the flange comprises a control switch that is operatively linked to and controls a component of the seating arrangement other than the cup holder apparatus.

83.     A control switch present in the flange of a cup holder apparatus attached to a Man Wah seating arrangement such as a Cheers, Pulsar, Transporter, and Nicholas

seating arrangement is an integral component of the entire seating arrangement product in that the control switch is operatively linked to and controls a component of the seating arrangement such as a power recline component of the seating arrangement, a massage component of the seating arrangement, or a light producing light source of the seating arrangement

84. Exemplary pieces of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products are shown in Exhibit 13.

85. The Claim Chart attached as Exhibit 16 describes how Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products infringe at least Claims 1, 2, 3, 12, and 13, of the '882 Patent.

86. Upon information and belief, Man Wah has infringed (literally and/or under the doctrine of equivalents) and continues to infringe the '968 Patent by importing, selling, and/or offering to sell Man Wah's Cheers, Pulsar, Transporter, and Nicholas seating products, each of which is a movie theater seating arrangement covered by at least claims 9, 10, 11, and 13, of the '968 Patent, within the United States, and/or by contributing to or inducing such infringement.

87. Claim 1 of the '968 Patent recites:

1. A movie theater seating arrangement comprising a cup holder apparatus, the cup holder apparatus comprising
a) a cup holder body adapted for attachment to the seating arrangement and having a cup receptacle therein, wherein the cup holder body includes a substantially tubular sidewall, closed or substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle; and
b) a flange extending substantially radially outward from the top end of the cup holder body, wherein the flange comprises a control switch that is operatively linked to and controls a component of the seating arrangement other than the cup holder apparatus.

22

88.     Man Wah's seating arrangement products, including the Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products, are each theater seating arrangements containing a cup holder apparatus comprising a cup holder body adapted for attachment to the seating arrangement and having a cup receptacle therein wherein the cup holder body includes a substantially tubular sidewall, substantially closed at a lower end thereof by a bottom wall, and open at a top end thereof, such that the tubular sidewall and bottom wall define the cup holding receptacle.

89.     Each cup holder apparatus integral to Man Wah's Cheers, Pulsar, Transporter, and Nicholas theater seating products has a flange extending substantially radially outward from the top end of the cup holder body, wherein the flange comprises a control switch that is operatively linked to and controls a component of the seating arrangement other than the cup holder apparatus.

90.     A control switch present in the flange of a cup holder apparatus attached to a Man Wah theater seating arrangement, such as a Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating arrangement, is an integral component of the entire theater seating arrangement product in that the control switch is operatively linked to and controls a component of the theater seating arrangement such as a power recline component of the theater seating arrangement, a massage component of the theater seating arrangement, or a light producing light source of the theater seating arrangement

91.     Exemplary pieces of Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products are shown in Exhibit 13.

Case 2:18-cv-01765-LA   Filed 11/08/18   Page 23 of 53   Document 1

92. The Claim Chart attached as Exhibit 17 describes how Man Wah's Cheers, Pulsar, Transporter, and Nicholas theater seating products infringe each of Claims 9, 10, 11, and 13, of the '968 Patent.

93. Upon information and belief, Man Wah, without Raffel's authorization, made, used, offered for sale, sold, and/or imported a wide variety of items including, *inter alia*, Man Wah's Cheers-, Pulsar-, Transporter-, and Nicholas-branded seating products (the "Accused Cup Holder Design Products"), each of which include a cup holder having a design that violates the claim Raffel's '252 Patent.

94. Upon information and belief, the overall appearance of the design of the '252 Patent and the corresponding cup holder designs of the Accused Cup Holder Design Products are substantially the same.

95. Upon information and belief, an ordinary observer will perceive the overall appearance of the design of the '252 Patent and the corresponding cup holder designs of the Accused Cup Holder Design Products to be substantially the same.

96. Table 1 below illustrates Man Wah's infringement of the '252 Patent by comparing figures of the '252 patent with exemplary images of infringing products.

24

| Table 1: Comparison of '252 Patent With Exemplary Infringing Products | |
|---|---|
| '252 Patent Figures | Man Wah seating arrangements marketed and sold under "Cheers," "Pulsar," "Transporter," "Nicholas," and other brands containing Accused Cup Holder Design Products |
| FIG. 1  |  |
| FIG. 3  |  |



FIG. 4

FIG. 5

FIG. 8

26

97. Upon information and belief, Man Wah intended to copy the design covered by the '252 Patent.

98. Man Wah has infringed and continue to infringe claim 1 of the '252 Patent by making, using, importing, selling, and/or offering to sell Accused Cup Holder Design Products within the United States.

99. Man Wah has purposefully marketed, offered for sale, sold, and distributed, and continues to market, offer for sale, sell, and distribute Accused Cup Holder Design Products that violate Raffel's rights, including the rights protected by the '252 patent and Raffel's Trade Dress. Upon information and belief, Man Wah also is making or having made and/or importing infringing Accused Cup Holder Design Products into the United States. Man Wah's products are confusingly similar imitations of Raffel's products. Man Wah's actions have all been without the authorization of Raffel.

100. As a result of Man Wah's activities related to the infringing Accused Cup Holder Design Products, there is a strong likelihood of confusion between Man Wah and their products on the one hand, and Raffel and its products on the other hand.

101. Raffel used Raffel's Trade Dress extensively and continuously before Man Wah began marketing, selling, offering to sell, importing or distributing Man Wah's infringing Accused Cup Holder Design Products. Raffel's Trade Dress acquired secondary meaning in the United States and in the State of Wisconsin before Man Wah commenced unlawful use of Raffel's Trade Dress.

102. Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, has used or sold Counterfeit Cup Holder

27

Products including falsely marked Counterfeit Cup Holder Products, within this judicial district and have placed such products in the stream of commerce with knowledge that the likely destination of the Counterfeit Cup Holder Products is within this judicial district and throughout the United States.

103.    Upon information and belief, Man Wah, without Raffel's authorization, made, used, offered for sale, sold, and/or imported a wide variety of items including, *inter alia*, Man Wah seating products including Zach Leather Power Sofa products, Cheers-branded seating products (*e.g*., including Cheers products sold under Dallas Collection, The McCarthy Leather Collection, Manning Collection, Banner Collection, Bradley Collection, Glenn Collection, Brant Collection; Megan Collection, Motion High Back Collection, Contemporary Power Reclining Collection, The Cheers Living Room Sectional, The Cheers Living Room Dual Reclining Loveseat, The Cheers Sectional, and others to be discovered), the Genella Collection, and Brant Collection, and other collections to be discovered (the "Accused Switch Design Products"), each seating arrangement containing a switch having a design that violates Raffel's '986 Patent.

104.    Upon information and belief, the overall appearance of the design of the '986 Patent and the corresponding switch designs of the Accused Switch Design Products are substantially the same.

105.    Upon information and belief, an ordinary observer will perceive the overall appearance of the design of the '986 Patent and the corresponding switch designs of the Accused Switch Design Products to be substantially the same.

106.    Table 2 below illustrates Man Wah's infringement of the '986 Patent by comparing figures of the '986 patent with exemplary images of infringing products.

| Table 2: Comparison of '986 Patent With Exemplary Infringing Products ||
|---|---|
| **'252 Patent Figures** | **Man Wah's Accused Switch Design Products (e.g., Zach Leather Power Sofa, Cheers seating products, and Genella and Brant Collection products** |
| FIG. 1  |  |
| FIG. 2  |  |
| FIG. 5  |  |

29

FIG. 6



107.    Upon information and belief, Man Wah intended to copy the design covered by the '986 Patent.

108.    Man Wah has infringed and continues to infringe claim 1 of the '986 Patent by making, using, importing, selling, and/or offering to sell the Accused Switch Design Products within the United States.

109.    Upon information and belief, Man Wah has infringed and continues to infringe one or more claims of the '293 Patent with knowledge and/or reckless disregard amounting to willful and intentional infringement.

110.    Upon information and belief, Man Wah has infringed and continues to infringe one or more claims of the '505 Patent with knowledge and/or reckless disregard amounting to willful and intentional infringement.

111.    Upon information and belief, Man Wah has infringed and continues to infringe one or more claims of the '882 Patent with knowledge and/or reckless disregard amounting to willful and intentional infringement.

112.    Upon information and belief, Man Wah has infringed and continues to infringe one or more claims of the '968 Patent with knowledge and/or reckless disregard amounting to willful and intentional infringement.

113.    Upon information and belief, Man Wah has infringed and continues to infringe the '252 Patent with knowledge and/or reckless disregard amounting to willful and intentional infringement.

114.    Upon information and belief, Man Wah has infringed and continues to infringe the '986 Patent with knowledge and/or reckless disregard amounting to willful and intentional infringement.

115.    Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, has used or sold infringing products within this judicial district and have placed products infringing one or more claims of the '293 Patent in the stream of commerce with knowledge that the likely destination of the infringing products is within this judicial district and throughout the United States.

116.    Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, have used or sold infringing products within this judicial district and have placed products infringing one or more claims of the '505 Patent in the stream of commerce with knowledge that the likely destination of the infringing products is within this judicial district and throughout the United States.

117.    Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, have used or sold infringing products within this judicial district and have placed products infringing one or more claims of the '882 Patent in the stream of commerce with knowledge that the likely destination of the infringing products is within this judicial district and throughout the United States.

118.    Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, have used or sold infringing products

within this judicial district and have placed products infringing one or more claims of the '968 Patent in the stream of commerce with knowledge that the likely destination of the infringing products is within this judicial district and throughout the United States.

119.    Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, have used or sold infringing products within this judicial district and have placed products infringing the '252 Patent in the stream of commerce with knowledge that the likely destination of the infringing products is within this judicial district and throughout the United States.

120.    Upon information and belief, Man Wah, acting alone and acting in concert with and through agents and/or intermediaries, have used or sold infringing products within this judicial district and have placed products infringing the '986 Patent in the stream of commerce with knowledge that the likely destination of the infringing products is within this judicial district and throughout the United States.

## FIRST CLAIM FOR RELIEF
### (False Marking Under 35 U.S.C. § 292)

121.    Raffel restates and realleges Paragraphs 1 through 120 above as though set forth fully herein.

122.    In violation of 35 U.S.C. § 292, Defendants falsely marked their Counterfeit Cup Holder Products by affixing thereto United States patent numbers that are wholly owned and controlled by Raffel for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

123.    In violation of 35 U.S.C. § 292, Defendants falsely marked their Counterfeit Cup Holder Products by affixing thereto an exact imitation of a label that

32

Raffel affixes to its proprietary cup holders that recites the model number (MOD#), the purchase order number (PO#), the date of manufacture, and the relevant U.S. patent numbers identifying patents wholly owned by Raffel, for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

124.     In violation of 35 U.S.C. § 292, Defendants falsely marked their Counterfeit Cup Holder Products by affixing thereto an exact imitation of an inspection sticker Raffel affixes to its proprietary cup holder products for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

125.     In violation of 35 U.S.C. § 292, Defendants falsely marked their Counterfeit Cord Harnesses by affixing thereto an exact imitation of a label that Raffel affixes to its cord harness components that recites Raffel model numbers (MOD#) and purchase order numbers (PO#), followed by date of manufacture, for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cord Harnesses are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

126.     Raffel has been competitively harmed in commerce by Defendants' false marking because it has deceived customers, and may persuade future customers and potential customers, into believing that Defendants' Counterfeit Cup Holder Products,

which are marketed and sold competitively with Raffel's cup holder products, are Raffel products or are authorized by Raffel, when in fact neither is true.

127.    Raffel has also been competitively harmed in commerce by Defendants' false marking because consumers have identified Defendants' Counterfeit Cup Holder Products as being Raffel products. Defendants' Counterfeit Cup Holder Products have failed and thus pose a serious risk to consumer safety,

128.    Defendants' false marking has caused and will continue to cause irreparable harm to Raffel unless Defendants are enjoined by this Court from any further making, offering for sale, sales, using, or importation into the United States of Defendants' Counterfeit Cup Holder Products and Defendants' Counterfeit Cord Harnesses. Raffel has no adequate remedy at law.

129.    Under 35 U.S.C. § 292(b), Raffel is entitled to recover any damages adequate to compensate it for the competitive injury resulting from Man Wah's false marking.

130.    As demonstrated by the facts described herein, this is an exceptional case under 35 U.S.C. § 285, and Raffel is entitled to recover its reasonable attorneys' fees. The Court should also impose a fine upon Defendants of $500.00 per offense for false marking pursuant to 35 U.S.C. § 292(a).

## SECOND CLAIM FOR RELIEF
### (Infringement of the '252 Patent Under 35 U.S.C. § 271)

131.    Raffel restates and realleges Paragraphs 1 through 130 above as though set forth fully herein.

132.    Defendants, without authorization from Raffel, have made, used, offered for sale, sold, and/or imported in or into the United States, and continue to make, use,

offer for sale, sell, and/or import in or into the United States, products that infringe the '252 Patent.

133.    Defendants' infringement of the '252 Patent has been and continues to be willful and deliberate.

134.    Defendants' infringement will continue unless enjoined by this Court.

135.    As a direct and proximate consequence of Defendants' infringement of the '252 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer injury, for which Raffel is entitled to damages pursuant to at least 35 U.S.C. §§ 281, 284, 285, and 289 of an amount to be proved at trial.

136.    As a direct and proximate consequence of Defendants' infringement of the '252 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Raffel is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## THIRD CLAIM FOR RELIEF
## (Trade Dress Infringement Under § 43 of the Lanham Act, 15, U.S.C. § 1125(a))

137.    Raffel restates and realleges Paragraphs 1 through 136 above as though set forth fully herein.

138.    Defendants' offers to sell, sales, distribution and/or importation of the infringing products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by infringing Raffel's Trade Dress. Defendants' use of Raffel's Trade Dress and/or colorable imitations thereof has caused confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Raffel and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading

35

impression that the infringing products are manufactured by, authorized by, or otherwise associated with Raffel.

139.    Defendants' use of Raffel's Trade Dress and/or colorable imitations thereof is likely to continue to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Raffel and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Raffel.

140.    Raffel's Trade Dress is entitled to protection under the Lanham Act. Raffel's Trade Dress includes unique, distinctive, and non-functional designs. Raffel has extensively and continuously promoted and used its Trade Dress in the United States. Through that extensive and continuous use, Raffel's Trade Dress has become a well-known indicator of the origin and quality of Raffel's ICH Products. Raffel's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Raffel's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Raffel's Trade Dress in connection with the infringing products.

141.    Defendants' use of Raffel's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Raffel for which Raffel has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Raffel's Trade Dress, with Raffel and Raffel's ICH Products.

142.    Upon information and belief, Defendants' use of Raffel's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the

36

similarity of Defendants' Counterfeit Cup Holder Products to Raffel's Trade Dress, as demonstrated in, for example, Exhibits 7 through 13, and in Table 1, above, by Defendants' willful and malicious false marking of Defendants' Counterfeit Cup Holder Products, and by Defendants' continuing disregard for Raffel's rights.

143.    Raffel is entitled to injunctive relief, and Raffel is entitled to recover at least Defendants' profits, Raffel's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF
### (Unfair Competition and False Designation of Origin Under § 43 of the Lanham Act, 15, U.S.C. § 1125(a))

144.    Raffel restates and realleges Paragraphs 1 through 143 above as though set forth fully herein.

145.    Defendants' offers to sell, sales, distribution and/or importation of the infringing products, in direct competition with Raffel, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Defendants' use of Raffel's Trade Dress and because such uses have actually caused consumer confusion as to the origin and/or sponsorship/affiliation of the infringing products, and may continue to cause such confusion at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Raffel.

146.    Raffel's Trade Dress is entitled to protection under the Lanham Act. Raffel's Trade Dress includes unique, distinctive, and non-functional designs. Raffel has extensively and continuously promoted and used its Trade Dress in the United States.

37

Through that extensive and continuous use, Raffel's Trade Dress has become a well-known indicator of the origin and quality of Raffel's ICH Products. Raffel's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Raffel's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Raffel's Trade Dress in connection with the infringing products.

147.    Defendants' use of Raffel's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Raffel for which Raffel has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Raffel's Trade Dress, with Raffel and Raffel's ICH Products.

148.    Upon information and belief, Defendants' use of Raffel's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of Defendants' Counterfeit Cup Holder Products to Raffel's Trade Dress, as demonstrated in, for example, Exhibits 7 through 13, and in Table 1, above, by Defendants' willful and malicious false marking of Defendants' Counterfeit Cup Holder Products, and by Defendants' continuing disregard for Raffel's rights.

149.    Raffel is entitled to injunctive relief, and Raffel is entitled to recover at least Defendants' profits, Raffel's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FIFTH CLAIM FOR RELIEF
### (Trade Dress Dilution Under § 43 of the Lanham Act, 15, U.S.C. § 1125(a))

150.    Raffel restates and realleges Paragraphs 1 through 149 above as though set forth fully herein.

38

151.    Defendants' offers to sell, sales, distribution and/or importation of the infringing products violate § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

152.    Raffel's Trade Dress is entitled to protection under the Lanham Act. Raffel's Trade Dress includes unique, distinctive, and non-functional designs. Raffel's Trade Dress has acquired distinctiveness through Raffel's extensive and continuous promotion and use of Raffel's Trade Dress in the United States. Through that extensive and continuous use, Raffel's Trade Dress has become a famous well-known indicator of the origin and quality of Raffel's ICH Products throughout the United States, and is widely recognized by consumers as a designation of the source of Raffel and Raffel's ICH Products. Raffel's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Raffel's Trade Dress became famous and acquired this secondary meaning before Defendants commenced their unlawful use of Raffel's Trade Dress in connection with the infringing products.

153.    Defendants' use of Raffel's Trade Dress is likely to cause, and has caused, dilution of Raffel's Trade Dress, at least by eroding the public's exclusive identification of Raffel's Trade Dress with Raffel and Raffel's ICH Products, by lessening the capacity of Raffel's Trade Dress to identify and distinguish Raffel's ICH Products, by associating Raffel's Trade Dress with products of inferior quality, and by impairing the distinctiveness of Raffel's famous Trade Dress.

154.    Defendants' use of Raffel's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Raffel for which Raffel has no adequate remedy at law, including at least substantial and irreparable injury to the

39

goodwill and reputation for quality associated with Raffel's Trade Dress, with Raffel and Raffel's ICH Products.

155.    Upon information and belief, Defendants' use of Raffel's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of Defendants' Counterfeit Cup Holder Products to Raffel's Trade Dress, as demonstrated in, for example, Exhibits 7 through 13, and in Table 1, above, by Defendants' willful and malicious false marking of Defendants' Counterfeit Cup Holder Products, and by Defendants' continuing disregard for Raffel's rights.

156.    Raffel is entitled to injunctive relief, and Raffel is entitled to recover at least Defendants' profits, Raffel's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**SIXTH CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation Under Wis. Stat. § 100.18)**

157.    Raffel restates and realleges Paragraphs 1 through 156 above as though set forth fully herein.

158.    In violation of Wis. Stat. § 100.18, Defendants falsely marked their Counterfeit Cup Holder Products by affixing thereto United States patent numbers for patents that are wholly owned and controlled by Raffel for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

159.    In violation of Wis. Stat. § 100.18, Defendants falsely marked their Counterfeit Cup Holder Products by affixing thereto an exact copy of a label that Raffel affixes to its proprietary cup holders that recites the model number (MOD#), the purchase

40

order number (PO#), the date of manufacture, and the relevant U.S. patent numbers for patents wholly owned by Raffel, all for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

160.     In violation of Wis. Stat. § 100.18, Defendants falsely marked their Counterfeit Cup Holder Products by affixing thereto an exact copy of an inspection sticker Raffel affixes to its proprietary cup holder products for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

161.     In violation of Wis. Stat. § 100.18, Defendants falsely marked their Counterfeit Cord Harnesses by affixing thereto an exact copy of a label that Raffel affixes to its cord harness components that recites the model number (MOD#), the purchase order number (PO#), the date of manufacture, and the relevant U.S. patent numbers for patents wholly owned by Raffel, for the purpose of counterfeiting and/or deceiving the public into believing that the Counterfeit Cup Holder Products are made, offered for sale, sold, or imported into the United States by or with the consent of Raffel.

162.     Raffel has been competitively harmed in commerce by Defendants' false marking because it has deceived customers, and may persuade future customers and potential customers, into believing that Defendants' Counterfeit Cup Holder Products, which are marketed and sold competitively with Raffel's cup holder products, are Raffel products or are authorized by Raffel, when in fact neither is true.

163.     Raffel has also been competitively harmed in commerce by Defendants'
false marking because consumers have identified Defendants' Counterfeit Cup Holder
Products that have failed, and that pose a serious risk to consumer safety, as being Raffel
products.

164.     Defendants' false marking has caused and will continue to cause
irreparable harm to Raffel unless Defendants are enjoined by this Court from any further
making, offering for sale, sales, or importation into the United States of Defendants'
Counterfeit Cup Holder Products and Defendants' Counterfeit Cord Harnesses. Raffel
has no adequate remedy at law.

165.     Raffel has been irreparably harmed and / or continues to suffer damages
and loss as a direct and proximate result of Defendants' acts.

## SEVENTH CLAIM FOR RELIEF
### (Common Law Misappropriation)

166.     Raffel restates and realleges Paragraphs 1 through 165 above as though set
forth fully herein.

167.     Defendants' offers to sell, sales, distribution and/or importation of the
infringing products violate, in direct competition with Raffel, constitute common law
misappropriation.

168.     Raffel created the products covered by Raffel's Trade Dress through
extensive time, labor, effort, skill, and money. Defendants have wrongfully used Raffel's
Trade Dress, and/or colorable imitations thereof in competition with Raffel and gained a
special advantage because Defendants were not burdened with the expenses incurred by
Raffel. Defendants have commercially damaged Raffel, at least by causing consumer
confusion as to origin and/or sponsorship/affiliation of the infringing products, by

42

creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Raffel, by falsely marking Defendants' Counterfeit Cup Holder Products, and by taking away sales that Raffel would have made.

169.    Raffel's Trade Dress is entitled to protection under the common law. Raffel's Trade Dress includes unique, distinctive, and non-functional designs. Raffel has extensively and continuously promoted and used Raffel's Trade Dress for years in the United States and the State of Wisconsin. Through that extensive and continuous use, Raffel's Trade Dress has become a well-known indicator of the origin and quality of Raffel's ICH Products. Raffel's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Raffel's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Raffel's Trade Dress in connection with the infringing products.

170.    Defendants' use of Raffel's Trade Dress has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Raffel for which Raffel has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Raffel's Trade Dress, Raffel, and Raffel's ICH Products. Moreover, as a result of its misappropriation, Defendants have profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Raffel invested in establishing the reputation and goodwill associated with Raffel's Trade Dress, with Raffel, and Raffel's ICH Products.

171.    Defendants' misappropriation of Raffel's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of Defendants' Counterfeit Cup Holder Products to Raffel's Trade Dress, as demonstrated in, for example, Exhibits 7 through 13, and in Table 1, above, by Defendants' willful and malicious false marking of Defendants' Counterfeit Cup Holder Products, and by Defendants' continuing disregard for Raffel's rights.

172.    Raffel is entitled to injunctive relief, and Raffel is also entitled to recover at least Raffel's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment)

173.    Raffel restates and realleges Paragraphs 1 through 172 above as though set forth fully herein.

174.    Defendants' offers to sell, sales, distribution and/or importation of the infringing products violate, in direct competition with Raffel, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at YETI's expense. Defendants have also, *inter alia*, operated with an undue advantage.

175.    Raffel created the products covered by Raffel's Trade Dress through extensive time, labor, effort, skill, and money. Defendants have wrongfully used and are wrongfully using Raffel's Trade Dress, and/or colorable imitations thereof, in competition with Raffel, and have gained and are gaining a wrongful benefit by undue advantage through such use. Defendants have not been burdened with the expenses incurred by Raffel, yet Defendants are obtaining the resulting benefits for their own business and products.

44

176.    Raffel's Trade Dress is entitled to protection under the common law. Raffel's Trade Dress includes unique, distinctive, and non-functional designs. Raffel has extensively and continuously promoted and used Raffel's Trade Dress for years in the United States and the State of Wisconsin. Through that extensive and continuous use, Raffel's Trade Dress has become a well-known indicator of the origin and quality of Raffel's ICH Products. Raffel's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, Raffel's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Raffel's Trade Dress and colorable imitations thereof in connection with the infringing products.

177.    Defendants' use of Raffel's Trade Dress, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Raffel for which Raffel has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Raffel's Trade Dress, with Raffel, and Raffel's ICH Products. Raffel accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Defendants have wrongfully obtained and are wrongfully obtaining a benefit at Raffel's expense by taking undue advantage and free-riding on Raffel's efforts and investments, and enjoying the benefits of Raffel's hard-earned goodwill and reputation.

178.    Defendants' unjust enrichment at Raffel's expense has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of Defendants' Counterfeit Cup Holder Products to Raffel's Trade Dress, as demonstrated in, for example, Exhibits 7 through 13, and in Table 1, above, by Defendants' willful and

45

malicious false marking of Defendants' Counterfeit Cup Holder Products, and by Defendants' continuing disregard for Raffel's rights.

179.    Raffel is entitled to injunctive relief, and Raffel is also entitled to recover at least Defendants' profits.

## NINTH CLAIM FOR RELIEF
### (Infringement of the '293 Patent Under 35 U.S.C. § 271)

180.    Raffel restates and realleges Paragraphs 1 through 179 above as though set forth fully herein.

181.    Defendants, without authorization from Raffel, have made, used, offered for sale, sold, and/or imported in or into the United States, and continue to make, use, offer for sale, sell, and/or import in or into the United States, products that infringe the '293 Patent.

182.    Defendants' infringement of the '293 Patent has been and continues to be willful and deliberate.

183.    Defendants' infringement will continue unless enjoined by this Court.

184.    As a direct and proximate consequence of Defendants' infringement of the '293 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer injury, for which Raffel is entitled to damages pursuant to at least 35 U.S.C. §§ 281, 284, 285, and 289 of an amount to be proved at trial.

185.    As a direct and proximate consequence of Defendants' infringement of the '293 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Raffel is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## TENTH CLAIM FOR RELIEF

46

**(Infringement of the '505 Patent Under 35 U.S.C. § 271)**

186.    Raffel restates and realleges Paragraphs 1 through 185 above as though set forth fully herein.

187.    Defendants, without authorization from Raffel, have made, used, offered for sale, sold, and/or imported in or into the United States, and continue to make, use, offer for sale, sell, and/or import in or into the United States, products that infringe the '505 Patent.

188.    Defendants' infringement of the '505 Patent has been and continues to be willful and deliberate.

189.    Defendants' infringement will continue unless enjoined by this Court.

190.    As a direct and proximate consequence of Defendants' infringement of the '505 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer injury, for which Raffel is entitled to damages pursuant to at least 35 U.S.C. §§ 281, 284, 285, and 289 of an amount to be proved at trial.

191.    As a direct and proximate consequence of Defendants' infringement of the '505 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Raffel is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**ELEVENTH CLAIM FOR RELIEF**
**(Infringement of the '882 Patent Under 35 U.S.C. § 271)**

192.    Raffel restates and realleges Paragraphs 1 through 191 above as though set forth fully herein.

193.    Defendants, without authorization from Raffel, have made, used, offered for sale, sold, and/or imported in or into the United States, and continue to make, use,

47

offer for sale, sell, and/or import in or into the United States, products that infringe the '882 Patent.

194.     Defendants' infringement of the '882 Patent has been and continues to be willful and deliberate.

195.     Defendants' infringement will continue unless enjoined by this Court.

196.     As a direct and proximate consequence of Defendants' infringement of the '882 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer injury, for which Raffel is entitled to damages pursuant to at least 35 U.S.C. §§ 281, 284, 285, and 289 of an amount to be proved at trial.

197.     As a direct and proximate consequence of Defendants' infringement of the '882 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Raffel is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## TWELVTH CLAIM FOR RELIEF
### (Infringement of the '968 Patent Under 35 U.S.C. § 271)

198.     Raffel restates and realleges Paragraphs 1 through 197 above as though set forth fully herein.

199.     Defendants, without authorization from Raffel, have made, used, offered for sale, sold, and/or imported in or into the United States, and continue to make, use, offer for sale, sell, and/or import in or into the United States, products that infringe the '968 Patent.

200.     Defendants' infringement of the '968 Patent has been and continues to be willful and deliberate.

201.     Defendants' infringement will continue unless enjoined by this Court.

48

202.    As a direct and proximate consequence of Defendants' infringement of the '968 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer injury, for which Raffel is entitled to damages pursuant to at least 35 U.S.C. §§ 281, 284, 285, and 289 of an amount to be proved at trial.

203.    As a direct and proximate consequence of Defendants' infringement of the '968 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Raffel is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

**THIRTEENTH CLAIM FOR RELIEF**
**(Infringement of the '986 Patent Under 35 U.S.C. § 271)**

204.    Raffel restates and realleges Paragraphs 1 through 203 above as though set forth fully herein.

205.    Defendants, without authorization from Raffel, have made, used, offered for sale, sold, and/or imported in or into the United States, and continue to make, use, offer for sale, sell, and/or import in or into the United States, products that infringe the '986 Patent.

206.    Defendants' infringement of the '986 Patent has been and continues to be willful and deliberate.

207.    Defendants' infringement will continue unless enjoined by this Court.

208.    As a direct and proximate consequence of Defendants' infringement of the '986 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer injury, for which Raffel is entitled to damages pursuant to at least 35 U.S.C. §§ 281, 284, 285, and 289 of an amount to be proved at trial.

209.     As a direct and proximate consequence of Defendants' infringement of the '986 Patent, Raffel has suffered, is suffering, and unless enjoined by the Court, will continue to suffer irreparable harm for which there is no adequate remedy at law, and for which Raffel is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, Raffel respectfully prays that upon trial on the merits this Court render Judgment in Raffel's favor and against Defendants Man Wah Holdings Limited, Inc. and Man Wah (USA) Inc. as follows:

A.     Judgment that Defendants have (i) falsely marked Defendants' products in violation of 35 U.S.C. § 292; (ii) directly infringed and are directly infringing, the '252 Patent, the '293 Patent, the '505 Patent, the '882 Patent, the '968 Patent, and the '986 Patent in violation of § 271 of Title 35 in the United States Code; (iii) contributed to and are continuing to contribute to infringement of the '252 Patent, the '293 Patent, the '505 Patent, the '882 Patent, the '968 Patent, and the '986 Patent in violation of § 271 of Title 35 in the United States Code; (iv) infringed Raffel's Trade Dress in violation of § 1125(a) of Title 15 in the United States Code; (v) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (vi) diluted Raffel's Trade Dress in violation of § 1125(c) of Title 15 in the United States Code; (vii) fraudulently misrepresented Defendants' Counterfeit Cup Holder Products as Raffel products in violation of Wis. Stat. § 100.18; (viii) engaged in common law misappropriation; and (ix) been unjustly enriched at Raffel's expense, and that these wrongful activities by Defendants were willful;

B.     Immediate injunctive relief and a permanent injunction prohibiting Defendants and each of their managers, agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, from using Raffel's U.S. Patent Numbers, model number (MOD#), purchase order number (PO#) or any other label that Raffel utilizes to identify a product as a Raffel product, on Defendants' products;

C.     An injunction against further infringement of the '252 Patent, the '293 Patent, the '505 Patent, the '882 Patent, the '968 Patent, and the '986 Patent, further infringement of Raffel's Trade Dress, further dilution of Raffel's Trade Dress, further acts of unfair competition, misappropriation, and unjust enrichment by Defendants and each of their managers, agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other products that use a copy, reproduction, or colorable imitation of Raffel's Trade Dress including without limitation Raffel's U.S. patent numbers, model numbers (MOD#), or purchase order numbers (PO#), pursuant to at least 35 U.S.C. § 283, 15 U.S.C. § 1116 and Wis. Stat. § 100.18(11);

D.     An Order directing Defendants to recall all infringing products sold and/or distributed and provide a full refund for all recalled infringing products;

E.     An Order directing the destruction of (i) all infringing products, including all recalled infringing products, and (ii) any other products that use Raffel's Trade Dress including Raffel's U.S. patent numbers, model numbers (MOD#), or purchase order numbers (PO#) in Defendants' possession or control.

51

F.     An Order directing Defendants to publish a public notice providing proper attribution of Raffel's Trade Dress to Raffel, and to provide a copy of this notice to all customers, distributors, and/or others from whom the infringing products are recalled;

G.     An Order barring importation of infringing and/or counterfeit products and/or colorable imitations thereof into the United States, and barring entry of the infringing products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

H.     An award of damages adequate to compensate Raffel for the patent infringements that have occurred pursuant to 35 U.S.C. § 284, or an award of Defendants' profits from their patent infringements pursuant to 35 U.S.C. § 289, whichever is greater, together with prejudgment interest and costs and reasonable attorney fees, pursuant to 35 U.S.C. §§ 284 and 285.

I.     An award of Defendants' profits, Raffel's actual damages, enhanced damages, exemplary damages, costs and expenses incurred in bringing and prosecuting this action, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 11125(c), 1116, and 1117 and Wis. Stat. § 100.18(11);

J.     The Court fine Defendants $500.00 for each and every offense of false marking and award one-half of such fine to Raffel; and

K.     For general and such further and other relief, at law or in equity, as to which Raffel may show itself justly entitled.

## **DEMAND FOR JURY TRIAL**

Raffel hereby demands a jury trial on all issues so triable.

DATED: November 8th, 2018

Respectfully submitted,

CASIMIR JONES, S.C.

s/Tyler J, Sisk
Tyler J. Sisk, SBN 1054892
David A. Casimir, SBN 1036453
2275 Deming Way, Suite 310
Middleton, Wisconsin 53562
Telephone: 608.662.1277
Facsimile: 608.662.1276
E-Mail: tjsisk@casimirjones.com
        dacasimir@casimirjones.com


DeWitt Ross & Stevens, S.C.

Joseph T. Leone, SBN 1018149
2 East Mifflin Street, Suite 600
Madison, WI 53703
Telephone: 608.395.6743
Facsimile: 608.252.9243
E-Mail: jtl@dewittross.com

Attorneys for Plaintiff Raffel Systems, LLC