UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RAFFEL SYSTEMS, LLC,**

    Plaintiff,

    v.                                      Case No. 18-CV-1765

**MAN WAH HOLDINGS LTD, INC.,
MAN WAH (USA) INC., and XYZ
COMPANIES 1–10,**

    Defendants.

---

### DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S PATENT CLAIMS FOR LACK OF STANDING

---

    Raffel Systems, LLC sues Man Wah Holdings Ltd., Inc., Man Wah (USA) Inc., and XYZ Companies 1–10 (collectively "Man Wah") for patent infringement, false marketing, trade dress infringement, unfair competition and false designation of origin, trade dress dilution, false representation of fact, and misappropriation under federal and Wisconsin law. (Fourth Am. Compl., Docket # 108.) Man Wah moves to dismiss Raffel's patent claims (Counts 2, 6, 9, 10, 11, 12, and 15 of the Fourth Amended Complaint) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the ground that Raffel did not possess title to the subject patents at the time suit was filed and thus lacks standing to bring the claims. For the reasons explained below, Man Wah's motion to dismiss is denied.

### BACKGROUND

    Raffel is a manufacturing company with a range of products in the seating, bedding, and industrial marketplaces. (Fourth Am. Compl. ¶ 11.) Raffel holds over sixty patents related to seating arrangement components. (*Id.* ¶ 13.) Raffel makes and markets cup

holders, including its "Home Theater and Integrated Cup Holder" products. (*Id.* ¶ 12.) Raffel alleges that it is the owner by assignment of all rights, title, and interest in five patents for "Lighted Cup Holders for Seating Arrangements": U.S. Patents Nos. 7,766,293, 8,714,505, 8,973,882, 10,051,968; and 10,229,603 (*id.* ¶ 14–18); one patent for a "cup holder": U.S. Patent No. D643,252 (*id.* ¶ 19); and one patent for a "switch": U.S. Patent No. D821,986 (*id.* ¶ 20). On December 7, 2016, Raffel entered into an "Intellectual Property Security Agreement" with The PrivateBank and Trust Company ("PrivateBank") in which Raffel granted PrivateBank a security interest in all of its intellectual property, whether presently existing or after-acquired. (Ex. A to Defs' Mot. to Dismiss, Docket # 113-1 at 5–18.) The subject patents were specifically listed as collateral. (*Id.* at 5, 13–18.) PrivateBank filed notice of its security interest with the United States Patent and Trademark Office ("USPTO"). (*Id.* at 2–4.) The security interest was released on August 9, 2019. (Ex. B to Defs' Mot. to Dismiss, Docket # 113-2 at 5–9.) Raffel entered into another "Intellectual Property Security Agreement," this time with East West Bank, on August 13, 2019. (Ex. C to Defs' Mot. to Dismiss, Docket # 113-3 at 6–17.) Raffel again granted the bank a security interest in its patents, including the subject patents. (*Id.*) East West Bank recorded its security interest with the USPTO. (*Id.* at 2–5.)

Raffel filed suit against Man Wah on November 8, 2018 (Docket # 1) alleging that that Man Wah is making, using, offering for sale, selling, importing and/or distributing products that infringe Raffel's patents (Counts 2, 6, 9, 10, 11, 12, and 15 of Fourth Am. Compl.).

## STANDING IN PATENT CASES

In determining whether Raffel has standing to bring this lawsuit, I must consider Raffel's rights to the patent at the time this suit was initiated. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007). To have standing, a plaintiff must meet both constitutional and statutory standing requirements. *Id.* Constitutional standing considers whether a plaintiff can invoke judicial power. *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019). To have constitutional standing, a plaintiff must possess "exclusionary rights" in the patent. *Id.* at 1234. This is because those with exclusionary rights—generally the right to prevent others from making, using, selling, or offering to sell the patented invention—suffer an injury-in-fact when their rights are infringed. *Id.*; *see also Morrow*, 499 F.3d at 1339. A motion to dismiss for lack of constitutional standing is properly brought under Rule 12(b)(1) because it is a jurisdictional defect. *Lone Star*, 925 F.3d at 1235. In ruling on a Rule 12(b)(1) motion, the court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

Statutory standing, on the other hand, considers whether a party may obtain relief under the patent laws. *Lone Star*, 925 F.3d at 1235. Title 35 allows a "patentee" to bring a civil action for patent infringement. 35 U.S.C. § 281. A "patentee" includes the original patentee (the inventor or original assignee) and "successors in title." 35 U.S.C. § 100(d). It does not, however, include licensees. *Lone Star*, 925 F.3d at 1229. Thus, if the plaintiff is not the original patentee, I must determine whether an agreement transferring patent rights is an assignment or license. *Id.* This is done by considering "whether the agreement transferred all

substantial rights to the patents." *Id.* (internal quotation and citation omitted). The inquiry depends on the substance of what the agreement granted, not "formalities or magic words." *Id.* If a plaintiff holds exclusionary rights and all substantial rights to the patent, he can sue for infringement in his own name. *Morrow*, 499 F.3d at 1339. If a plaintiff holds exclusionary rights but does not hold *all* substantial rights to the patent, he can still sue for infringement, but must join the title-holder of the patent as a co-plaintiff. *Id.* at 1340. If the plaintiff lacks exclusionary rights and holds less than all substantial rights to the patent, then he lacks standing and cannot sue. *Id.* at 1340–41. Lack of "statutory standing" is not a jurisdictional defect, so the motion is properly considered under Rule 12(b)(6). *Id.* at 1235.

## ANALYSIS

Man Wah argues that Raffel lost title to the subject patents when Raffel mortgaged its patents to obtain loans with PrivateBank and East West Bank. Man Wah relies on the U.S. Supreme Court case of *Waterman v. Mackenzie*, 138 U.S. 252 (1891) for its position that because Raffel granted PrivateBank and East West Bank security interests in its patents and the banks recorded their security interests with the USPTO, this transferred title in the patents from Raffel to the banks. Raffel counters that its agreements with the banks are nothing more than standard security agreements granting the banks a security interest in the patents, not a conveyance of title.

By way of background, during the 19th Century, security interests in patents were perfected by transferring title in the collateral. *See In re Cybernetic Servs., Inc.*, 239 B.R. 917, 920 (B.A.P. 9th Cir. 1999), *aff'd*, 252 F.3d 1039 (9th Cir. 2001). In *Waterman*, the plaintiff assigned to his wife a patent for an improvement in fountain pens. 138 U.S. at 252. The plaintiff's wife then granted back to the plaintiff a license to use the patent. *Id.* The license

4
Case 2:18-cv-01765-NJ   Filed 06/15/20   Page 4 of 10   Document 188

was never recorded. *Id.* The wife then assigned the patent to a third party as collateral for a debt, and the document concerning this transaction was filed with the Patent Office. *Id.* Finally, the wife assigned the patent back to the plaintiff. *Id.* The question before the Court was whether the plaintiff had standing to bring an action for infringement of the patent. *Id.* The Court determined that only the third party had standing to bring the suit. *Id.* at 260–61. In so doing, the Court reasoned that the grant of a security interest in a patent is like a mortgage of real estate. *Id.* at 258. The Court acknowledged that the mortgage of real estate has "come to be more and more considered as a mere security for the debt, creating a lien or incumbrance only, and leaving the title in the mortgagor." *Id.* at 259. However, for real estate, after the mortgagee has taken possession of the property, the mortgagor no longer has authority to lease the property, accrue rents, etc. *Id.* The Court reasoned that because a patent right is "incorporeal property, not susceptible of actual delivery or possession," the recording of the security interest in the patent office is the "equivalent to a delivery of possession, and makes the title of the mortgagee complete towards all other persons, as well as against the mortgagor." *Id.* As the Ninth Circuit explained in *In re Cybernetic Servs., Inc.*, the transaction in *Waterman* was an example of a "pre-UCC security interest involving the transfer of title . . . [where] the Supreme Court held that a patent mortgage was an assignment when the mortgage was created by transferring ownership of the patent, subject to defeasance upon payment of a loan." 239 B.R. at 920.

Perfection of security interests changed with the publication of the Uniform Commercial Code ("UCC") in 1952. Article 9 of the UCC governs the method for perfecting security interests in personal property, including in general intangibles like intellectual property. *See* Wis. Stat. § 409.102(kg). The UCC "created a single security

device, which was not dependent on who had title to the property." *In re Cybernetic Servs., Inc.*, 239 B.R. at 920; *see also* Title to Collateral Immaterial., Unif. Commercial Code § 9-202 ("Except as otherwise provided . . . the provisions of this article with regard to rights and obligations apply whether title to collateral is in the secured party or the debtor."). Thus, after the enactment of the UCC, transfer of title was unnecessary to perfect a security interest.

Man Wah argues that the passage of the UCC effectively created two paths to perfection of a security interest: (1) the *Waterman*/Patent Act path and (2) the UCC path. (Defs.' Br. at 11.) Man Wah argues that under *Waterman*, a security interest is created through the transfer of title to the patent. The transfer is complete when the security interest is recorded with the USPTO. Under the UCC, perfection of a security interest is dependent on the requirements of the statute, but it does not necessarily transfer title. (*Id.*) Man Wah argues that *Waterman* and § 261 of the Patent Act preempt the UCC to the extent they conflict. (*Id.* at 10.)

Courts that have addressed this issue have consistently found that the Patent Act does not address perfection of security interests—it addresses assignments of title. In *In re Cybernetic Servs.,* the court explained that "[b]ecause transferring title no longer has significance in creating a security interest in personal property, most security interests created after adoption of the UCC do not involve the transfer of title." 239 B.R. at 921. The court explained that the Patent Office is concerned with the recording of *transfers* of title only. *Id.* The Code of Federal Regulations addressing patents speaks only to "assignments" which are defined as "transfers by a party of all or part of its right, title and interest in a patent or patent application." *Id.* (citing 37 C.F.R. § 3.1). The court noted that neither the

term "security interest" nor the term "lien" are found in any of the provisions governing patents and the reason for this is that "'[a] security interest is not an 'assignment, grant or conveyance of a patent.'" *Id.* (quoting William C. Hillman, *Documenting Secured Transaction* 2–19 to 2–20 (1998)). The court contrasted the omission of security interests in the Patent Act with the Copyright Act, which specifically includes security interests in the definition of a transfer of ownership. *Id.* at 921. The court concluded that the failure of the Patent Act to include security interests within its scope means that the Patent Act does not preempt state regulation of security interests in patents. *Id.* at 922.

Similarly, in *In re Transportation Design & Tech., Inc.*, 48 B.R. 635, 639 (Bankr. S.D. Cal. 1985), the bankruptcy trustee argued that the grant of a security interest in a patent is a conveyance of ownership and thus must be recorded with the Patent Office to be perfected, citing *Waterman* in support. The bankruptcy court found, however, that the "grant of a security interest is not a conveyance of a present ownership right in the patent" and thus need not be recorded with the Patent Office. *Id.* The court explained that after the passage of the UCC, it was no longer necessary to create a security interest by assignment or transfer of title as in *Waterman*. *Id.*

Likewise, in *City Bank & Tr. Co. v. Otto Fabric, Inc.*, 83 B.R. 780, 780 (D. Kan. 1988), the district court, reviewing a decision of the bankruptcy court, was tasked with determining how one perfects a security interest in a patent—in particular, whether a federal filing was necessary to perfect the security interest. The court determined that § 261 addresses assignments, not security interests. It stated:

> [T]o require a federal filing and thus a collateral assignment to perfect a security interest in a patent seems inconsistent with the modern notion that a grant of a security interest need not include the conveyance of title or ownership rights.

7

*Id.* at 782. *See also Holt v. United States*, No. 1976-72, 1973 WL 614, at *3 (D.D.C. Aug. 23, 1973) ("The court is not convinced by defendants' argument that a written assignment of the patent application was necessary to create a security interest. Copycomposer Corporation did not convey title in the patent application; it only granted a security interest.").

The Federal Circuit's decision in *Sky Tech. LLC v. SAP AG*, 576 F.3d 1374 (Fed. Cir. 2009) is also instructive. In *Sky Tech.*, the patent inventor assigned his patent rights to Ozro, Inc. and Ozro granted Cross Atlantic Capital Partners, Inc. ("XACP") a security interest in the patents. Ozro defaulted on its loan obligations and XACP foreclosed on the patents. XACP subsequently assigned its rights in the patents to Sky Technologies. *Id.* at 1378. When Sky Technologies sued an alleged infringer, the defendant moved to dismiss the complaint for lack of standing. *Id.* The defendant's principal argument was that § 261 of the Patent Act requires assignments of patent interests to be in writing and because no writing existed transferring the patents from Ozro to XACP, Sky Technologies did not obtain legal title from XACP. *Id.* at 1379. The Federal Circuit disagreed. It found that even though transfer of patent ownership, if through *assignment*, must be in writing pursuant to § 261, assignment is not the only way by which patent ownership is transferred. *Id.* at 1380. In this case, ownership of the patent transferred from Ozro to XACP through XACP's foreclosure on its security interest. *Id.* And XACP foreclosed on its interest in conformity with the state's UCC law. *Id.* As such, XACP properly obtained title and assigned title to Sky Technologies, giving it standing to sue. *Id.* Of particular note in this case, the defendant argued that if Massachusetts law allowed transfers of patent ownership without a writing, then the law was preempted by § 261 of the Patent Act. *Id.* at 1381. The court found that §

8
Case 2:18-cv-01765-NJ   Filed 06/15/20   Page 8 of 10   Document 188

261 only addresses *assignments* of patents. *Id.* Thus, to the extent patent ownership is conveyed through different means, federal law does not preempt state UCC law. *Id.*

In sum, because the Patent Act does not address perfection of security interests, the mere act of the banks recording their security interests in Raffel's patents at the USPTO did not transfer title of the patents to the banks. Nothing in the Intellectual Property Security Agreements states that Raffel is assigning title of the patents to the banks; rather, the agreements specifically state that Raffel is granting a "security interest" in its intellectual property. (Docket # 113-1 at 5 and Docket # 113-3 at 6.) Thus, Raffel's grant of a security interest in its patents to PrivateBank and East West Bank did not convey title to the banks.

Because Raffel continues to hold title to the patents, it has both constitutional and statutory standing to bring this lawsuit. For these reasons, Man Wah's motion to dismiss is denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Standing (Docket # 112) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal (Docket # 123) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (Docket # 131) is **GRANTED**.

9

Case 2:18-cv-01765-NJ   Filed 06/15/20   Page 9 of 10   Document 188

Dated at Milwaukee, Wisconsin this 15th day of June, 2020.

BY THE COURT

*Nancy Joseph*

NANCY JOSEPH
United States Magistrate Judge