# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RAFFEL SYSTEMS, LLC,**

    Plaintiff,

  v.                                  Case No. 18-CV-1765

**MAN WAH HOLDINGS LTD, INC.,**
**MAN WAH (USA) INC., and XYZ**
**COMPANIES 1–10,**

    Defendants.

---

## DECISION AND ORDER ON CLAIMS CONSTRUCTION

---

Raffel Systems, LLC alleges that it is the owner by assignment of all rights, titles, and interests in four utility patents for lighted cup holders for seating arrangements[1] and one design patent for the ornamental design of the cup holders.[2] Raffel sues Man Wah Holdings Ltd., Inc., Man Wah (USA) Inc., and XYZ Companies 1–10 (collectively "Man Wah") alleging that that Man Wah is making, using, offering for sale, selling, importing, and/or distributing products that infringe Raffel's patents. (Counts 2, 6, 9, 10, 11, 12, and 15 of Fourth Am. Compl., Docket # 108.)

The parties dispute the construction of several terms found in Raffel's utility patents and the construction of Raffel's design patent. (Joint Claim Construction Chart at 3–4, Docket # 86.) The parties filed claim construction briefs (Docket # 77, Docket # 78, Docket # 83,

---

[1] U.S. Patent No. 8,973,882 ("the '882 Patent"); U.S. Patent No. 10,051,968 ("the '968 Patent"); U.S. Patent No. 8,714,505 ("the '505 Patent"); U.S. Patent No. 7,766,293 ("the '293 Patent").
[2] U.S. Patent No. D643,252 ("the '252 Patent").

Docket # 84) and a *Markman*[3] hearing was held before Magistrate Judge David E. Jones on August 15, 2019. (Docket # 94.) The case was subsequently reassigned to me. The question of claims construction has been fully briefed and is now ready for resolution. I will address the parties' arguments related to the utility patents and the design patent in turn.

1.  *Utility Patents*

    1.1  Claim Construction Legal Standards for Utility Patents

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman*, 52 F.3d at 970–71.[4] Thus, when the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it. *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016). "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves." *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201 (Fed. Cir. 2002) (internal quotation marks omitted). Generally, the words of a claim are "given their ordinary and customary meaning," *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), which is "the meaning that the term would have to a person of ordinary skill in the art in question . . . as of the effective filing date of the patent application," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).[5]

In this case, Raffel asserts that the disputed claim terms in the utility patents should be given their plain and ordinary meaning and thus need no construction. Although utilizing a

---

[3]*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995).
[4]Federal Circuit precedent governs matters of substantive patent law. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377 (Fed. Cir. 2010).
[5]The parties do not dispute that a person of ordinary skill in the art in this case is someone with a Bachelor of Science degree in mechanical engineering or a related discipline, with at least two years of experience in product design. (Man Wah's Opening Claim Construction Br. at 7, Docket # 78; Raffel's Resp. Br. at 29, Docket # 84.)

2

Case 2:18-cv-01765-NJ   Filed 06/15/20   Page 2 of 20   Document 190

term's plain and ordinary meaning is generally the preferred course, this may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary meaning" does not resolve the parties' dispute. *Eon Corp. IP Holdings*, 815 F.3d at 1318 (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)). A court need not, however, "attempt the impossible task of resolving all questions of meaning with absolute, univocal finality." *Id.* The court's duty at the claim construction stage is simply to "resolve a dispute about claim scope that has been raised by the parties." *Id.* at 1319.

When the meaning of a claim term as understood by persons of skill in the art is not immediately apparent, the court looks to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Intrinsic evidence (the claims, specifications, and prosecution history) should be examined first. *Vitronics*, 90 F.3d at 1582. Extrinsic evidence (expert testimony, dictionaries, and learned treatises), although useful, is "less significant than the intrinsic record in determining the legally operative meaning of disputed claim language." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) (internal quotation marks omitted). In the end, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be . . . the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

### 1.2 Analysis of Disputed Terms

#### 1.2.1 A1, A2, and A3

The parties dispute the construction of the related terms "A cup holder apparatus for a seating arrangement" ("A1"), "A lighted cup holder apparatus for a seating arrangement"

("A2"), and "A movie theater seating arrangement comprising a cup holder apparatus" ("A3"). The dispute essentially concerns whether these terms should be read according to their plain and ordinary meaning, or whether they should be construed as including certain other elements. I note at the outset that the patents refer to "master" and "slave" circuitry. Except when quoting directly from the patents, I use the term "primary" in place of "master" and "secondary" in place of "slave."

During the *Markman* hearing, the parties summarized the two major disputes regarding A1, A2, and A3: First, whether a "cup holder apparatus" must also contain a "seating arrangement." (Markman Hearing Tr. at 10–11.) Second, whether a "cup holder apparatus" necessitates that there be a primary/secondary relationship among multiple cup holders. (*Id.* at 11.) The parties' proposed constructions of the disputed terms are summarized in the chart below:

| Disputed Term | Relevant Claims | Raffel's Construction | Man Wah's Construction[6] |
|---|---|---|---|
| **A1: A cup holder apparatus for a seating arrangement** | '505 Patent (claims 1–3); '882 Patent (claims 1–3, 12, and 13) | Plain and ordinary meaning. | An apparatus including a seating arrangement and a cup holder circuit including a primary cup holder and secondary cup holders. |
| **A2: A lighted cup holder apparatus for a seating arrangement** | '293 Patent (claims 1, 10, 12) | Plain and ordinary meaning. | An apparatus including a seating arrangement and a lighted cup holder circuit including a primary lighted cup holder and |

---

[6]Although Man Wah initially proposed that all three terms should have the same meaning, it offered alternative constructions as a "compromise" in its response brief to address some of Raffel's arguments. (Man Wah's Resp. Br. at 4 n.2, Docket # 83.) I confine my focus to Man Wah's alternative arguments.

4

| | | | secondary lighted cup holders. |
|---|---|---|---|
| **A3: A movie theater seating arrangement comprising a cup holder apparatus** | '968 Patent (claims 9–11, and 13) | Plain and ordinary meaning. | An apparatus including a movie theater seating arrangement and a cup holder circuit including a primary cup holder and secondary cup holders. |

(Docket # 86 at 3–4.)

All four of the utility patents contain the term "cup holder apparatus." Raffel argues that "cup holder apparatus" can be understood according to its plain and ordinary meaning. (Raffel's Opening Claim Construction Br. at 6–10, Docket # 77.) Man Wah argues that "cup holder apparatus" should be construed here to include a seating arrangement and a primary/secondary relationship between multiple cup holders. (Man Wah's Opening Claim Construction Br. at 7–10.)

The resolution to this dispute begins and ends with the language of the claims. Beginning with Man Wah's argument that a "cup holder apparatus" includes a seating arrangement, the claim language says otherwise. For example, in the '505 patent, Claim 1 is an independent claim for "a cup holder apparatus _for_ a seating arrangement." (U.S. Patent No. 8,714,505 col.7 l.55–56 (filed May 6, 2014), Ex. 2 to Fourth Am. Compl., Docket # 108-2) (emphasis added). It does not say _including_ or any other word that would indicate that the apparatus includes the seating arrangement. Claim 1 then goes on to articulate what the "apparatus" comprises. ('505 col.7 l.57–64, col.8 l.1–8.) Both the '882 Patent and the '293 Patent similarly claim a "cup holder apparatus" or "lighted cup holder apparatus" _for_ a "seating arrangement" and then further state what comprises the "apparatus." (U.S. Patent

5

No. 8,973,882 col.7 l.59–67, col.8 l.1–13, Ex. 3 to Fourth Am. Compl., Docket # 108-3; U.S. Patent No. 7,766,293 col.7 l.50–67, col.8 l.1–8, Ex. 1 to Fourth Am. Compl., Docket # 108-1.) Thus, for the '505, '882, and '293 Patents, defining the "cup holder apparatus" as *including* the "seating arrangement" is nonsensical. The "cup holder apparatus" cannot include the "seating arrangement" if it is "for" the seating arrangement.

In contrast, the '968 Patent claims "a movie theater seating arrangement *comprising* a cup holder apparatus," and then states what comprises the "cup holder apparatus." (U.S. Patent No. 10,051,968 col.8 l.61–67, col.9 l.1–7, Ex. 4 to Fourth Am. Compl. Docket # 108-4) (emphasis added). Thus, for the '968 Patent, the "movie theater seating arrangement" does include the "cup holder apparatus."

Man Wah also argues that "cup holder apparatus" should be construed to require a primary/secondary relationship between multiple lighted cup holders. The "Summary of the Invention" for all four utility patents contains the following language:

> Some forms of the invention include a master lighted cup holder and one or more slave lighted cup holders operatively connected to the master lighted cup holder in such a manner that the light sources in the slave lighted cup holders produce light only when commanded to do so by the master lighted cup holder.

('505 Patent col.2 l.45–50; '882 Patent col.2 l.47–52; '293 Patent col.2 l.36–41; '968 Patent col.2 l.64–67, col.3 l.1–2.)

For the '293 Patent, this dispute is resolved through the claim language. In the '293 Patent, Claims 1 and 6 are for: "A lighted cup holder apparatus for a seating arrangement, the apparatus comprising: *at least one* lighted cup holder . . . ." ('293 Patent col.7 l.50–52; '293 Patent col.8 l.24–26) (emphasis added). These claims presume that the apparatus may have only one lighted cup holder, in which case there would not be primary and secondary lighted cup holders. Claim 9, which is a dependent claim that adds further limitations to Claim 6 (and

6

other claims), addresses a lighted cup holder apparatus where the lighted cup holder is a primary lighted cup holder and the lighted cup holder apparatus further comprises a secondary lighted cup holder. ('293 Patent col.8 l.57–60.). Thus, interpreting the language in the independent Claim 6 as including the primary/secondary requirement would render Claim 9 superfluous. *See Dow Chem. Co. v. United States*, 226 F.3d 1334, 1341–42 (Fed. Cir. 2000) (concluding that an independent claim should be given broader scope than a dependent claim to avoid rendering the dependent claim redundant). Thus, the term "a lighted cup holder apparatus for a seating arrangement" should be given its plain and ordinary meaning and not be read to include the primary/secondary requirement.

For the '505, '882, and '968 Patents, the relevant claims themselves do not mention the primary/secondary relationship between cup holders. Raffel argues that given the language in the specifications that _some_ forms of the invention include primary/secondary lighted cup holders, the cup holder apparatus may or may not contain primary/secondary lighted cup holders. (Markman Hearing Tr. at 11–12, Pl.'s Opening Br. at 9–10.) In other words, the scope of the patent is broad enough to cover potentially infringing products that either do or do not contain primary/secondary lighted cup holders.

Man Wah argues that the specifications themselves provide a definition of the disputed claim terms that includes primary/secondary lighted cup holders. Man Wah points to fig.1 and its description in the '968 Patent, the '505 Patent, the '882 Patent, and the '293 Patent. Fig. 1 is reproduced below:

7



FIG. 1

The image shows three movie theater-style chairs with a cup holder on each arm rest, for a total of four cup holders. The "Detailed Description of the Preferred Embodiment" of fig.1 states as follows:

> FIG. 1 shows a first exemplary embodiment of a lighted cup holder apparatus 100, according to the invention, including a seating arrangement 102, and a lighted cup holder circuit 104, including a master lighted cup holder 106, three slave lighted cup holders 108, and a transformer 110.

(U.S. Patent No. 7,766,293 col.4 l.29–33 (filed Aug. 3, 2010), Ex. 1 to Fourth Am. Compl., Docket # 108-1.) Man Wah points out that the figure shows an arrow for "100" (the "lighted cup holder apparatus") that appears to point at the entire object. Similarly, fig.6 in the '293 patent shows "a lighted cup holder apparatus 200, according to the invention, includes a seating arrangement 202 having three upholstered reclining chair portions 206 . . . Master and slave lighted cup holders 106, 108, configured and connected in the manner described above in relation to the first exemplary embodiment 100, are mounted in the modular spacers 206." (*Id.* at col.6 l.41–51.) Man Wah argues that these figures and descriptions define the "lighted

8

cup holder apparatus" as including both the seating arrangement and the primary/secondary lighted cup holders.

But the fact that these figures and their descriptions depict an apparatus that includes both a seating arrangement and primary/secondary lighted cup holders does not mean that the scope of the claim is limited to such apparatuses; these figures are merely the "preferred embodiment" of the invention. While "a patentee's choice of embodiments can shed light on the intended scope of the claim, [ ] a patent claim term is not limited merely because the embodiments in the specification all contain a particular feature." *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 865 (Fed. Cir. 2004). Further, to "act as his own lexicographer," a patentee must "clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments; the patentee must "clearly express an intent" to redefine the term. *Id.* Here, I am not convinced that the patentee "clearly express[ed] an intent" to redefine the terms. The specifications state that only "some" forms of the invention include primary/secondary lighted cup holders, and these figures show only one possible form that happens to include that element.

Furthermore, Claim 1 of the '968 Patent describes a seating arrangement for a passenger vehicle as follows: "a seating arrangement comprising a cup holder apparatus, the cup holder apparatus comprising . . . ." ('968 Patent col.8 l.16–19.) Dependent Claim 6 claims "[t]he passenger vehicle of claim 1, wherein the seating arrangement comprises a master lighted cup holder apparatus and one or more slave lighted cup holder apparatuses . . . ." (*Id.*

9

col.8 l.42–44.) Interpreting the "seating arrangement comprising a cup holder apparatus" to already include the primary/secondary cup holders would render Claim 6 redundant. *See Dow Chem. Co.*, 226 F.3d at 1341–42. Thus, I find that the patentee did not intend to limit the patents' scope to only those cup holder apparatuses containing a primary/secondary cup holder.

### 1.2.2 Control Switch [Or Connection]

The parties also dispute the meaning of the term "control switch [or connection]." Raffel argues that this term should be construed according to its plain and ordinary meaning, while Man Wah argues that "control switch" and "connection" should both be defined as "A positional[able/ally] actuated on-off switch." The dispute is summarized below:

| Disputed Term | Relevant Claims | Raffel's Construction | Man Wah's Construction |
| --- | --- | --- | --- |
| **Control Switch [or connection]** | '293 Patent (claim 12); '505 Patent (claims 1–3); '882 Patent (claims 1–3, and 12–13); '968 Patent (claims 9–11 and 13) | Plain and ordinary meaning. | A position[able/ally] actuated on-off switch. |

Again, I begin with the language of the claims themselves. *Tex. Digital Sys., Inc.*, 308 F.3d at 1201. All four utility patents contain the following fig.7:



10

The specifications describe fig. 7 as follows:

> FIG. 7 shows another exemplary embodiment of a lighted cup holder 300, according to the invention, in which a flange 302 of the cup holder body 304 includes an expanded section 306 thereof, for mounting therein of a control switch 308 for a massage mechanism of a seating arrangement, and a USB port 310. As will be understood, by those having skill in the art, various other types of controls and connections may alternatively be included in a flange, or be otherwise attached to a lighted cup holder, according to the invention. For example, other types of outputs for connection of an audio headset may be provided, together with an individual volume control for each of the occupants using the seating arrangement. In similar fashion, for seating arrangements which do not have a massager, but may, for example, have a powered, reclining mechanism, appropriate controls may be included in a lighted

('293 Patent col.6 l.53–67; '505 Patent col.6 l.59–67, col.7 l.1–3; '882 Patent col.6 l.62–67, col.7 l.1–6; '968 Patent col.7 l.19–31.)

It is clear from this language that "control switch" and "connection" have separate meanings. The specification states that the flange may contain "other types of controls and connections." It gives an example "connection" as an output for connection of an audio headset and an example "control" as a powered, reclining mechanism. ('293 Patent col.6 l.61–67.) The specification states that "[b]y incorporating such controls *and* connections into the lighted cup holder, construction of the seating arrangement may be simplified, and aesthetic appearance be approved." ('293 Patent col.7 l.1–4) (emphasis added). Thus, the patent clearly intends "connection" and "control" to refer to separate elements. It seems evident that between these two terms, a "position[able/ally] actuated on-off switch" would be a control, not a connection.

11

Man Wah argues that the patentee defined the term "control switch" "by implication" by using the term consistently throughout the patent. *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1377 (Fed. Cir. 2017) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'") (internal quotation and citation omitted). Man Wah points to two specific places in the patents where "positionable actuated on-off switch" is used: in the "summary of the invention" and in the description of the preferred embodiment. The "summary of the invention" explains that the invention may be used on seating arrangements having cup holders mounted on folding backrests, or other stowable portions of the seating apparatus. ('293 Patent col.3 l.37–44; '505 Patent col.3 l.45–52; '882 Patent col.3 l.47–54; '968 Patent col.3 l.66–67, col.4 l.1–6.) In "such embodiments, a lighted cup holder apparatus, according to the invention, may include a positionable actuated on-off switch configured to automatically override the light-sensitive element, to turn off the illumination when the movable portion of the seating arrangement is placed in the stowed position." (*Id.*) In the preferred embodiment, the patents similarly describe a form of the invention having stowable structures:

> form of light emitting diodes. In other forms of the invention having lighted cup holders located in a folding backrest, or other stowable structure, which would block ambient light from impinging on the light-sensitive element when the stowable structure is in the stowed position, the electrical construction of the invention may also include a positionally actuated on-off switch (not shown) for over-riding the light-sensitive element when the stowable structure is in the stowed position.

('293 Patent col.6 l.30–38; *see also* '505 Patent col.6 l.36–44; '882 Patent col.6 l.39–47; '968 Patent col.6 l.62–67, col.7 l.1–3.) In both places, the term "positionally actuated on-off switch" refers to a switch overriding the light-sensitive element when a stowable structure is in the stowed position. In contrast, in both the specifications and the claims, a "control switch" refers to several different features that can be controlled by a switch, such as power reclining, volume, or a massage mechanism. (*See* '293 Patent col.6 l.54–67, col.7 l.1–4.) The patentee did not use the term "control switch" in a manner consistent with the single meaning of a "position[able/ally] actuated on-off switch." Thus, I find the terms "control switch" and "connection" should be given their plain and ordinary meaning and do not include a "position[able/ally] actuated on-off switch."

### 1.2.3 Flange

The parties dispute the term "flange." The crux of the parties' dispute is whether the term "flange" includes only flanges that are non-removable (i.e., are attached to the cup holder body as a single unit), or both removable and non-removable flanges.[7] Raffel advocates for the plain and ordinary meaning of "flange," which includes both removable and non-removable flanges. Man Wah would limit the meaning of "flange" to non-removable flanges. The dispute is summarized below:

| Disputed Term | Relevant Claims | Raffel's Construction | Man Wah's Construction |
| --- | --- | --- | --- |
| Flange | '293 Patent (claim 10 and 12); '505 Patent (claims 1–3); '882 Patent (claims 1–3, and 12–13); | Plain and ordinary meaning. | A non-removable rim attached to cup holder body as a single unit.[8] |

---

[7] During the *Markman* hearing, Man Wah acknowledged that use of the word "rim" was not dispositive to its argument. (*Markman* hearing Tr. at 55.)

[8] During the *Markman* hearing, Man Wah agreed to narrow the dispute by removing from its proposed construction of "flange" the language "into which a control switch is incorporated." (*Markman* Hearing Tr. at 43.)

13

|  | '968 Patent (claims 9–11 and 13) |  |  |

All four utility patents contain the following fig.3 and fig.7:



In fig.3, the "flange" is labeled 136. In fig.7, the "flange" is labeled 302. Raffel acknowledges that while the flange of fig.3 appears to be part of a single piece with the cup holder body, the flange in fig.7 does not depict a single piece construction. (Raffel's Opening Claim Construction Br. at 18.) Raffel argues that fig.7 depicts a "flange and cupholder that could be a single piece, could be attached to each other (removably or non-removably), or could be connected by some other structure." (*Id.* at 19.)

Man Wah contends that the term "flange" in the subject patents is limited to a "non-removable" rim attached to the cup holder body as a single unit. Man Wah argues that Raffel disclaimed any meaning of flange that is removably connected to the cup holder body in the prosecution history of a related patent obtained subsequent to the patents at issue in this case—U.S. Patent No. 9,867,471 ("the '471 Patent"). (Man Wah's Resp. Br. at 8, citing

14

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001) ("The prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit.").)

"Prosecution disclaimer 'preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution.'" *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)). For prosecution disclaimer to attach, the alleged disavowing actions or statements made during prosecution must be both clear and unmistakable. *Id.* In *Aylus*, the Federal Circuit noted that although this doctrine arose in the context of pre-issuance prosecution, it has also applied the doctrine in post-issuance proceedings before the USPTO. *Id.* at 1360.

The '471 Patent was prosecuted in 2017 and granted in January 2018. U.S. Patent and Trademark Office ("USPTO"), U.S. Patent No. 9,867,471, http://patft.uspto.gov/ (last visited June 15, 2020). The '471 Patent is undoubtably part of the same patent family as the patents at issue in this case and contains the same fig.3 and fig.7 reproduced above. *Id.* During prosecution of the '471 Patent, the patentee asserted the following claim: "a flange removably connected to the cup holder body at the open top end thereof . . . ." (Declaration of Michael L. Lindinger ("Lindinger Decl.") ¶ 7, Ex. 4, Docket # 79-4 at 2.) The patentee's claims regarding the flange were rejected under 35 U.S.C. § 112 for failing to comply with the written description requirement. (Lindinger Decl. ¶ 8, Ex. 5, Docket # 79-5 at 4.)[9] Specifically, the

---

[9] A patent specification must contain an adequate written description. 35 U.S.C. § 112; *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003). "Although the statute proscribes addition of new matter to a specification or claims under [35 U.S.C.] § 132, the United States Court of Customs and Patent Appeals decided to police the addition of new matter to claims separately using § 112." *Moba, B.V.*, 325 F.3d at 1319. "The written description is the metric against which a subsequently added claim is measured to determine if it is due the priority date of the original patent."

15

USPTO found that the specifications and drawings did not disclose the flange as removably connected to the cup holder body. (*Id.* at 4–5.) The rejection further stated that it was not clear how the flange would be removably connected to the cup holder body. (*Id.* at 5.) The patentee amended the '471 patent by removing the "removably connected to the cup holder body at the open top end thereof" language, leaving simply "flange." (Lindinger Decl. ¶ 9, Ex. 6, Docket # 79-6 at 3–4.) Man Wah argues that by removing this limitation, Raffel disclaimed any meaning of "flange" that is removably connected to the cup holder body.

At the *Markman* hearing, Raffel argued that the examiner was not rejecting the claim based on its breadth or the scope of "flange"; rather, it made a "new matter rejection," rejecting use of a word that was not found in the application. (*Markman* Hearing Tr. at 51–58.) Raffel argued that there was no determination whether the language of the patent's specifications included both removable and non-removable flanges, and that it was clear that it did. (*Id.* at 52–53.)

Raffel's assertion is belied by the fact the examiner specifically rejected the claims on the basis that the specifications and drawings of the flange (specifically 136 and 302) did not disclose the flange as removably connected to the cup holder body. (Docket # 79-5 at 5.) The examiner went so far as to say that it was unclear just *how* the flange would be removably connected to the cup holder body based on the specification and drawings. (*Id.*) ("[N]or is it

---

*Id.*; *see also In re Wright*, 866 F.2d 422, 424 (Fed. Cir. 1989) ("When the scope of a claim has been changed by amendment in such a way as to justify an assertion that it is directed to a different invention than was the original claim, it is proper to inquire whether the newly claimed subject matter was described in the patent application when filed as the invention of the applicant. That is the essence of the so-called 'description requirement' of § 112, first paragraph."). The purpose of the written description requirement is to prevent an applicant from later asserting that he invented something he did not invent. *Moba, B.V.*, 325 F.3d at 1319. Thus, the invention must be described in enough detail that future claims can be determined to be encompassed within the original invention. *Id.*

16

clear how the flange would be removably connected to the cup holder body."). The examiner's concern is apparent from the drawings themselves. Raffel admits that fig.3 shows a flange that is part of a single piece with the cup holder body. (Raffel's Br. at 18–19.) And while Raffel argues that fig.7 *could* depict a removeable or non-removeable flange, nothing in the drawings or specifications actually indicates that the flange is potentially removable. Given the USPTO's rejection language and the patentee's subsequent amendment removing the "removably connected to the cup holder body" language, it is reasonable to interpret the patentee's action as acknowledging that the flange was not "removably connected." If the patentee intended to convey that the flange was *either* removable *or* non-removable to satisfy the examiner's concerns that the specifications and drawings did not describe a removably connected flange, it is unclear how deleting the "removably connected" language would accomplish this.

The purpose of the prosecution disclaimer doctrine is to ensure that claims are not "'construed one way in order to obtain their allowance and in a different way against accused infringers.'" *Aylus Networks, Inc.*, 856 F.3d at 1360 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)). As the Supreme Court has explained:

> [W]hen a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions for the purpose of obtaining his patent, he cannot after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it.

*Roemer v. Peddie*, 132 U.S. 313, 317 (1889). While Raffel points to the general language in its response that it was making its amendments "without prejudice to or disclaimer of subject matter therein" (Docket # 79-6 at 5), this language appears to be boilerplate and not tailored specifically to the scope of "flange." *Cf. Aylus Networks, Ind.* 856 F.3d at 1359 (explaining that

disclaimer can be made through amendment as long as it is clear and unmistakable). I find the patentee's amendment a clear and unmistakable disclaimer of the "removably connected" meaning from "flange" in the '471 Patent.

Given the close relation between the '471 Patent and the patents at issue in this case, the prosecution history of the '471 Patent informs the patentee's intent regarding the meaning of the term "flange" in the prior patents. The fact that the patentee attempted to broaden the meaning of "flange" in subsequent patents to include removable flanges suggests that the prior patents included only non-removable flanges. The prosecution history, coupled with the drawings and specifications, supports construing "flange" as non-removable, attached to the cup holder body as a single unit.

 2. *Design Patent*

  2.1 Claim Construction Legal Standards for Design Patents

A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). As with utility patents, determining whether a design patent claim has been infringed requires determining its meaning and scope. *Id.* However, because design patents "typically are claimed as shown in drawings," the court is not required to attempt to provide a detailed verbal description of the claimed design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (internal quotation and citation omitted). Rather, "[a] design patent's claim is . . . often better represented by illustrations than a written claim construction." *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016). Although providing a verbal description of a design is generally unfavored, the Federal Circuit has found that a verbal description may be helpful to the trier of fact in circumstances where the design contains both functional and non-

functional elements. *Egyptian Goddess, Inc.*, 543 F.3d at 679; *see also OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). The Federal Circuit has "emphasize[d] that a district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion." *Egyptian Goddess, Inc.*, 543 F.3d at 679.

### 2.2 Analysis of Disputed Term

The '252 Patent includes eight figures depicting the ornamental design for a cup holder. (Docket # 108-6.) While Raffel relies on the eight figures depicted in the patent, Man Wah argues this patent requires a detailed verbal description. Man Wah relies principally on a statement made by the inventor, Paul Stangl, to the USPTO regarding the placement of switches on the flange in which he stated:

> As an engineer, I am well versed in the many different factors that go into any design decisions regarding the shape, location, or proximity of elements in an apparatus (e.g., placement of switches). To say that the shape or location of an element within a well-designed structure is merely "a design preference" or only "aesthetic" in nature is to mischaracterize the process involved in creating such a structure.

(Lindinger Decl. ¶ 6, Ex. 3, Declaration of Paul Stangl ¶ 7, Docket # 79-3.) Man Wah argues that Stangl's statements "make clear that Raffel believes that the shape, location, and proximity of the elements in the cup holder are functional." (Man Wah's Br. at 20–21.) Man Wah intends to argue that the '252 Patent is entirely functional and therefore invalid. (*Id.* at 22; *Markman* Hearing Tr. at 83–84.)

As Judge Jones noted at the *Markman* Hearing (*Markman* Hearing Tr. at 88.), on the current record the court cannot construe which portions of the design are functional and

which portions are ornamental. For this reason, at this time I will construe the claim as "The ornamental aspects or features of a cup holder depicts in FIGS. 1–8." Man Wah is free to raise an invalidity argument at a later date on a proper record. (*Id.*)

## CONCLUSION

I construe the disputed terms as follows:

| TERM | CONSTRUCTION |
|---|---|
| **A1: A cup holder apparatus for a seating arrangement** | Plain and ordinary meaning. |
| **A2: A lighted cup holder apparatus for a seating arrangement** | Plain and ordinary meaning. |
| **A3: A movie theater seating arrangement comprising a cup holder apparatus** | Plain and ordinary meaning. |
| **Control Switch [or connection]** | Control Switch – Plain and ordinary meaning. Connection – Plain and ordinary meaning. |
| **Flange** | Non-removable, attached to cup holder body as a single unit. |
| **The '252 Design Patent** | The ornamental aspects or features of a cup holder depicted in FIGS. 1–8. |

Dated at Milwaukee, Wisconsin this 15th day of June, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

20

Case 2:18-cv-01765-NJ   Filed 06/15/20   Page 20 of 20   Document 190