# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RAFFEL SYSTEMS, LLC,**

    Plaintiff,

    v.                                                             Case No. 18-CV-1765

**MAN WAH HOLDINGS LTD, INC.,**
**MAN WAH (USA) INC., and XYZ**
**COMPANIES 1-10,**

    Defendants.

---

## DECISION AND ORDER ON PLAINTIFF'S MOTION FOR CONTEMPT

---

Raffel Systems, LLC alleges that it is the owner by assignment of all rights, titles, and interests in four utility patents for lighted cup holders for seating arrangements[1] and one design patent for the ornamental design of the cup holders.[2] Raffel sues Man Wah Holdings Ltd., Inc., Man Wah (USA) Inc., and XYZ Companies 1–10 (collectively "Man Wah") alleging that Man Wah is making, using, offering for sale, selling, importing, and/or distributing products that infringe Raffel's patents. (Counts 2, 6, 9, 10, 11, 12, and 15 of Fourth Am. Compl., Docket # 108.)

Raffel moves for an order of contempt, finding that Man Wah sold allegedly counterfeit cupholders between March 2019 and November 2019 in violation of two court orders. For the reasons explained below, Raffel's motion is granted.

---

[1] U.S. Patent No. 8,973,882; U.S. Patent No. 10,051,968; U.S. Patent No. 8,714,505; U.S. Patent No. 7,766,293.
[2] U.S. Patent No. D643,252.

## BACKGROUND

In 2018, Man Wah sold cup holders to American Signature, Inc. ("ASI"), one of its best customers. (Declaration of John Scheller ("Scheller Decl.") ¶ 4, Ex. 4, Docket # 152.) ASI began experiencing failures, however, with the cup holders purchased from Man Wah. (*Id.*) Raffel sued Man Wah for infringement in November 2018 and requested a temporary restraining order. (Docket # 1 and Docket # 3.) Soon thereafter, in February 2019, ASI refused all furniture units containing the non-Raffel cup holders purchased from Man Wah. (*Id.*) Around this time, with the help of the Court, the parties began negotiating a stand-down agreement. (Transcript of Mar. 11, 2019 Hearing, Docket # 136; Declaration of Clark Bakewell ¶ 4, Ex. 2, Docket # 168-2.) As part of the proposed stand-down agreement, Man Wah would: "Refrain from manufacturing, using, selling, offering to sell, or importing in the U.S. any furniture that contains a non-Raffel cup holder that is indistinguishable from an authentic Raffel cup holder product as depicted and/or described below." (Docket # 168-2 at 6.)

At a hearing on March 21, 2019, Magistrate Judge David Jones discussed the stand-down agreement. (Transcript of Mar. 21, 2019 Hearing ("Mar. 21 Tr."), Docket # 137.) At that time, Judge Jones found that Raffel "showed that they at least on if not the patent claims then at least the confusion claims and the unfair competition claims have a pretty good shot in regard to the incidents that they've identified based on the appearance." (*Id.* at 4.) Judge Jones stated that the purpose of entering an order based on the stand-down agreement was to "ensure that cup holders that are passing themselves off as Raffel cup holders get out of the stream of commerce." (*Id.* at 6–8.)

The parties discussed the practical implications of what to do with the inventory. Counsel explained that Man Wah had inventory in China and that it could swap out the "knock-off" cup holders with other cup holders fairly easily. (*Id.* at 15.) Counsel further explained, however, that there was also inventory in Man Wah's customers' possession in the United States and that it would be "extremely expensive to have to go into customers' warehouses to unpack furniture, to take out the wrapping, to take it off the shelves, to put in different cup holders." (*Id.*) Judge Jones entered an Order adopting part A of the parties' proposed stand-down agreement, which restricted Man Wah from "manufacturing, using, selling, offering to sell, or importing into the United States any furniture that contains a non-Raffel cup holder that is indistinguishable from an authentic Raffel cup holder product as depicted and/or described below." (*Id.* at 24; July 11, 2019 Preliminary Injunction Order at 2, Docket # 87.) Judge Jones stated that they had a "good solution for how we deal with the inventory in China," but stated that there was "a potential problem with the fact that these – that there's furniture in show rooms in the United States that may well contain these problematic and possibly in some cases, possibly, potentially detective cup holders." (Mar. 21 Tr. at 17.) Judge Jones ultimately stated that he was "going to send you guys back for one more cut at it because I need to -- I need something that addresses the items of commerce that are no longer in the inventory that are out there." (*Id.* at 20.)

Judge Jones entered a version of both part A and part B of the parties' proposed stand-down agreement as a preliminary injunction on July 11, 2019. This Order addressed the issue of inventory in Man Wah's customers' possession as follows: "Send a Notification Letter, in the form of Exhibit A attached hereto, to each and every Man Wah customer in the United States that has purchased a piece of furniture with an accused cup holder from Man Wah in

3

Case 2:18-cv-01765-NJ   Filed 08/21/20   Page 3 of 8   Document 210

the last eighteen months." (Docket # 87 at 5.) The letter informed the customer that Man Wah offers to replace all subject cup holders in furniture in the customers' inventory with replacement cup holders; however, the letter also informed that while Man Wah "encourage[s] you to accept Man Wah's offer to replace any Subject Cup Holders you might have in your inventory with authorized Raffel Cup Holders or New Cup Holders, there is no Court Order requiring you to do so." (Docket # 87-1.)

Man Wah subsequently sold the furniture rejected by ASI to at least three of its customers (Hanks, Parker House, and Exclusive Furniture) to mitigate Man Wah's losses from the ASI returns. (Scheller Decl. ¶ 18, Ex. 18, Deposition of Megan Allen at 24–29, Docket # 152–3; Scheller Decl. ¶ 21, Ex. 20; Scheller Decl. ¶ 22, Ex. 21; Scheller Decl. ¶ 23, Ex. 21.) It appears that ASI rejected approximately 2,791 pieces of furniture from Man Wah, amounting to approximately 4,840 cup holders. (Scheller Decl. ¶ 7, Ex. 7, Docket # 152-3 at 31.) Man Wah planned to "offer the current ASI returns to other customers at a 20% discount and be prepared as mentioned above to stand behind that product and replace any bad cup holders." (*Id.* at 31–32.)

## ANALYSIS

### 1. Legal Standard for Civil Contempt

It is well understood that "'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" *Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also* 18 U.S.C. § 401(3) (stating that a court may "punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command"). A party has to make a "good faith

effort to comply with the district court's order." *Am. Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982). However, "[a] district court may not enter an order of civil contempt unless it finds by clear and convincing evidence that a party has violated the express and unequivocal command of a court order." *In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010). In most instances, "violations of a court order need not be willful to constitute civil contempt." *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 n.9 (7th Cir. 1981). Rather, the court may find a party in contempt if it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *In re Resource Tech. Corp.*, 624 F.3d at 388 (internal quotation and citation omitted).

    2.    *Application to this Case*

Raffel argues that Man Wah sold at least 1,400 pieces of furniture with counterfeit cup holders between March 21 and November 2019, in violation of the Court's March 21, 2019 and July 11, 2019 Orders. (Pl.'s Br. at 4, Docket # 151-1.) As to the furniture sold subsequent to the Court's March 21, 2019 Order and prior to the entry of the July 11, 2019 preliminary injunction, Man Wah argues that the Order did not apply to, and did not mean to address, products that had already entered the stream of commerce. (Defs' Br. at 10, Docket # 165.) Man Wah argues that after March 21, 2019, it ceased manufacturing and selling newly manufactured inventory that contained "a non-Raffel cup holder that is indistinguishable from an authentic Raffel cup holder." (*Id.* at 11.) It argues that "[g]iven that no new products with accused cup holders were being sold, Man Wah believed in good faith that it was complying with the Court's order." (*Id.* at 12.)

As to products sold after the July 11, 2019 preliminary injunction, Man Wah argues that it sold the ASI sofas to Hanks, Parker House, and Exclusive Furniture, but only if

5

accompanied by Raffel cup holders to allow the customer to swap out the accused cup holders for Raffel cup holders and where the customer agreed in writing to: (1) swap out accused cup holders for genuine cup holders before any distribution of the cup holders; (2) provide evidence to Man Wah that the swap occurred; and (3) send the swapped-out cup holders back to Man Wah. (*Id.* at 15.) Man Wah stated that it would not invoice the customer until proof was received that the accused cup holders had been swapped out. (*Id.*) In other words, Man Wah argues it did not violate the preliminary injunction because no "sale" occurred until the customer provided proof that it swapped out the offending cup holders.

Having reviewed the relevant transcripts and orders, I find that Man Wah violated both the March 21, 2019 and the July 11, 2019 Orders. As to the sale of the "recycled" ASI furniture between March 21, 2019 and July 11, 2019, this violated the express terms of the March 21 Order. At the March 21, 2019 hearing, counsel discussed what to do with two types of inventory: (1) cup holders currently in China but not in the possession of Man Wah customers and (2) cup holders in the United States and currently in the possession of Man Wah customers. Throughout the hearing, Judge Jones emphasized that the goal was to get "knock-offs" out of the stream of commerce. Accordingly, Judge Jones was concerned with first preventing further "knock-offs" from entering the stream of commerce, and then dealing with the more difficult issue of removing "knock-off" cup holders already installed into furniture and sitting in warehouses and show rooms across the country. Thus, Man Wah's argument that Judge Jones did not specifically address the returned ASI inventory at the March 21, 2019 hearing and that he only addressed products not yet in the stream of commerce is not strictly incorrect.

However, as the parties and Judge Jones discussed at the hearing, an important part of the goal of removing the knock-off products from the stream of commerce was the concern for inventory in Man Wah's possession versus inventory in Man Wah's customers' possession. (Mar. 21 Tr. at 16–17.) When ASI either returned or refused inventory with defective cup holders, Man Wah again had the inventory in its possession. As Man Wah's emails show, Man Wah planned to replace the defective cup holders and resell them to its customers at a discounted rate. This is not the situation where inventory was already sitting in the warehouse or showroom of a customer and thus swapping out potentially infringing cup holders would cause great difficulty and expense. Thus, if Man Wah sold returned ASI furniture containing counterfeit cup holders after March 21, 2019, Man Wah cannot have reasonably believed it was complying with the Court's Order simply because it was not manufacturing something new. Thus, to the extent Man Wah sold furniture with a "non-Raffel cup holder that is indistinguishable from an authentic Raffel cup holder product as depicted and/or described below," Man Wah violated the March 21, 2019 Order prohibiting the sale or offer of sale of such products.

As to the inventory sold after entry of the July 11, 2019 preliminary injunction, Man Wah does not dispute it sold the returned ASI furniture to other customers; however, it argues that after the injunction, the sales were contingent upon the customers agreeing to replace the cup holders with Raffel cup holders. (Defs' Sur-Reply Br. at 3, Docket # 180-1.) Man Wah argues that it adopted these procedures because the customers were better suited to make the replacements of the cup holders than Man Wah. (Defs' Br. at 15.) However, both the March 21, 2019 Order and the July 11, 2019 preliminary injunction explicitly proscribed the *offer* to sell prohibited items. As such, even if the sale was not complete until the customer swapped

out the cup holders, the offer to sell inventory with the "knock-off" cup holders violated the express terms of the July 11, 2019 preliminary injunction. Thus, the sale of these products after July 11, 2019 also violated the Court's Orders.

In terms of damages, Raffel requests both compensatory and corrective sanctions, as well as attorneys' fees incurred in bringing the contempt motion. (Pl.'s Br. at 14.) I will defer ruling on the specific sanction for Man Wah's violation of the March 21 and July 11 orders. The parties are ordered to confer and attempt to reach a satisfactory resolution of an appropriate sanction. The parties must provide the Court with a written status update of their negotiations by **September 11, 2020**.

## ORDER

**NOW, THEREFORE, IS IT ORDERED** that the plaintiff's motion for contempt (Docket # 150) is **GRANTED**. The parties are ordered to confer regarding an appropriate resolution and provide the Court with a status update no later than **September 11, 2020**.

**IT IS FURTHER ORDERED** that the following motions to seal are **GRANTED**: (Docket # 149, Docket # 155, Docket # 173, Docket # 179, Docket # 182, Docket # 184.)

**IT IS FURTHER ORDERED** that the defendants' motion for leave to file a sur-reply brief (Docket # 180) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 21st day of August, 2020.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge