UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAFFEL SYSTEMS, LLC,

    Plaintiff,

  v.                                                  Case No. 18-CV-1765

MAN WAH HOLDINGS LTD, INC.,
MAN WAH (USA) INC., and XYZ
COMPANIES 1-10,

    Defendants.

## DECISION AND ORDER ON PLAINTIFF'S RULE 54(B) MOTION FOR RECONSIDERATION

Presently before me is Raffel Systems, LLC's expedited non-dispositive motion under Civil L. R. 7(h) (E.D. Wis.) for reconsideration of two findings made by the Court in its November 5, 2021 summary judgment decision: (1) that Raffel was bound by the 2016 and 2017 Supplier Agreements and (2) that the 2017 Supplier Agreement was valid. (Docket # 414-1.) For the reasons explained below, Raffel's motion is denied.

### RECONSIDERATION STANDARD

Raffel asks the Court to reconsider a portion of the summary judgment decision. Rule 54(b) allows a court to exercise its inherent authority to reconsider nonfinal orders. *See Civix-DDI, LLC v. Hotels.com, LP*, 904 F. Supp. 2d 864, 866 (N.D. Ill. 2012) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("Every order short of a final decree is subject to reopening at the discretions of the . . . judge.")). A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v.*

*Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665–66 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). While "[a] court has the power to revisit prior decisions of its own," courts "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996).

## ANALYSIS

Man Wah Holdings Ltd., Inc., Man Wah (USA) Inc., and XYZ Companies 1–10 (collectively "Man Wah") counterclaims against Raffel for breach of contract, breach of the covenant not to sue, and breach of the covenant of good faith and fair dealing, arising out of two Supplier Contracts allegedly entered into by the parties in 2016 and 2017. (Counterclaim XI and Counterclaim XIV, Docket # 193.) Man Wah alleges that Raffel breached these two contracts by bringing the instant lawsuit (as the contracts contain a provision specifying that "any disputes arising from the execution of the contract or related to the contract should be settled through friendly negotiation between the two parties") and by selling cup holders and switches to third parties when the agreements provided for an exclusive relationship with Man Wah. (*Id.*) The parties do not dispute that Xiamen Raffel, not Raffel Systems, LLC, signed the two agreements. The parties similarly do not dispute that Xiamen Raffel is a wholly owned subsidiary of Raffel Systems, LLC. (Docket # 361 at 42–43.)

Raffel moved for summary judgment in its favor as to both of these breach of contract counterclaims. Raffel made three arguments in support of its position. First, Raffel challenged

2

Man Wah's assertion that Raffel was bound to the contract under a theory of agency. Second, Raffel argued that the 2016 Supplier Agreement expired on December 31, 2016 and was not renewed; thus, the 2017 Supplier Agreement was invalid because it was never executed. (Docket # 292-1 at 28–29.) And third, even if Raffel was a party to the contracts and both were valid, it did not breach the contracts. (*Id.* at 31–32.) I determined that Raffel was bound by the 2016 and 2017 Supplier Agreements under an agency theory and that the 2017 Supplier Agreement was valid (Docket # 361 at 42–46); however, I found that questions of fact remained as to whether Raffel breached Article 2.4 of the Agreements and thus denied Raffel's summary judgment motion (*id.* at 48–49).[1]

    1.    *Whether Raffel is Bound by the Supplier Contracts*

Raffel argues that the Court made a manifest error of law when it found that Raffel was bound by the two Supplier Agreements. (Docket # 414-1 at 2.) The crux of Raffel's argument is that by finding Raffel bound under a theory of agency, the Court effectively granted judgment as a matter of law in favor of Man Wah without giving Raffel notice and an opportunity to be heard in violation of Fed. R. Civ. P. 56(f). (*Id.*) Raffel asserts that "resolving the issues of agency and validity as a matter of law is entering summary judgment in favor of Man Wah on issues for which it did not request summary judgment." (*Id.*)

Raffel's argument remains unpersuasive. Afterall, what Man Wah sues for is breach of contract, specifically, that Raffel breached the contracts by: (1) violating Article 10.4, a provision specifying that "any disputes arising from the execution of the contract or related to the contract should be settled through friendly negotiation between the two parties" and

---

[1] I also found that Man Wah had not shown any damages related to the alleged breach of Article 10.4 of the two Agreements; thus, I granted summary judgment to Raffel as to the breach of contract counterclaim for breach of Article 10.4. (Docket # 361 at 46–47.)

3

(2) violating Article 2.4, an exclusivity provision prohibiting Raffel from selling products to Man Wah's competitors. In some breach of contract litigations, the parties do not challenge the validity of the contract itself or whether the parties are bound by the contract, they only challenge the alleged breach of the contract. In this case, however, Raffel not only challenges Man Wah's breach of contract claims, but it also challenges both the validity of the contracts and whether it is a party to the contracts. For this reason, I started my analysis with the threshold issues of validity and whether Raffel was bound by the contracts, as it would be unnecessary to reach the question of breach and damages if the contracts had expired or if Raffel was not bound by the contracts in the first place.

Although Raffel insists that it did not have notice as to the issue of agency, Raffel, by raising and arguing agency, asked the Court to decide the issue. And contrary to Raffel's assertions, I *did not* enter judgment as a matter of law in Man Wah's favor as to its counterclaims. Again, the two counterclaims are for breach of contract. Specifically, for breach of Article 10.4 (by suing Man Wah instead of engaging in "friendly negotiations" (Counterclaim XI)) and for breach of Article 2.4 (for selling products to Man Wah's competitors in violation of the exclusivity clause (Counterclaim XIV)). I did not determine, as a matter of law, that Raffel breached Article 10.4 and Article 2.4 of the Supplier Agreements. In fact, I entered judgment as a matter of law in *Raffel's* favor as to Man Wah's alleged breach of Article 10.4, finding Man Wah failed to show damages. (Docket # 361 at 47.) But as to Raffel's alleged breach of Article 2.4 (the exclusivity clause), I specifically found that Man Wah presented sufficient evidence for a jury to decide whether Raffel breached Article 2.4 and the damages sustained. (*Id.* at 48–49.)

Raffel, however, does not challenge the determination that a jury must decide whether Raffel breached Article 2.4 of the contracts. Rather, Raffel challenges the initial determination that it was bound by the contract under a theory of agency. Again, Raffel somewhat confusingly contends that by finding agency, I have also found breach, effectively entering judgment in Man Wah's favor as to its two counterclaims. That is not so.

Putting aside the confusing nature of Raffel's procedural argument, I do not find a legal error warranting reconsideration as to the agency determination. Raffel argues that agency is a question of fact that should not be determined on summary judgment. Alternatively, Raffel argues that to the extent the Court is determining agency as a matter of law, the summary judgment decision simply "invokes" the concept of apparent agency without actually considering the evidence germane to the issue. (Docket # 414-1 at 4.)

The summary judgment record is clear that both agreements are between the "Purchaser," or "Party A," defined as Man Wah Furniture Manufacturing (Huizhou) Co., Ltd., and "Supplier," or "Party B," defined as Xiamen Raffel Electronic Trading Co., Ltd. (Docket # 133-1; Docket # 291-28.) In other words, there is no dispute that Raffel Systems, LLC *did not* sign the agreements itself. The summary judgment record is also clear that the relationship between Raffel Systems, LLC and Xiamen Raffel is one of parent-subsidiary. (Docket # 361 at 43.)

In the summary judgment decision, I acknowledged that under Wisconsin law, the mere existence of a parent-subsidiary relationship, by itself, is insufficient to establish that a principal-agent relationship exists between the two entities. (*Id.* at 42, citing *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 671 (W.D. Wis. 1998).) I noted, however, that where no explicit authorization exists, a court may find "implied" or "apparent" agency if the following

5

three elements are established: (1) acts by the agent or principal justifying belief in the agency; (2) knowledge of these acts by the party sought to be held responsible as a principal or as an agent; and (3) reliance on the existence of the relationship by plaintiffs, consistent with ordinary care and prudence. (*Id.* at 42–43, citing *Insolia*, 31 F. Supp. 2d at 671 (citing *Schaefer v. Dudarenke*, 89 Wis. 2d 483, 489–490, 278 N.W.2d 844, 847 (1979).)

In its motion for partial summary judgment, Raffel argued that the "undisputed evidence" demonstrates Xiamen Raffel was not Raffel System LLC's agent. (Docket # 292-1 at 27–28.) Raffel asserted that summary judgment in its favor was appropriate as to Man Wah's two breach of contract counterclaims because there was no dispute of material facts and judgment in Raffel's favor was appropriate as a matter of law. On reconsideration, however, Raffel now turns an about-face and argues that the summary judgment record "is rife with material factual issues regarding Man Wah's claims of agency." (Docket # 414-1 at 4.) The Seventh Circuit's decision in *Goldstein v. Fid. & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749 (7th Cir. 1996) is instructive on this issue.

In *Goldstein*, plaintiff Goldstein sued his insurance company for damages resulting from a fire. Goldstein moved for summary judgment in his favor, arguing that no genuine issues of material fact existed in the case. *Id.* at 750–51. The district court agreed with Goldstein that there was no genuine issue of material fact in the case. It disagreed, however, that Goldstein was entitled to judgment as a matter of law. *Id.* The district court, in fact, found that the insurance company was entitled to judgment as a matter of law based on the undisputed facts and entered summary judgment in its favor, despite being the non-movant. *Id.* On appeal, the Seventh Circuit rejected Goldstein's argument that the district court erred in granting the insurer summary judgment. It explained:

6

> In our case, of course, Goldstein filed a motion for summary judgment. Both parties, Goldstein in particular, were on notice that summary judgment was being considered. In the motion for summary judgment he chose to present to the district court, Goldstein claimed that no genuine issues of material fact existed in the case. As a general rule, however, a motion for summary judgment is not a waiver of the right to trial if the motion is denied. *Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 590 (7th Cir.1991). This means that if the district court disagreed with Goldstein as to the existence of a genuine issue of material fact, Goldstein would not be precluded from arguing the facts at trial. It does not mean that if the district court agreed with his characterization of the facts, Goldstein can wiggle out of his concession and compel a reversal of a judgment against him based on questions of law. Here, Judge Kocoras in the district court thought Goldstein was right about the facts but wrong on his assertion that he was entitled to judgment as a matter of law. Goldstein now claims that the resolution of the legal issues against him was inappropriate because he was not allowed to contest the facts, and that he would have had "greater incentive" to seek out disputed facts had he known summary judgment was being considered in a mode other than in his favor. At oral argument, we asked Goldstein's counsel if this wasn't a bit of lawyerly game-playing. He said it was not. We disagree.

*Id.* Raffel's situation is strikingly similar. In support of its argument for reconsideration, Raffel now argues that it lacked notice as to the issue of agency. Raffel assert that had it known it was a possibility that the Court would not find in its favor, it would have adduced additional evidence. But as the *Goldstein* court found, this is lawyerly game-playing. In arguing it was entitled to judgment as a matter of law in its favor, Raffel should have put forth the best evidence it had. But Raffel now asserts that it *does* have "additional evidence," specifically from Raffel's then-president Paul Stangl, that will show that "Raffel did not engage in any conduct showing its willingness to allow Xiamen to act on its behalf in entering into the alleged contracts." (Docket # 414-1 at 4.) But Raffel has already presented evidence from Stangl showing precisely the opposite. Raffel cannot create a question of fact by presenting subsequent contradictory evidence from its own witness.

In moving for reconsideration, Raffel cites to the same evidence it relied on in support of the summary judgment motion. Although reconsideration is not an appropriate place to

7

rehash previously briefed arguments, I will again address Raffel's evidence to further clarify the agency decision. Again, Raffel relies primarily on the fact that Man Wah attempted to have Raffel added as a party to both the 2016 and 2017 agreements, but Raffel refused (PPFOF ¶¶ 44, 50, 52.) But the evidence Raffel cites tells a very different story. Yes, Raffel did decline to sign the contract and Stangl did indeed send an email to Ben Song of Xiamen Raffel on December 6, 2015 stating that he did "not understand why ManWah has changed things and it does not make sense for Raffel in the US to sign the agreement since they will purchase from Xiamen Raffel. I think it might be a bad deal for us to sign it." (Declaration of Nancy Cruz ¶ 29, Ex. 29, Docket # 291-29 at 2.)[2] But this email comes with context, which Raffel omits from its discussion.

Multiple emails were exchanged between Stangl and Song in November and December 2015 negotiating the terms of what would become the 2016 Supplier Agreement. While Song was clearly adding his comments to the draft contract, the evidence shows that he was serving as a go-between for Raffel Systems, LLC in the United States and Man Wah in China. On November 20, 2015, Stangl emailed Song with the following instructions:

> Please continue to make contact with ManWah to see if there is any way we can help them. We would like to get all of this business. You can remind them that we have our headquarters in the US and can provide customer service and replacement parts shipments directly from our office. We can provide all of the customer service on the parts we sell them – we do this for our other customers. This makes it very easy for ManWah's customers and the consumers to get any replacement parts.

(*Id.* at 14.) Later in the negotiations, Raffel Systems, LLC did not agree with an Article proposed by Man Wah, and Stangl told Song that he had "look[ed] through the agreement and we have a problem with the provision in 2.1 on the patents and other intellectual property

---

[2] All emails cited in this decision have been reproduced as written. As such, any errors in spelling and/or punctuation are in the original.

that we own." (*Id.* at 8.) On December 3, 2015, Song emailed Stangl to tell him that "Today I called Manwah sourcing director Mr. chen, Raffel very interest of work with them, but 2.1 section we can't accept and request delete this 2.1." (*Id.* at 7.) Stangl responded to Song's email that day instructing that: "[w]hen [Man Wah] [has] deleted 2.1 and acknowledged the warranty, you can execute the agreement." (*Id.* at 6.) The next day, Stangl again instructs Song that "[o]nce Manwah has deleted 2.1 and you are satisfied with the rest of the agreement, you can sign it and get the PO." (*Id.* at 4.)

Also on December 4, 2015, Song emailed Stangl stating that Man Wah told him that they "hope to work with xiamen raffel, but need us to provide a statement that xiamen Raffel was belong to Raffel System LLC Subsidiary, etc." (*Id.* at 3.) Stangl, then, responded with the email cited above stating that he did "not understand why ManWah has changed things and it does not make sense for Raffel in the US to sign the agreement since they will purchase from Xiamen Raffel. I think it might be a bad deal for us to sign it." (*Id.* at 2.) On December 16, 2015, Song then emails Stangl, stating that Man Wah "asked me again of sign directly with xiamen raffel" and that he "suggest[s] we can sign all below now." (*Id.*)

These emails certainly appear to show that Song was not free to enter into the agreement without Raffel Systems, LLC "signing off" on the terms. This is consistent with Stangl's testimony that Raffel generally controls the "major decisions" of Xiamen Raffel (Declaration of Clark Bakewell ¶ 7, Ex. F, August 2, 2019 Deposition of Paul Stangl at 66, Docket # 325). When asked what he considered a "major decision," Stangl testified that the "day-to-day operating decisions" were not "major decisions." (*Id.* at 67.) While Raffel on summary judgment argued that negotiating and entering into a supplier agreement was not a "major decision," the emails between Stangl and Song suggest otherwise.

9

Furthermore, Stangl's reluctance to have Raffel Systems, LLC physically sign the contract and his acknowledgement that Man Wah will actually be purchasing the products from Xiamen Raffel comports with Stangl's testimony regarding how businesses are allowed to operate in China. When asked why Xiamen Raffel sold the ICH cup holders to Man Wah, as opposed to Raffel Systems, LLC, Stangl testified:

> That would go to the setup of the Chinese system. Can't sell domestically in China because you can't issue vet certificates unless you're a China entity. So to legally do it, you have to be a China entity.

(*Id.* at 66–67.) In other words, Raffel Systems, LLC could not legally sell goods in China because it was not a Chinese company. As such, Stangl testified that the very purpose of Xiamen Raffel was to legally conduct Raffel's business in China. As I previously found, given Stangl's testimony and the emails between Stangl and Song, "it is disingenuous at best for Raffel to contend that entering into contracts for sale of products falls under a 'day-to-day' operation." (Docket # 361 at 44.)

Raffel also provides Wisconsin's jury instruction for agency, which states that an agency "is based on an agreement between the parties which embodies three factual elements: (1) the conduct of the principal showing that the agent is to act for him or her; (2) the conduct of the agent showing that he or she accepts the undertaking; and (3) the understanding of the parties that the principal is to control the undertaking." (Wis JI-Civil 4000.) It is entirely unclear how Raffel can continue to assert, given the evidence *it* presented, that a question for the jury on agency remains. This is not a situation in which Raffel presented evidence showing that Xiamen Raffel was not acting at Raffel's behest and Man Wah produced admissible evidence to the contrary. *That* would create an issue of fact on agency for the jury to resolve and if I had entered summary judgment in Man Wah's favor at that point, I would have

10

violated Fed. R. Civ. P. 56(f), as Raffel now argues. But what happened here is that Raffel made the strategic choice to raise an issue of agency believing the evidence showed no agency, when in fact, the evidence shows the opposite.

I agree this is a unique situation. You do not often have a party raise an issue on summary judgment and then present evidence that so clearly supports its opponent's position. Again, Raffel did not, for example, cite to emails showing that Stangl told Song that whatever he wants to do with the contract was up to him; rather, Raffel cited to a string of emails demonstrating that Song was acting as a go-between for Raffel in the United States and Man Wah in China. Importantly, Stangl *instructed* Song to communicate positions to Man Wah, he *instructed* Song to have Article 2.1 removed, and most tellingly, he *instructed* Song to sign the contract once Man Wah removed the offending article that *Raffel* did not approve of. Does Raffel believe it should be allowed to argue to a jury that its uncontradicted evidence should not be taken at face value? That is not a dispute of fact. As stated above, while I agree that the issue of agency is *generally* a fact issue decided by the jury, under this unique set of circumstances, there is no contradicting facts for the jury to sort out and make a determination of who to believe. There are only Raffel's undisputed facts, clearly supporting that Xiamen Raffel was acting on Raffel's behalf.

Raffel also cites to the Wisconsin jury instruction for apparent authority. This instruction cites to Wisconsin law stating that apparent authority of an agent only arises when there is no question or dispute that the agency exists. Wis. JI-Civil 4005. In other words, "[t]he relationship of principal and agent must be established, and the question may then arise as to

11

whether or not the agent had apparent authority to transact the business he or she transacted."
*Id.*, Comment. The jury instruction to establish apparent authority follows the elements cited above from *Schafer*:

> (1) acts by the agent or principal justifying belief in the agency;
> (2) knowledge thereof by the principal, sought to be held;
> (3) reliance thereon by the plaintiff, consistent with ordinary care and prudence.

*Id.* The undisputed evidence cited above supports the first and second elements. The jury instruction provides as follows regarding the element of reliance:

> If a third person, because of appearances for which the principal was responsible, believed and had reasonable ground to believe, that the agent possessed power to act for the principal in the particular transaction, and if such third person was, in the exercise of reasonable prudence, justified in believing that the agent possessed the necessary authority, then the apparent authority of the agent is established and the principal is responsible to such third person the same as if the agent actually possessed all the power he or she assumed to possess.

*Id.* This element focuses on what Man Wah believed and/or had reasonable grounds to believe. But again, Raffel does not present evidence to establish a question of fact; rather, it argues that the undisputed evidence in the record does not mean what it says. (Docket # 336 at 17–18.) The record contains emails between Ken Seidl of Raffel Systems, LLC and Guy Ray of Man Wah, in which Seidl tells Ray that: "Now that we have our own office and employees in China, it will be much easier for your factory to communicate with our people in real time and will stream line the sampling process." (Bakewell Rebuttal Decl. ¶ 11, Ex. J, Docket # 325-10 at 4.) Similarly, in an email between Song and Man Wah, Song provides "an offer for exclusive pricing on the CTR Series that Manwah asked about during our American leaders' visit to your company yesterday afternoon." (*Id.* ¶ 9, Ex. H, Docket # 325-8 at 2.) Raffel argues that Man Wah overlooks the fact that Song's greeting in that same email is: "This is Ben from Xiamen Raffel," (Docket # 336 at 17), but again, the context of the entire

12

email shows that Song is representing to Man Wah that "our American leaders" visited Man Wah and Man Wah asked them (i.e., Raffel Systems, LLC) for pricing information.

Furthermore, Linhua Huang of Man Wah testified that he was involved in the contract negotiations for the Supplier Contracts and stated that he was "in contact with Mr. Song's side" during the negotiations and testified that *Raffel* proposed amendments to the contract. (Cruz Decl. ¶ 9, Ex. 9, Huang Dep. at 71–73, Docket # 291-9.) When asked whether Song proposed certain changes to the contract, Huang testified that: "He did send these to me, but I do not know if those were his proposal or Raffel's proposals." (*Id.* at 73.) Similarly, Binghuang Chen of Man Wah testified that they "think of Xiamen Raffel and USA Raffel as the same company," stating that "whenever [Man Wah] negotiates these agreements or contracts with Xiamen Raffel company, they always tell us that they have to make phone call to the bosses in the USA in order to make that decision. We have always known that they themselves cannot make that decision without consulting with the USA Raffel's first." (Cruz Decl. ¶ 8, Ex. 8, Chen Dep. at 81–82, 291-8.) This testimony is certainly consistent with the email exchanges between Song and Stangl.

So again, it is unclear what evidence Raffel puts forth that creates a dispute of material fact as to the reliance element of apparent agency. The record evidence shows that Man Wah believed it was dealing with the Chinese subsidiary of an American company, acting on behalf of the American company who cannot legally conduct business on its own in China. For these reasons, Raffel has failed to show a manifest error of law or fact warranting reconsideration.

    2.    *Validity of the 2017 Supplier Agreement*

While Raffel requests that I reconsider my finding regarding the validity of the 2017 Supplier Agreement (Docket # 414-1 at 2), its motion is devoid of any argument specific to

13

why the validity decision contains a manifest error of fact or law. For this reason, Raffel's motion for reconsideration of this issue is similarly denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion for reconsideration (Docket # 414) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to seal (Docket # 413) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 2nd day of June, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge