# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

RAFFEL SYSTEMS, LLC,

        Plaintiff,

        v.

MAN WAH HOLDINGS LTD., INC.,
MAN WAH (USA) INC., and
XYZ COMPANIES 1-10,

        Defendants.

Case No. 2:18-cv-01765
Hon. Judge Nancy Joseph

## PLAINTIFF'S POST-TRIAL BRIEF

## TABLE OF CONTENTS

I.     The Court Should Treble the Damages for Patent and Trade Dress
       Infringement......................................................................................................... 1

       A.     The Court Should Treble the Patent Infringement Damages.................................. 1

              1.     The Jury Found that Man Wah Willfully Infringed.................................... 2

              2.     Man Wah's Knowledge and Bad Faith........................................................ 3

              3.     Man Wah's Contemptuous Behavior Supports Enhanced Damages.......... 5

              4.     Man Wah's Size and Financial Condition. ................................................. 6

              5.     Duration of Man Wah's Misconduct and Lack of Remedial Measures...... 7

              6.     Man Wah's Motivation to Harm and Concealment.................................... 8

       B.     The Court Should Treble the Trade Dress Infringement Damages. ....................... 9

II.    The Court Should Enhance the Award of Man Wah's Profits for Trade
       Dress Infringement................................................................................................ 12

III.   The Court Should Find this Case Is "Exceptional" and Award Attorney's
       Fees. ..................................................................................................................... 13

       A.     Raffel is the Prevailing Party. ............................................................................... 15

       B.     Man Wah's Willful Infringement Alone Renders this Case
              Exceptional. .......................................................................................................... 15

       C.     The Jury's Punitive Damages Award Illustrates the Exceptional
              Nature of this Case................................................................................................ 19

       D.     Man Wah's Flouting of Court Orders that Resulted in an Order of
              Contempt Further Supports a Finding of Exceptionality....................................... 21

       E.     This Case is Exceptional Under the Totality of the Circumstances........................ 22

IV.    The Court Should Award Prejudgment Interest to Raffel. ................................... 23

V.     Man Wah Should Pay for Certain Non-Taxable Costs Incurred by Raffel. ...................... 25

VI.    The Court Should Enter a Permanent Injunction Prohibiting Man Wah
       from Using Raffel's Patent and Trade Dress. ....................................................... 31

       A.     Irreparable Harm and Inadequate Remedy at Law .............................................. 31

B.     Balance of Hardships ............................................................................. 33

C.     Public Interest ........................................................................................ 34

CONCLUSION ................................................................................................................. 35

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*,
   939 F.3d 905 (7th Cir. 2019) .................................................................18

*AEVOE Corp. v. AE Tech Co.*,
   2015 U.S. Dist. LEXIS 66540 (D. Nev. Apr. 20, 2015) .....................6, 21

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975) ................................................................................28

*Am. Massage Therapy Ass'n v. Folkers*,
   2006 U.S. Dist. LEXIS 110975 (N.D. Ill. Apr. 13, 2006) .................9, 11

*Am. Nat'l Fire Ins. v. Yellow Freight Sys.*,
   325 F.3d 924(7th Cir. 2003) ...................................................................24

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   23 F.3d 374 (Fed. Cir. 1994)...................................................................28

*Apple Inc. v. Samsung Elecs. Co.*,
   809 F.3d 633 (Fed. Cir. 2015)...........................................................33, 34

*Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*,
   198 F. Supp. 3d 1343 (S.D. Fla. 2016) .............................................3, 4, 9

*Automated Bus. Cos. v. NEC Am., Inc.*,
   202 F.3d 1353 (Fed. Cir. 2000)...............................................................14

*Badger Meter, Inc. v. Grinnell Corp.*,
   13 F.3d 1145 (7th Cir. 1994) ...............................................................9, 12

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*,
   2009 U.S. Dist. LEXIS 131813 (D. Ariz. Mar. 31, 2009) ...................3, 6

*Black & Decker v. Robert Bosch Tool Corp.*,
   2006 U.S. Dist. LEXIS 84969 (N.D. Ill. Nov. 20, 2006) .........................6

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
   1999 U.S. Dist. LEXIS 23246 (C.D. Cal. Nov. 15, 1999).......................20

*Central Soya Co. v. Geo A. Hormel & Co.*,
   723 F.2d 1573 (Fed. Cir. 1983)...............................................................28

*Canon, Inc. v. Color Imaging, Inc.*,
   292 F. Supp. 3d 1357 (N.D. Ga. 2018) .....................................................7

*Comaper Corp. v. Antec, Inc.*,
    2014 U.S. Dist. LEXIS 200693 (E.D. Pa. June 11, 2014) .......................................19

*DiBella v. Hopkins*,
    407 F. Supp. 2d 537 (S.D.N.Y. 2005) ...................................................................26

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013).............................................................32, 34, 35

*Dropbox, Inc. v. Thru Inc.*,
    2017 U.S. Dist. LEXIS 33325 (N.D. Cal. Mar. 8, 2017), *aff'd*, 728 F. App'x
    717 (9th Cir. 2018).........................................................................................26, 29

*Dunkin' Donuts v. Towns Family*,
    1996 U.S. Dist. LEXIS 7982 (N.D. Ill. June 5, 1996) .......................................9, 11

*Eagleview Techs., Inc. v. Xactware Sols., Inc.*,
    522 F. Supp. 3d 40 (D.N.J. 2021) .........................................................................8, 9

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)..............................................................................................31

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012)............................................................................23

*Farberware Licensing Co. LLC v. Meyer Mktg. Co.*,
    2009 U.S. Dist. LEXIS 121323 (S.D.N.Y. Dec. 29, 2009) ...................................26

*First Nat'l Bank of Chi. v. Standard Bank of Trust*,
    172 F.3d 472 (7th Cir. 1999) .........................................................................23, 24

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)..............................................................................................14

*Gen. Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983)..............................................................................................23

*Genes Indus. v. Custom Blinds & Components, Inc.*,
    2018 U.S. Dist. LEXIS 21879 (C.D. Cal. Jan. 29, 2018) .....................................16

*Georgetown Rail Equip. Co. v. Holland L.P.*,
    867 F.3d 1229 (Fed. Cir. 2017)..............................................................................2

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
    355 F.3d 1327 (Fed. Cir. 2004).............................................................................16

*Gorenstein Enters. v. Quality Care-USA*,
    874 F.2d 431 (7th Cir. 1989) .......................................................................9, 11, 23

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016) ...................................................................................1, 2

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................15

*Hicken v. Migrant Studios, LLC*,
   2014 U.S. Dist. LEXIS 69122 (M.D. Fla. Apr. 11, 2014) ................................10, 12

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010) ..........................................................................5

*I-Fow Corp. v. Apex Med. Techs., Inc.*,
   2010 U.S. Dist. LEXIS 1021 (S.D. Cal. Jan. 6, 2010) ..........................................7

*Ill. Tool Works, Inc. v. MOC Prods. Co.*,
   2013 U.S. Dist. LEXIS 201425 (S.D. Cal. Oct. 25, 2013) ...................................3, 4

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
   203 F. Supp. 3d 755 (E.D. Tex. 2016) ................................................................4

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
   176 F. Supp. 3d 137 (E.D.N.Y. 2016) ................................................................19

*Kaufman v. Microsoft Corp.*,
   34 F.4th 1360 (Fed. Cir. 2022) ........................................................................23

*Kinsey v. Jambow, Ltd.*,
   76 F. Supp. 3d 708 (N.D. Ill. 2014) ..................................................................33

*La Quinta Corp. v. Heartland Props. LLC*,
   603 F.3d 327 (6th Cir. 2010) ........................................................................10, 11

*Lavatec Laundry Tech. GMBH v. Voss Laundry Sols.*,
   2018 U.S. Dist. LEXIS 144487 (D. Conn. Jan. 9, 2018) .......................................21

*LHO Chi. River, LLC v. Perillo*,
   942 F.3d 384 (7th Cir. 2019) ...........................................................................14

*Lontex Corp. v. Nike, Inc.*,
   2022 U.S. Dist. LEXIS 37334 (E.D. Pa. Mar. 3, 2022) .........................................10

*Luxottica Grp. S.p.A. v. Li*,
   2017 U.S. Dist. LEXIS 21818 (N.D. Ill. Feb. 15, 2017) .......................................18

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) .........................................................................28

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)......................................................................................... passim

*Medline Indus. v. 9121-3140 Que., Inc.*,
    2010 U.S. Dist. LEXIS 19945 (D.N.H. Mar. 5, 2010) .....................................12, 13

*MetroPCS v. Devor*,
    215 F. Supp. 3d 626 (N.D. Ill. 2016) .................................................................9, 11

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)..................................................................................................31

*Mueller Sports Med., Inc. v. Sportstar Athletics, Inc.*,
    2005 U.S. Dist. LEXIS 26883 (W.D. Wis. Nov. 2, 2005).......................................18

*N. Am. Van Lines v. N. Am. Moving & Storage*,
    2020 U.S. Dist. LEXIS 23842 (N.D. Ind. Feb. 10, 2020)........................................31

*Neles-Jamesbury, Inc. v. Bill's Valves*,
    974 F. Supp. 979 (S.D. Tex. 1997) .........................................................................20

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994) ...................................................................................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014).................................................................................14, 15, 19, 21

*Otter Prods., LLC v. Wang*,
    2019 U.S. Dist. LEXIS 52916 (D. Colo. Mar. 28, 2019) ........................................34

*Pergo (Eur.) A.B. v. Stanley Black & Decker, Inc.*,
    2018 U.S. Dist. LEXIS 225882 (N.D. Ga. May 7, 2018) ........................................19

*Polo Fashions, Inc. v. Rabanne*,
    661 F. Supp. 89, 98 (S.D. Fla. 1986) ......................................................................10

*Powell v. Home Depot, U.S.A., Inc.*,
    2010 U.S. Dist. LEXIS 110301 (S.D. Fla. Sept. 14, 2010) ...............................27, 28

*PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*,
    2016 U.S. Dist. LEXIS 152450 (N.D.N.Y. Nov. 3, 2016) .........................................7

*QS Wholesale, Inc. v. World Mktg.*,
    2014 U.S. Dist. LEXIS 196129 (C.D. Cal. Jan. 7, 2014) ........................................20

*R-Boc Representatives, Inc. v. Minemyer*,
    233 F. Supp. 3d 647 (N.D. Ill. 2017) .................................................................18, 22

*R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*,
    2005 U.S. Dist. LEXIS 3069 (N.D. Ill. Feb. 8, 2005) .............................................................23

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018)..................................................................................................15

*Rasic v. City of Northlake*,
    2010 U.S. Dist. LEXIS 86815 (N.D. Ill. Aug. 24, 2010) .................................................24, 25

*Read Corp. v. Portec, Inc.*,
    970 F.2d 816 (Fed. Cir. 1992)........................................................................................... passim

*Ronaldo Designer Jewelry, Inc. v. Prinzo*,
    2017 U.S. Dist. LEXIS 133121 (S.D. Miss. Aug. 21, 2017)............................................10, 12

*Sabinsa Corp. v. Olive Lifesciences Pvt. Ltd.*,
    2017 U.S. Dist. LEXIS 221107 (D.N.J. Mar. 28, 2017).................................................................6

*Sands, Taylor & Wood v. Quaker Oats Co.*,
    34 F.3d 1340 (7th Cir. 1994) .....................................................................................................12

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020)..................................................................................................24

*SEC v. Kirch*,
    263 F. Supp. 2d 1144 (N.D. Ill. 2003) .......................................................................................24

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*,
    668 F.3d 677 (9th Cir. 2012) .....................................................................................................26

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011)..................................................................................................16

*Spectrum Brands, Inc. v. I&J Apparel, LLC*,
    2017 U.S. Dist. LEXIS 80999 (W.D. Wis. May 25, 2017) ...............................................32, 34

*SSL Servs., LLC v. Citrix Sys., Inc.*,
    769 F.3d 1073 (Fed. Cir. 2014)..................................................................................................15

*Standard Process, Inc. v. AVC Infinite, LLC*,
    2020 U.S. Dist. LEXIS 5098 (W.D. Wis. Jan. 9, 2020) ..................................................32, 34

*Stryker Corp. v. Davol Inc.*,
    234 F.3d 1252 (Fed. Cir. 2000)....................................................................................................3

*Stryker Corp. v. Zimmer, Inc.*,
    2017 U.S. Dist. LEXIS 162440 (W.D. Mich. July 12, 2017)...........................................4, 6, 8

*Study Logic, LLC v. Clear Net Plus, Inc.*,
   2012 U.S. Dist. LEXIS 135847 (E.D.N.Y. Sept. 21, 2012)....................................................10

*Sunearth, Inc. v. Sun Earth Solar Power Co.*,
   839 F.3d 1179 (9th Cir. 2016) .............................................................................................26

*Super Duper, Inc. v. Mattel, Inc.*,
   2009 U.S. Dist. LEXIS 28751 (D.S.C. Mar. 31, 2009) ....................................................12, 13

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
   932 F.2d 1113 (5th Cir. 1991) ..............................................................................................10

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
   549 F.3d 1381 (Fed. Cir. 2008)............................................................................................28

*Tannas v. Multichip Display, Inc.*,
   2018 U.S. Dist. LEXIS 28889 (C.D. Cal. Feb. 21, 2018).....................................................21

*Third Wave Techs., Inc. v. Stratagene Corp.*,
   2006 U.S. Dist. LEXIS 6575 (W.D. Wis. Feb. 21, 2006) (Crabb, J.)................................26, 27

*Third Wave Techs., Inc. v. Stratagene Corp.*,
   405 F. Supp. 2d 991 (W.D. Wis. 2005) (Crabb, J.) .........................................................2, 4, 6, 8

*Tire Grp. Int'l v. Tire Grp. Inv.*,
   2020 U.S. Dist. LEXIS 215560 (S.D. Fla. Nov. 16, 2020)....................................................26

*Transclean Corp. v. Bridgewood Servs., Inc.*,
   290 F.3d 1364 (Fed. Cir. 2002)..............................................................................................16

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
   323 F. Supp. 3d 1071 (W.D. Wis. 2018) ....................................................................31, 32, 33

*Unitronics (1989) (R''G) Ltd. v. Gharb*,
   85 F. Supp. 3d 118 (D.D.C. 2015) .........................................................................................21

*Universal Elecs. Inc. v. Universal Remote Control, Inc.*,
   130 F. Supp. 3d 1331 (C.D. Cal. 2015) .................................................................................27

*Van Burren v. Envii, Inc.*,
   2019 U.S. Dist. LEXIS 152592 (C.D. Cal. Mar. 27, 2019)...................................................10

*Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*,
   2016 U.S. Dist. LEXIS 77612 (D. Del. June 15, 2016).........................................................27

*Vehicle IP, LLC v. GMC*,
   2008 U.S. Dist. LEXIS 43426 (W.D. Wis. June 2, 2008) ......................................................23

*Waits v. Frito-Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992) ............................................................20

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016)..............................................................1

*Whirlpool Corp. v. TST Water, LLC*,
  2018 U.S. Dist. LEXIS 52833 (E.D. Tex. Mar. 29, 2018).....................19

*Wis. Alumni Research Found. v. Apple, Inc.*,
  261 F. Supp. 3d 900 (W.D. Wis. 2017) *reversed in part on other grounds*, 905
  F.3d 1341 (Fed. Cir. 2018) ...................................................24, 33, 34

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
  2010 U.S. Dist. LEXIS 144973 (C.D. Cal. 2010)..................................30

*Yah Kai World Wide Enters. v. Napper*,
  292 F. Supp. 3d 337 (D.D.C. 2018) .....................................................18

STATUTES

15 U.S.C. § 1116(a) ...................................................................................31

15 U.S.C. § 1117...............................................................................19, 20, 25, 30

15 U.S.C. § 1117(a) ......................................................................... passim

28 U.S.C. § 1920.......................................................................................25

35 U.S.C. § 284.................................................................................1, 3, 23

Copyright Act.............................................................................................14

Lanham Act........................................................................................ passim

Patent Act, 35 U.S.C. § 285 ................................................................ passim

OTHER AUTHORITIES

5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:90
  (5th ed. 2022)........................................................................................12

Case 2:18-cv-01765-NJ   Filed 08/05/22   Page 10 of 46   Document 473

After years of litigation and a two-week trial, the jury returned verdicts in Raffel's favor on every one of its claims, awarded Raffel $8,767,317 in damages, found that Man Wah willfully infringed Raffel's intellectual property, and awarded Raffel $97.5 million in punitive damages. The Court has now ordered the parties to brief post-trial issues before it enters final judgment. As demonstrated below, the Court should enter judgment that effectuates the jury's verdicts—and that judgment should also impose additional discretionary remedies available to the Court in order to fairly compensate Raffel for Man Wah's intentional malfeasance, to punish Man Wah for its past willful infringement, and to deter Man Wah from future infringement and from disregarding the intellectual property rights of others.

Accordingly, the Court's final judgment should (i) treble the damages awarded for both patent and trade dress infringement; (ii) enhance the award of Man Wah's profits for willful trade dress infringement; (iii) order Man Wah to pay attorneys' fees as an exceptional case; (iv) award Raffel its costs; (v) award prejudgment interest; and (vi) permanently enjoin Man Wah from infringing Raffel's patent and trade dress.

## I. The Court Should Treble the Damages for Patent and Trade Dress Infringement.

### A. The Court Should Treble the Patent Infringement Damages.

The Court should exercise its discretion and treble the amount awarded for Man Wah's intentional patent infringement. *See* 35 U.S.C. § 284 ("the court may increase the damages up to three times the amount found or assessed"). Indeed, this court "has the discretion to decide whether the case is sufficiently egregious to warrant enhancing damages and to decide the amount of enhancement that is warranted (up to the statutory limit of treble damages)." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1342 (Fed. Cir. 2016). Enhanced damages are "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016). "The sort of conduct warranting enhanced damages

has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103-04.

When determining whether and how much to enhance the damages award, "district courts often apply the non-exclusive [*Read*] factors." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017) (citing *Read Corp. v. Portec, Inc*., 970 F.2d 816 (Fed. Cir. 1992), *abrogated in part on other grounds*, *Markman v. Westview Instruments, Inc*., 517 U.S. 370 (1996)); *Third Wave Techs., Inc. v. Stratagene Corp.*, 405 F. Supp. 2d 991, 1015-18 (W.D. Wis. 2005) (Crabb, J.) (analyzing enhanced damages for patent infringement under the *Read* factors and finding plaintiff was entitled to enhanced damages in amount equal to three times the jury's award).

The *Read* factors include: (i) "whether the infringer deliberately copied the ideas or design of another"; (ii) "whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed"; (iii) "the infringer's behavior as a party to the litigation"; (iv) [d]efendant's size and financial condition"; (v) "[c]loseness of the case"; (vi) "[d]uration of defendant's misconduct"; (vii) "[r]emedial action by the defendant"; (vii) "[d]efendant's motivation for harm"; and (ix) "[w]hether defendant attempted to conceal its misconduct." 970 F.2d at 827 (footnote and citations omitted).

As demonstrated below, the *Read* factors support trebling Raffel's patent infringement damages.

### 1. The Jury Found that Man Wah Willfully Infringed.

This factor is easily satisfied, as reflected by the jury's finding of willfulness. To be sure, Man Wah's copying was so exact that everyone, including retailers, consumers, Man Wah's employees, and Man Wah's own experts could not differentiate between the knockoff products

and Raffel's products. Man Wah even went so far as to stamp its infringing products with Raffel's patent numbers and other Raffel indicia to "[d]eceive the consumer [and] retailer" to believe that Man Wah's products were authentic to Raffel. (PTX69; *see also* 6/13/22 Trial Tr. at 1102:11-16; PTX203; 6/7/22 Trial Tr. at 248:13-249:11.) And Man Wah's CEO admitted that the company's "two-supplier plan" was a plan to copy suppliers' products. (6/13/22 Trial Tr. at 1053:18-1054:1.)

Man Wah's deliberate copying weighs heavily in support of an award of enhanced damages. *See Stryker Corp. v. Davol Inc.*, 234 F.3d 1252, 1259-60 (Fed. Cir. 2000) (affirming award of enhanced damages based in part on defendant's deliberate copying); *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 198 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016), ("An enhancement of damages often follows a finding of willful infringement. In fact, the Federal Circuit has instructed that, upon such a finding, 'courts should provide reasons for not increasing a damages award' under § 284.") (citation omitted); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 2009 U.S. Dist. LEXIS 131813, at *9-11 (D. Ariz. Mar. 31, 2009) (awarding enhanced damages and noting that the first *Read* factor supports enhanced damages where the record contained "sufficient evidence for the jury to have found willful infringement" and there was "sufficient evidence of post-issuance copying to support the jury's verdict"); *Ill. Tool Works, Inc. v. MOC Prods. Co*., 2013 U.S. Dist. LEXIS 201425, at *9-10 (S.D. Cal. Oct. 25, 2013) (first *Read* factor weighed in favor of enhanced damages where there was "circumstantial evidence of deliberate copying").

## 2. Man Wah's Knowledge and Bad Faith.

The second factor is also easily satisfied, as again reflected in the jury's willfulness finding. Man Wah was aware of Raffel's '293 patent as early as 2015 or at the very least, no later than October 2017. (6/7/22 Trial Tr. at 337:11-338:1; PTX141; 6/8/22 Trial Tr. at 438:18-24; Li

12/20/19 Dep. Tr. at 49:5-13, 50:5-20; 6/8/22 Trial Tr. at 513:20-514:20; 524:22-526:9; 6/13/22 Trial Tr. at 1084:20-25.) Despite that knowledge, Man Wah proceeded to produce the infringing products in complete disregard for Raffel's patent rights. (G. Ray 1/14/20 Dep. Tr. at 46:1-19; 6/13/22 Trial Tr. at 1055:8-10.) In fact, Man Wah conducted no investigation whatsoever to determine whether it was infringing the '293 patent. *See Third Wave*, 405 F. Supp. 2d at 1015 (second *Read* factor favored enhanced damages where defendant was aware of plaintiff's patents but "took no steps to investigate the scope of the patents or the possibility that the patents might be infringed by the products defendant was developing"); *Stryker Corp. v. Zimmer, Inc.*, 2017 U.S. Dist. LEXIS 162440, at *12 (W.D. Mich. July 12, 2017) (second *Read* factor favored enhanced damages where defendant "presented no evidence that it investigated the scope of Stryker's patents to form a good faith belief about invalidity or infringement"); *Ill. Tool Works*, 2013 U.S. Dist. LEXIS 201425, at *11-12 (second *Read* factor weighed in favor of enhanced damages where defendant "clearly had notice of the patent itself," but "nevertheless declined to investigate the matter further").

Instead of doing the right thing and investigating infringement, Man Wah paid off Michael Burwell to the tune of $60,000.00 to sell any rights he had in the '293 patent. (6/10/22 Trial Tr. at 919:14-20.) Such conduct strongly favors enhanced damages. *See Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 764 (E.D. Tex. 2016) (awarding enhanced damages where defendants "used a patent broker to try and purchase the patents from [p]laintiff" instead of investigating infringement); *Arctic Cat*, 198 F. Supp. 3d at 1351-52, 1354 (secret attempt to purchase patents from plaintiff supported enhancement of damages under second and ninth *Read* factors).

### 3. Man Wah's Contemptuous Behavior Supports Enhanced Damages.

The third *Read* factor—litigation misconduct—also weighs in favor of enhanced damages. Litigation misconduct refers to, among other things, a failure to obey Court orders. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010).

On March 21, 2019, the Court issued a stand-down order, which among other things, prohibited Man Wah from selling furniture with counterfeit Raffel cup holders. (*See* Dkt. 87, 136, 137 (enjoining Man Wah from further using, selling, offering to sell, or importing into the United States any furniture that contained a non-Raffel cup holder indistinguishable from those identified in certain photos and descriptions agreed to by the parties)). On July 11, 2019, the Court added other conditions to the injunction, including ordering Man Wah to locate and replace counterfeit units further down the stream of commerce. (Dkt. 87 at 5.) This Order reincorporated the Court's previous orders prohibiting Man Wah from selling furniture with counterfeit, look-alike cup holders. (*Id.* at 2-5.) But despite these clear directives from the Court, Man Wah continued to sell thousands of prohibited counterfeit cup holders in the United States throughout 2019. (*See* Dkt. 210 at 5.)

As a result, the Court found Man Wah in contempt, concluding that "Man Wah violated both the March 21, 2019, and the July 11, 2019, Orders" by continuing to sell counterfeit cupholders despite the Court's express prohibitions. (Dkt. 210 at 7-8.) The Court then imposed sanctions as a result of Man Wah's malfeasance, including payment of Raffel's fees and costs related to the contempt proceedings. (Dkt. 234.)

In addition to violating the injunctions through its sales after March 21, 2019, Man Wah actively concealed from Raffel and the Court its intimate knowledge of extensive and significant defects and safety issues caused by the counterfeit cup holders during its arguments to the Court

and Raffel regarding the stand-down order. (*Id.*) Man Wah also hid from the Court its own inability to differentiate the counterfeit cup holders from Raffel's due to their extreme likeness. (Dkt. 151-1 at 6-9; Dkt. 156-1 at 1-2; Dkt. 175 at 7-8.)

Accordingly, this factor weighs in favor of enhanced damages. *See Third Wave*, 405 F. Supp. 2d at 1017 (third *Read* factor weighed in favor of enhanced damages where defendant disobeyed a court order); *Sabinsa Corp. v. Olive Lifesciences Pvt. Ltd.*, 2017 U.S. Dist. LEXIS 221107, at *20-21 (D.N.J. Mar. 28, 2017) (third *Read* factor "clearly support[ed] awarding enhanced damages" where defendant "disregard[ed] several court orders"); *AEVOE Corp. v. AE Tech Co.*, 2015 U.S. Dist. LEXIS 66540, at *3 (D. Nev. Apr. 20, 2015) (trebling damages based on "order finding Defendant in contempt of the preliminary injunction order").

### 4.     Man Wah's Size and Financial Condition.

The fourth *Read* factor considers whether "[d]efendant's size and financial condition would allow it to weather an enhancement of damages." *Bard*, 2009 U.S. Dist. LEXIS 131813, at *29. Man Wah has around 20,000 employees and annual sales of $2.5 billion. (6/10/22 Trial Tr. at 843:25-844:3.) Accordingly, Man Wah's large size and financial condition weigh in favor of awarding enhanced damages. *See Third Wave*, 405 F. Supp. 2d at 1017 (defendant's size and financial condition did not "militate[] against an award of enhanced damages" where defendant had 467 full-time employees and net income of $7 million); *Black & Decker v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 84969, at *25-26 (N.D. Ill. Nov. 20, 2006) (fourth *Read* factor favored awarding enhanced damages because "Bosch is a large corporation with millions of dollars in sales each year"); *Bard*, 2009 U.S. Dist. LEXIS 131813, at *29-32 (fourth *Read* factor weighed in favor of enhancement where defendant was a "large and financially sound company" which "employ[ed] approximately 7,000 individuals"); *Zimmer*, 2017 U.S. Dist. LEXIS 162440, at *12-13 (fourth *Read* factor favored enhancement where defendant's annual

sales were several billion dollars, finding "a $70 million verdict may sound large in the abstract, but in context it may not be enough, without enhancement, to deter infringing conduct").

### 5. Duration of Man Wah's Misconduct and Lack of Remedial Measures.

This factor "'looks at the duration of the infringer's misconduct' or the 'duration of infringement' when the defendant had knowledge of the patent." *Canon, Inc. v. Color Imaging, Inc.*, 292 F. Supp. 3d 1357, 1366-67 (N.D. Ga. 2018) (quoting *I-Fow Corp. v. Apex Med. Techs., Inc.*, 2010 U.S. Dist. LEXIS 1021, at *8 (S.D. Cal. Jan. 6, 2010)). It also "considers whether the infringer remedied some of its infringement, such as 'whether the defendant ceased the sale of the infringing product during the pendency of the litigation,' or whether the defendant 'shows an effort to design around the [] patent.'" *Id*. at 1367 (citations omitted). These factors are often considered together. *Id*.

Here, the record reflects that Man Wah was aware of Raffel's '293 patent as early as 2015. Nevertheless, Man Wah began infringing in 2017 and continued to infringe during the litigation with no regard for Raffel's known patent rights. As already noted, Man Wah continued selling the infringing products after notice of infringement and even after the Court issued a preliminarily injunction enjoining it. This led to the Court finding Man Wah in contempt. (Dkt. 210.) Man Wah only stopped selling the infringing cupholder after it was caught.

Man Wah's longstanding infringement and its failure to take remedial measures weighs in favor of trebling damages. *See PPC Broadband, Inc. v. Corning Optical Communs. RF, LLC*, 2016 U.S. Dist. LEXIS 152450, at *24-25 (N.D.N.Y. Nov. 3, 2016) (sixth *Read* factor supported an award of enhanced damages where defendant was aware of plaintiff's patents when it developed the accused products and continued selling the infringing products after notice of infringement and during litigation); *Canon*, 292 F. Supp. 3d at 1367-68 (sixth and seventh *Read*

factors weighed in favor of enhanced damages where defendant continued selling the accused products after the suit was filed); *Third Wave*, 405 F. Supp. 2d at 1018 (this factor favored plaintiff where record contained no evidence that defendant attempted to remedy its infringement).

### 6. Man Wah's Motivation to Harm and Concealment.

With respect to the eighth *Read* factor, the Court considers whether evidence exists showing a "direct motivation on the part of the infringer to harm the patent holder." *Eagleview Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 54 (D.N.J. 2021). And here, the evidence at trial plainly demonstrated that Man Wah sought to harm Raffel. For example, Zoe Wong stated in an email to Guy Ray that her father—Man Wah's Chairman, Wong Man Li—was "determined to get rid of" Raffel. (PTX107.) Moreover, Man Wah actively discouraged its employees from ordering Raffel's products so it could make more money from lower cost knock-offs and drive down Raffel's sales. (Li 12/20/19 Dep. Tr. at 52:2-6, 52:19-53:21; 6/13/22 Trial Tr. at 1085:1-3.) Accordingly, this factor favors awarding enhanced damages. *See Eagleview Techs.*, 522 F. Supp. 3d at 54 (eighth *Read* factor favored enhanced damages where defendants "appear[ed] to be driven by a specific animus toward [plaintiff]" and "[t]he animosity between the parties—both as business partners and as business competitors—radiated the courtroom"); *Zimmer*, 2017 U.S. Dist. LEXIS 162440, at *15 (eighth *Read* factor supported enhancement where defendant had "a desire to harm Stryker by depriving it of market share").

Man Wah also attempted to conceal its infringement from the marketplace, sending a letter to all of its customers which blamed Raffel for Man Wah's defective infringing products. (PTX113; PTX227; PTX228; PTX154 at 1.) This letter had its intended effect, as customers began contacting both Raffel and Man Wah with concerns about Raffel's products being defective—even though it was Man Wah's infringing cupholders that were failing, not Raffel's.

(PTX220; 6/13/22 Trial Tr. at 1200:16-25; 6/8/22 Trial Tr. at 568:13-569:12.) Such misleading and calculated actions favor trebling of damages. *See Eagleview Techs*., 522 F. Supp. 3d at 54 (the final *Read* factor favored enhancement where, among other things, defendants misled customers about their infringement by creating "uncertainty," "confusion," and "doubt in the market"); *Arctic Cat,* 198 F. Supp. 3d at 1354 (attempt to conceal misconduct by secretly offering to buy the patents and hoping plaintiff did not discover infringement "strongly suggests a lack of transparency and good faith that weighs in favor of enhanced damages").

For the foregoing reasons, Raffel's patent damages award should be trebled—increased from $425,300.00 to $1,275,900.00.

### B.     The Court Should Treble the Trade Dress Infringement Damages.

The Court should also treble the damages awarded for Man Wah's willful infringement of Raffel's trade dress. Like its patent counterpart, the Lanham Act provides that a successful plaintiff may recover up to three times its actual damages. 15 U.S.C. § 1117(a); *see also Badger Meter, Inc. v. Grinnell Corp*., 13 F.3d 1145, 1157 (7th Cir. 1994) (Section 1117(a) confers district court with the discretion to award a plaintiff up to three times its actual damages). "The Seventh Circuit has held that treble damages under Section 1117(a) are justified when trademark infringement is willful and deliberate." *Dunkin' Donuts v. Towns Family*, 1996 U.S. Dist. LEXIS 7982, at *24 (N.D. Ill. June 5, 1996) (citing *Gorenstein Enters. v. Quality Care-USA*, 874 F.2d 431, 435-36 (7th Cir. 1989)); *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 638 (N.D. Ill. 2016) (awarding treble damages under Section 1117(a) due to "[d]efendants' willful violations of the Lanham Act"); *Am. Massage Therapy Ass'n v. Folkers*, 2006 U.S. Dist. LEXIS 110975, at 23-24 (N.D. Ill. Apr. 13, 2006) (awarding treble damages under Section 1117(a) to "operate[] as a deterrent within the boundaries permitted by the Lanham Act").

Courts in other circuits have similarly held that Section 1117(a) "authorizes the trebling of damages for willful trademark infringement." *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 341 (6th Cir. 2010); *see also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (affirming the district court's award of treble damages "given the willfulness of [defendant's Lanham Act] violations"); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) (affirming district court's decision to double the jury award for infringement "[g]iven the substantial evidence of willful infringement"); *Lontex Corp. v. Nike, Inc.*, 2022 U.S. Dist. LEXIS 37334, at *14 (E.D. Pa. Mar. 3, 2022) (trebling damages based on willfulness, stating "[t]he Lanham Act embodies a 'Congressional purpose of making infringement unprofitable.' Preventing an infringer from profiting off infringement is especially important when the infringement is willful."); *Hicken v. Migrant Studios, LLC*, 2014 U.S. Dist. LEXIS 69122, at *7 (M.D. Fla. Apr. 11, 2014) (awarding plaintiff treble damages based on "the willful nature of Defendant's violation"); *Ronaldo Designer Jewelry, Inc. v. Prinzo*, 2017 U.S. Dist. LEXIS 133121, at *20 (S.D. Miss. Aug. 21, 2017) (awarding plaintiff treble damages where defendant's "conduct was willful and intentional"); *Van Burren v. Envii, Inc.*, 2019 U.S. Dist. LEXIS 152592, at *13 (C.D. Cal. Mar. 27, 2019) (trebling plaintiff's damages award where defendant's infringement was willful). "The purpose of awarding treble damages is to provide 'an economic deterrence to those who contemplate the otherwise lucrative profession of counterfeiting.'" *Study Logic, LLC v. Clear Net Plus, Inc.*, 2012 U.S. Dist. LEXIS 135847, at *43-44 (E.D.N.Y. Sept. 21, 2012) (quoting *Polo Fashions, Inc. v. Rabanne*, 661 F. Supp. 89, 98 (S.D. Fla. 1986)); *see Lontex Corp.*, 2022 U.S. Dist. LEXIS 37334, at *15-16 ("A jury verdict finding a major corporation liable, and indeed finding that it acted willfully, should be acknowledged by the Court in granting the request for treble damages. . . . Even if trebling

damages does overcompensate [plaintiff] to some degree, 'it is preferable that [the plaintiff] rather than [the defendant] receive the benefits of [the defendant's] infringement.'") (citation omitted).

Here, the jury found that Man Wah willfully infringed Raffel's trade dress. (Dkt. 439 at 2.) Man Wah knew it was infringing Raffel's products, and flagrantly copied every detail of Raffel's trade dress, even stamping its infringing products with Raffel's patent numbers to "[d]eceive the consumer [and] retailer" as to the origin of Man Wah's knock-off cupholders. (PTX69; *see also* 6/13/22 Trial Tr. 1102:11-18; 6/7/22 Trial Tr. at 248:13-249:11.) Man Wah's Purchasing Director admitted that Man Wah's goal was to copy the appearance of Raffel's black cupholders. (Chen 12/17/19 Dep. Tr. at 92:9-13.) And because Man Wah's infringing cupholders and Raffel's genuine cupholders had the exact same look and feel, Man Wah was able to deceive the market into believing that Raffel supplied the failing knockoff cupholders. The jury clearly expressed its disdain for Man Wah's egregious trade dress infringement and the need to punish Man Wah for its conduct with its $97.5 million punitive damages award. (Dkt. 439 at 3.)

Such intentional and egregious actions, along with the bad faith conduct discussed above in connection with the *Read* factors, clearly support trebling Raffel's trade dress damages under Section 1117(a). *See Gorenstein Enters.*, 874 F.2d at 435-36 (affirming district court's award of treble damages where the infringement was willful and deliberate); *La Quinta*, 603 F.3d at 341 (affirming district court's award of treble damages "[g]iven the abundant evidence that Heartland willfully infringed upon Baymont's trademarks"); *Dunkin' Donuts*, 1996 U.S. Dist. LEXIS 7982, at *29 (awarding treble damages where defendants' actions were "willful, deliberate and malicious"); *MetroPCS*, 215 F. Supp. 3d at 638 (awarding treble damages for "[d]efendants' willful violations of the Lanham Act"); *Folkers*, 2006 U.S. Dist. LEXIS 110975, at *24

(awarding treble damages where defendants' infringement was willful); *Hicken v. Migrant Studios, LLC*, 2014 U.S. Dist. LEXIS 69122, at *7 (M.D. Fla. Apr. 11, 2014) (awarding plaintiff treble damages based on "the willful nature of Defendant's violation"); *Ronaldo Designer Jewelry, Inc. v. Prinzo*, 2017 U.S. Dist. LEXIS 133121, at *20 (S.D. Miss. Aug. 21, 2017) (awarding plaintiff treble damages where defendant's "conduct was willful and intentional").

For the foregoing reasons, Raffel's trade dress damages award should be trebled— increased from $1,181,617.00 to $3,544,851.00.

## II. The Court Should Enhance the Award of Man Wah's Profits for Trade Dress Infringement.

Under the Lanham Act, this Court also has discretion to enhance "the amount of the recovery based on [defendant's] profits" if it finds the amount of the recovery to be inadequate. 15 U.S.C. § 1117(a). This remedy can be utilized in combination with trebling an award of actual damages. *Badger Meter*, 13 F.3d at 1157. Notably, "there is no upper limit on a discretionary increase in an award of profits." 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:90 (5th ed. 2022). While an enhancement of the award of defendant's profits may not be punitive, it may be enhanced where the defendant's conduct was knowing and willful. *See Medline Indus. v. 9121-3140 Que., Inc.*, 2010 U.S. Dist. LEXIS 19945, at *20-21 (D.N.H. Mar. 5, 2010) (enhancing award of defendants' profits by 50 percent based on defendants' deliberate and willful infringement).

In determining whether to enhance an award of defendant's profits, the Court should consider the underlying purposes of the Lanham Act. *Super Duper, Inc. v. Mattel, Inc.*, 2009 U.S. Dist. LEXIS 28751, at *9 (D.S.C. Mar. 31, 2009). These include deterring future misconduct, compensating the plaintiff for its injuries, and awarding plaintiff a full accounting of an infringer's profits. *See Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1351 (7th

Cir. 1994) ("[A]n enhancement might be necessary to ensure that the victim will not once again experience a second loss at the hands of the malefactor. Such an enhancement, made on the basis of specific findings, would not violate the mandate of the statute that the award ought not be punitive."); *Super Duper*, 2009 U.S. Dist. LEXIS 28751, at *11 (enhancing the award to defendant of plaintiff's profits to "fairly compensate[] Defendant and, hopefully, deter Plaintiff from any further unlawful conduct").

At trial, Raffel presented Richard Conroy's expert testimony that Man Wah's profits from selling its cupholder sofas with infringing cupholder were as much as $11.6 million.[1] (6/9/22 Trial Tr. at 774:15-24.) Moreover, the record is replete with evidence of Man Wah's willful and deliberate misconduct, which the jury clearly recognized through its finding of willful infringement. Thus, in order to provide Raffel with a full accounting of Man Wah's profits and to adequately deter future misconduct by Man Wah, the Court should enhance the award of Man Wah's profits. *See Super Duper*, 2009 U.S. Dist. LEXIS 28751, at *9-10; *Medline Indus.*, 2010 U.S. Dist. LEXIS 19945, at *20-21. Such an enhancement would serve the underlying purposes of the Lanham Act and would not be punitive in nature, as it is supported by competent evidence in the record.

## III. The Court Should Find this Case Is "Exceptional" and Award Attorney's Fees.

As this Court is aware, the jury returned verdicts in Raffel's favor on its claims for patent and trade dress infringement. (Dkt. 439.) And under both the Patent Act, 35 U.S.C. § 285, and the Lanham Act, 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable

---

[1] The jury awarded Raffel $5.8 million of Man Wah's profits. (*See* Dkt. 439.) Raffel's request for an enhancement is in no way an indictment or criticism of the amount of Man Wah's profits awarded by the jury. Instead, Raffel is asking the Court to exercise the discretion afforded to it by the Lanham Act to enhance the award to deter Man Wah from future misconduct. *See Super Duper*, 2009 U.S. Dist. LEXIS 28751, at *12.

attorney fees to the prevailing party." The purpose of this remedy is "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000).

In 2014, the Supreme Court rejected the Federal Circuit's "unduly rigid" standard for finding a case "exceptional" under the Patent Act. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014); *see also LHO Chi. River, LLC v. Perillo*, 942 F.3d 384, 388 (7th Cir. 2019) (adopting *Octane Fitness's* 'exceptional case' standard as the governing framework for attorney fees requests under § 1117(a) of the Lanham Act). The Court held that § 285 "imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for exceptional cases." *Octane Fitness*, 572 U.S. at 553.

> An "exceptional" case is "'uncommon,' 'rare,' or 'not ordinary,'" and is
>
> one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion considering the totality of the circumstances.

*Id.* at 553-54. "[T]here is no precise rule or formula for making these determinations." *Id.* at 554 (quotations omitted). Instead, courts should examine the "totality of the circumstances" and exercise their "equitable discretion" in light of the factors used in Copyright Act cases as set forth in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). *Id.*; *see also LHO*, 942 F.3d at 388-89. Those factors may include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6.

While "sanctionable conduct is not the appropriate benchmark" for awarding fees, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555.

Finally and notably, the Court lowered the standard of proof for parties seeking recovery of fees—from "clear and convincing" evidence to preponderance. *Id.* at 557.

### A. Raffel is the Prevailing Party.

Raffel is undisputedly the prevailing party in this case. In addition to securing a preliminary injunction (followed by an order of contempt), the jury returned verdicts in Raffel's favor on every claim at trial. (Dkt. 439.) Moreover, at the close of evidence, the Court dismissed Man Wah's breach of contract counterclaims for lack of standing. (6/16/22 Trial Tr. at 1887:11-16.) Thus, Raffel is eligible for recovery of attorneys' fees as a prevailing party under Sections 285 and 1117(a). *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (A litigant is a "'prevailing part[y]' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.") (quotations omitted); *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1304 (Fed. Cir. 2018) ("the 'touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.'") (defendant prevailed where claim against it had been dismissed with prejudice for lack of standing); *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086-87 (Fed. Cir. 2014) (patentee was prevailing party where it obtained finding of willful infringement at trial).

### B. Man Wah's Willful Infringement Alone Renders this Case Exceptional.

Here, Man Wah's conduct was unreasonable to such a degree that it qualifies as exceptional under Sections 285 and 1117(a). As a threshold matter, the jury concluded that Man Wah willfully infringed Raffel's patent and trade dress. (Dkt. 439.) "While a finding of willful

infringement does not require a finding that a case is exceptional, 'our cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees . . . .'" *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) (citation omitted) (affirming award of fees); *Genes Indus. v. Custom Blinds & Components, Inc.*, 2018 U.S. Dist. LEXIS 21879, at *19 (C.D. Cal. Jan. 29, 2018) ("However, '[a]lthough an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees.' '[T]he general rule [is] that the district court must normally explain why it decides that a case is not exceptional under 35 U.S.C. § 285 when a factual finding of willful infringement has been established and, if exceptional, why it decides not to award attorney fees.'") (citing *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1349 (Fed. Cir. 2011); *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1379 (Fed. Cir. 2002)).

This is no run of the mill case of infringement, as the jury's findings of willfulness reflect. Man Wah ***knew*** it was infringing Raffel's patented products—indeed, Man Wah went so far as to intentionally stamp its counterfeit products with Raffel's patent numbers and other Raffel indicia to "[d]eceive the consumer [and] retailer" into believing that Man Wah's products were authentic to Raffel. (PTX69; *see also* 6/8/22 Trial Tr. at 472:6-11; PTX203 ("dumbest thing we did was have the new supplier use the Raffel patent number."); 6/7/22 Trial Tr. at 248:13-249:11 (Man Wah's infringing cupholder stamped with Raffel's patent number found in customer's product).) Man Wah intentionally infringed Raffel's patent rights and then admitted in company emails that it intended to trick customers into believing that the infringing products belonged to Raffel. (*See, e.g.,* PTX69.)

Man Wah's scheme to infringe and deceive consumers did not stop with copying or selling the infringing product. Indeed, Man Wah also acted in bad faith, with the intent to limit Raffel's market share and harm its reputation amongst customers. Man Wah discouraged its employees from ordering Raffel's products—going so far as to fine one employee for buying too many Raffel products—so that Man Wah could sell more of the infringing products. (PTX86 (email from Linli Li to Man Wah CEO Guy Ray describing Man Wah fining an employee for purchasing from Raffel); Li 12/20/19 Dep. Tr. at 52:19-53:21; 54:4-9.) And after customers began having problems with the infringing products, Man Wah sent a letter to the customers and attempted to **pass the blame onto Raffel** for the problems with the infringing products. (6/8/22 Trial Tr. at 571:2-572:16; PTX113.) These calculated actions are egregious and malicious, demonstrating Man Wah's bad faith and intent to profit from Raffel's patented invention at Raffel's detriment, in blatant disregard of Raffel's patent rights.

Copious evidence also was adduced at trial confirming that Man Wah knew of (or had reckless disregard for) Raffel's patent rights. First, Raffel's Executive Chairman and former President told Man Wah's CEO that the products were patented, and the two men had a conversation about the patents. (6/8/2022 Trial Tr. at 525:11-526:9.) Second, the Raffel products sent to Man Wah were **marked with Raffel's patent numbers**, which gave Man Wah notice that the cupholder was patented. (6/7/22 Trial Tr. at 337:11-338:1; PTX141; Li 12/20/19 Dep. Tr. at 47:25-49:13, 50:5-20 (Man Wah received photos of Raffel's cupholders, which were embossed with the patent number); 6/8/22 Trial Tr. at 513:20-514:20 (Man Wah received samples, which were embossed with patent numbers); 524:22-526:9 (Man Wah's CEO received sample cupholders embossed with patent numbers).) Third, Raffel employees also sent Man Wah's CEO documents showing that the cupholders were patented and sold. (6/7/22 Trial Tr. at 313:16-20;

PTX10 at 11 (email attaching Raffel catalogue indicating products were patented); PTX151 (catalogue); 6/8/22 Trial Tr. at 517:2-518:22 (Raffel informed Man Wah CEO in April 2015 that cupholders were patented); 438:18-24 (playing transcript from Li dep.; "Raffel has told us that the cup has a patent or patents").) Man Wah's CEO even testified that he was "sure" he told his employees to investigate Raffel's patents—but Man Wah proceeded to produce the infringing products in complete disregard for Raffel's patent rights. (G. Ray 1/14/20 Dep. Tr. at 48:24-49:9; *see also* 46:1-19 (acknowledging that he learned about Raffel's patents in 2015 and that Man Wah does not keep track of or investigate other companies' patents).)

The jury's willfulness findings reflect its recognition and understanding of Man Wah's brazen malfeasance. And based on these willfulness findings alone, which are well supported in the record, the Court can and should deem this an exceptional case under Sections 285 and 1117(a). *See Mueller Sports Med., Inc. v. Sportstar Athletics, Inc.*, 2005 U.S. Dist. LEXIS 26883, at *3 (W.D. Wis. Nov. 2, 2005) (awarding fees under § 285 even though court believed question of infringement was close, concluding that jury's willfulness verdict "overrides [the court's view of the evidence"); *R-Boc Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 683 (N.D. Ill. 2017) (awarding fees under § 285 where "defendants deliberately and slavishly copied [plaintiff's] coupler and then engaged in a classic bait-and-switch, passing off their copied couplers as [plaintiff's] to their customers"); *see also 4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 914 (7th Cir. 2019) (district court abused discretion in denying attorneys' fees under § 1117(a) where defendants' infringement was willful and intentional); *Luxottica Grp. S.p.A. v. Li*, 2017 U.S. Dist. LEXIS 21818, at *22 (N.D. Ill. Feb. 15, 2017) ("Attorney's fees are recoverable under 15 U.S.C. § 1117(a) 'in exceptional cases,' including when defendant's conduct is willful."); *Yah Kai World Wide Enters. v. Napper*, 292 F. Supp. 3d 337, 366-67

(D.D.C. 2018) (finding an exceptional case under § 1117 due to defendant's "plainly manifest" willfulness); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 166-67 (E.D.N.Y. 2016) (awarding attorney fees under § 1117 against defendants whose infringement was willful); *Comaper Corp. v. Antec, Inc.*, 2014 U.S. Dist. LEXIS 200693, at *1 n.1 (E.D. Pa. June 11, 2014) ("the jury's finding of willful infringement is in itself sufficient to render this case exceptional under § 285"); *Pergo (Eur.) A.B. v. Stanley Black & Decker, Inc.*, 2018 U.S. Dist. LEXIS 225882, at *8 (N.D. Ga. May 7, 2018) (collecting cases where willfulness supported award of attorney fees under *Octane*).

### C.   The Jury's Punitive Damages Award Illustrates the Exceptional Nature of this Case.

The jury spoke loud and clear that this case is exceptional by awarding Raffel ***$97.5 million*** in punitive damages for Man Wah's willful misappropriation, based on the same facts and conduct as the Lanham Act claim. (Dkt. 439 at 3; Dkt. 442 at 26 (Trade Dress Instruction: "Raffel claims that Man Wah infringed Raffel's trade dress rights in its black ICH cupholder design by copying and using imitations of Raffel's black ICH cupholders"); at 41(Misappropriation Instruction:  "Raffel also claims that Man Wah has misappropriated its trade dress. To prove misappropriation, Raffel must prove: (1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to Raffel.").)

As a matter of common sense, the fact that the jury believed Man Wah's willful malfeasance warranted such a sizeable award—after a mere 5 hours of deliberation—plainly renders this case uncommon and out of the ordinary to justify finding it an exceptional case and awarding fees. *See Whirlpool Corp. v. TST Water, LLC*, 2018 U.S. Dist. LEXIS 52833, at *19-20 (E.D. Tex. Mar. 29, 2018) (case deemed exceptional where jury awarded plaintiff 90% of its

proposed damages, far more than defendant's proposed damages, and where "[t]he jury reached these conclusions within three hours. This case was not close."); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1111 (9th Cir. 1992) ("In awarding punitive damages on Waits' voice misappropriation claim, the jury specifically found that the defendants had acted with oppression, fraud, or malice. That finding qualifies this case as an exceptional one within the meaning of [the Lanham Act]."); *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 984 (S.D. Tex. 1997) ("The jury's award to Plaintiff of $200,000.00 in punitive damages on the [state law] conversion claim supports the Court's conclusion that this is an exceptional case [under § 1117]."); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 1999 U.S. Dist. LEXIS 23246, at *8 (C.D. Cal. Nov. 15, 1999) ("Reasonable attorneys fees [under § 1117] are appropriate in this case because the jury found that West Coast had engaged in despicable conduct sufficient to award punitive damages under California law."); *QS Wholesale, Inc. v. World Mktg.*, 2014 U.S. Dist. LEXIS 196129, at *38 (C.D. Cal. Jan. 7, 2014) (case deemed exceptional based on jury's finding that "infringement was willful, and that it constituted 'oppression, fraud, or malice' sufficient to warrant a punitive damages award").

Here, the jury was instructed that it should award punitive damages ***only*** if it finds that Man Wah acted maliciously ("the result of hatred, ill will, desire for revenge, or inflicted under circumstances where insult or injury is intended") or in intentional disregard for Raffel's rights. (Dkt. 442 at 43.) The jury was instructed further that even if it made such findings, it "[did] not have to award punitive damages. Punitive damages may be awarded or withheld at [its] discretion." (*Id.* at 44.) That the jury proceeded to exercise that discretion and award Raffel $97.5 million provides compelling support for finding this case exceptional.

D.      **Man Wah's Flouting of Court Orders that Resulted in an Order of Contempt Further Supports a Finding of Exceptionality.**

Although Man Wah's egregious misconduct that gave rise to this lawsuit and willful infringement is sufficient to justify an award of attorney's fees, its bad behavior continued into this litigation. To review, in March and July 2019, the Court issued orders which prohibited Man Wah from selling furniture with counterfeit Raffel cup holders. (*See* Dkt. 87, 136, 137.) But despite these clear directives, Man Wah continued to sell thousands of prohibited counterfeit cup holders in the United States throughout 2019. (*See* Dkt. 210 at 5.) Accordingly, the Court found Man Wah in contempt (Dkt. 210 at 7-8), and later imposed sanctions as a result of Man Wah's malfeasance, including payment of Raffel's fees and costs related to the contempt proceedings. (Dkt. 234.)[2]

Man Wah's blatant disregard of this Court's orders, which resulted in a finding of contempt and sanctions, is further evidence that this case is "uncommon" and "not ordinary" for purposes of awarding fees. *Octane Fitness*, 572 U.S. at 553. Indeed, this Court can and should factor in Man Wah's contemptuous behavior and deem this case exceptional. *See Lavatec Laundry Tech. GMBH v. Voss Laundry Sols.*, 2018 U.S. Dist. LEXIS 144487, at *39-42 (D. Conn. Jan. 9, 2018) (awarding fees based on defendant's contempt in violating injunction order, concluding its contempt "makes this case 'exceptional' for purposes of a fee award under the Lanham Act"); *Tannas v. Multichip Display, Inc.*, 2018 U.S. Dist. LEXIS 28889, at *10-11 (C.D. Cal. Feb. 21, 2018) (finding case exceptional and awarding attorney fees under Patent Act based in part on contempt in violating preliminary injunction); *AEVOE Corp. v. AE Tech Co.*, 2015 U.S. Dist. LEXIS 66540, at *3-4 (D. Nev. Apr. 20, 2015) (same); *Unitronics (1989) (R"G) Ltd.*

_____

[2] Raffel will not be seeking a double recovery for these fees and expenses. But Man Wah's misconduct that resulted in the Court's orders of contempt and sanctions is further proof that this case qualifies as exceptional for purposes of awarding fees.

*v. Gharb*, 85 F. Supp. 3d 118, 129-30 (D.D.C. 2015) (awarding attorney fees and deeming case exceptional based on same conduct that supported a finding of contempt).

### E.       This Case is Exceptional Under the Totality of the Circumstances.

Taken together as a whole—Man Wah's intentional and targeted copying of Raffel's products; its passing off its own defective cupholders as Raffel's; its efforts to **blame Raffel** to customers for defects in its knockoff cupholders; its defiance of Court orders by continuing to sell counterfeit products during the course of this litigation; and the jury's recognition of the severity of this misconduct through findings of willfulness and a $97.5 million punitive damage award—plainly render this case exceptional under Sections 285 and 1117(a). *See R-Boc Representatives*, 233 F. Supp. 3d at 684 (awarding fees under § 285 under totality of the circumstances where infringers deliberately copied patentee's products and passed the infringing products off to customers as the patentee's). Indeed, if this case does not qualify as exceptional to warrant an award of fees, what case does?

Awarding fees in this case is also equitable and the right thing to do. As this Court is aware, federal litigation frequently costs millions of dollars.  And in cases like this, where Man Wah chose to infringe as a business strategy and then took every opportunity to drive up the cost of the dispute (such as its bogus inventorship claim), fees and costs multiply even further. This scenario presents a perfect storm for abuse. A willful infringer like Man Wah counts on the fact that the cost of litigation will outweigh the damages obtainable under the federal statutes. As such, wealthy infringers choose to infringe with abandon against smaller companies that cannot risk fighting a case with the prospect of losing money, breaking even, or barely coming out ahead. And even if these smaller companies win, the costs and financial burden of vindicating their intellectual property rights outweigh the benefits. Under these circumstances, awarding attorney fees is necessary to compensate companies like Raffel who stand up against bad actors

who abuse the system this way. An award of fees makes the patent owner whole, and ensures that the damages assessed by the jury go to the company, not to its counsel. *See Vehicle IP, LLC v. GMC*, 2008 U.S. Dist. LEXIS 43426, at *3 (W.D. Wis. June 2, 2008) ("Stated another way, a court may find a case exceptional if the conduct of the losing party would make it grossly unjust for the prevailing party to be left with the burden of litigation expenses.") (citation omitted).

## IV. The Court Should Award Prejudgment Interest to Raffel.

The Seventh Circuit has made clear that there is a presumption that prejudgment interest will be awarded for violations of federal law. *See First Nat'l Bank of Chi. v. Standard Bank of Trust,* 172 F.3d 472, 480 (7th Cir. 1999). Prejudgment interest is "particularly appropriate" where, as here, the violation was intentional or willful. *Gorenstein Enters., Inc. v. Quality Care USA, Inc.,* 874 F.2d 431, 436 (7th Cir. 1989). Prejudgment interest is appropriately applied to awards of both actual damages and unjust enrichment awards. *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2005 U.S. Dist. LEXIS 3069, at *5 (N.D. Ill. Feb. 8, 2005) (awarding prejudgment interest on disgorgement of defendant's profits for claim brought under the Lanham Act). "If prejudgment interest were not available when profits are disgorged . . . [then that] would undermine one of the primary goals of the Lanham Act: to prevent infringement from being a financially attractive way of conducting business." *Id.*

For patent infringement, prejudgment interest is awarded pursuant to 35 U.S.C. §284. "In the typical case an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983); *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1374 (Fed. Cir. 2022). As such, "prejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Gen. Motors*, 461 U.S. at 657; *Kaufman*, 34 F. 4th at 1374; *see also Energy Transp. Grp., Inc. v. William*

*Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) ("The award of prejudgment interest is the rule, not the exception.") (quotation and citation omitted).

Although the Court has discretion to determine the appropriate rate of prejudgment interest and whether interest should be compounded, its determination must be guided by the purpose of prejudgment interest, which "serves to make the patent owner whole, for damages properly include the foregone use of money of which the patentee was wrongly deprived." *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020) ("[P]rejudgment interest should ordinarily be awarded where necessary to afford the plaintiff full compensation for the infringement.") (citation omitted). In the Seventh Circuit, the "practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest." *First Nat'l Bank of Chi.*, 172 F.3d at 480.

"Seventh Circuit law consistently teaches that the norm . . . is to award such prejudgment interest . . . at the compounded prime rate." *SEC v. Kirch*, 263 F. Supp. 2d 1144, 1152 (N.D. Ill. 2003); *Wis. Alumni Research Found. v. Apple, Inc.*, 261 F. Supp. 3d 900, 924 (W.D. Wis. 2017) (collecting cases; awarding interest at prime rate compounded quarterly, "follow[ing] the practice approved by the Federal Circuit and Seventh Circuit, which is also consistent with its own practice, by awarding prejudgment interest based on the prime rate") *reversed in part on other grounds*, 905 F.3d 1341 (Fed. Cir. 2018). In fact, "a district court must explain why it believes it appropriate to deviate from the norm of compound interest, the measure that most completely fulfills the purpose of prejudgment interest of ensuring 'complete compensation.'" *Am. Nat'l Fire Ins. v. Yellow Freight Sys.*, 325 F.3d 924, 938 n.11(7th Cir. 2003); *see also Rasic*

*v. City of Northlake*, 2010 U.S. Dist. LEXIS 86815, at *35 (N.D. Ill. Aug. 24, 2010) ("the compounding should be done on a monthly, and not an annual, basis.").

In light of these governing principles, Raffel should be awarded prejudgment interest based on the compensatory damages awarded by the jury for patent infringement, trade dress infringement, misappropriation, and false marking. In support of its application for prejudgment interest, Raffel submits the declaration and supporting schedules of its financial expert Richard Conroy. (Declaration of Richard M. Conroy ("Conroy Decl."), filed herewith.) Mr. Conroy calculated prejudgment interest for each of the claims using the prime rate, compounded monthly from the time of Man Wah's wrongdoing. (Conroy Decl., ¶ 6.) The prejudgment interest through July 31, 2022, is: $73,226 for patent infringement *Id.* at ¶¶ 2 and 5, Tabs 1 and 2.1); $65,018.00 for false marking (*id.* at ¶¶ 4 and 7, Tabs 1 and 2.2); $998,822 for trade dress infringement unjust enrichment (*id.* at ¶¶ 4 and 7, Tabs 1 and 2.3); $203,487 for lost profits/goodwill (*id.* at ¶¶ 4 and 7, Tabs 1 and 2.4); and $172,211 for misappropriation (*id.* at ¶¶ 4 and 7, Tabs 1 and 2.5)). Thus, the Court should award prejudgment interest in the amount of $1,512,764.[3]

## V.  Man Wah Should Pay for Certain Non-Taxable Costs Incurred by Raffel.

The Court should also award certain non-taxable costs incurred by Raffel. These costs are above and beyond Raffel's taxable costs under 28 U.S.C. § 1920 as set forth in Raffel's Bill of Costs (filed concurrently with this brief), and in addition to attorney's fees under 35 U.S.C. § 285 and 15 U.S.C. § 1117.

Under the Lanham Act, a successful plaintiff may recover "the costs of the action." 15 U.S.C. § 1117(a). These costs include "reasonable costs that the party cannot recover as the 'prevailing party,'" including legal research, deposition expenses, expert witness fees, discovery

---

[3] Prejudgment interest is calculated through July 31, 2022. Raffel will update the prejudgment interest calculation when judgment is entered.

vendor fees, trial technology costs, mediator costs, supersedeas bond costs for preliminary injunctions and travel and lodging costs. *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012), *abrogated on other grounds by Sunearth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016); *Dropbox, Inc. v. Thru Inc.*, 2017 U.S. Dist. LEXIS 33325, at *17-18 (N.D. Cal. Mar. 8, 2017) (awarding Dropbox its non-taxable costs, including discovery vendor fees ($236,055.23), expert witness fees ($162,936.00), and deposition/hearing costs ($20,619.18)), *aff'd*, 728 F. App'x 717 (9th Cir. 2018); *Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, 2009 U.S. Dist. LEXIS 121323, at *19, 24 (S.D.N.Y. Dec. 29, 2009) (defendant was entitled to recover its costs for equipment and technological graphics at trial and indicating travel and lodging costs are recoverable in Lanham Act cases); *Tire Grp. Int'l v. Tire Grp. Inv.*, 2020 U.S. Dist. LEXIS 215560, at *5-6 (S.D. Fla. Nov. 16, 2020) (awarding plaintiff its non-taxable costs under the Lanham Act, including costs associated with Westlaw and Pacer). Courts have recognized that awarding costs associated with the use of technology at trial to aid the prevailing party's presentation to the jury is appropriate since "[c]omputers, computer graphics, digitized documents and other technological advancements have become important tools to the modern-day trial lawyer." *Farberware*, 2009 U.S. Dist. LEXIS 121323, at *24 (quoting *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005)).

Similarly, pursuant to 35 U.S.C. § 285, a court may also award non-taxable costs including those related to travel, food, lodging, telephone, mail, photocopying, facsimile, courier, filing fees, deposition transcripts, subpoena services, and trial technology related services when such expenses are reasonably necessary to the prosecution of the litigation, and adequately documented. *See Third Wave Techs., Inc. v. Stratagene Corp.*, 2006 U.S. Dist. LEXIS 6575, at *12 (W.D. Wis. Feb. 21, 2006) (Crabb, J.) (awarding plaintiff its non-taxable costs under Section

285 for hotel rooms, meals, airline fares, and other travel expenses associated with trial, including extra hotel rooms for work space, because the costs were "necessary for the case" and "standard operating procedure for trials much less complex than this one"); *Vehicle Interface Techs., LLC v. Jaguar Land Rover N. Am., LLC*, 2016 U.S. Dist. LEXIS 77612, at *13-14 (D. Del. June 15, 2016) (awarding travel costs associated with depositions under Section 285); *Universal Elecs. Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1341 (C.D. Cal. 2015) (awarding travel costs associated with appearing in court under Section 285); *Powell v. Home Depot, U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 110301, at *69-75 (S.D. Fla. Sept. 14, 2010) (recommending awarding plaintiff its lodging and travel expenses and costs of in-trial technical assistance with graphics and video under Section 285 because such expenses were "incur[red] in the preparation for and performance of legal services related to the suit"); *report and recommendation adopted in its entirety*, 2010 U.S. Dist. LEXIS 110300 (S.D. Fla. Oct. 18, 2010).

Courts also have awarded costs related to use of a courtroom technology vendor under Section 285, recognizing that such expenses are necessary at trial where witnesses often have to be presented via video and demonstrative exhibits are frequently edited to comply with legal rulings made during the trial. *Powell*, 2010 U.S. Dist. LEXIS 110301, at *74-75 (recommending plaintiff be awarded $38,150.00 in costs for trial technology where several witnesses had to be presented via video and the use of a vendor was necessary to assist with video set up and playback to comply with various legal rulings made during the trial). Similarly, courts have recognized that hotel lodging, meals, airline fare, are necessary expenses in a case, and extra hotel rooms for workspace at trial are "standard operating procedure" even in trials that are not complex. *Third Wave*, 2006 U.S. Dist. LEXIS 6575, at *12; *Powell*, 2010 U.S. Dist. LEXIS

110301, at *69-70 (recommending awarding plaintiff $21,697.58 for lodging and travel expenses associated with depositions and trial).

Finally, federal courts may exercise their inherent authority to sanction actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (internal quotation omitted). "A district court has inherent authority 'to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute.'" *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (quoting *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming award of expert fees based on examples of bad faith and vexatious litigation conduct)). Use of such inherent authority is "reserved for cases where the district court makes a 'finding of fraud or bad faith.'" *Id.* (quoting *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994)). The act of awarding the above-referenced costs serves "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Powell*, 2010 U.S. Dist. LEXIS 110301, at *62 (quoting *Central Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)).

Man Wah's conduct before and during this litigation was clearly in bad faith. For example, once Man Wah's customers encountered issues with the infringing cupholders, Man Wah sent a letter to all of its customers implicitly blaming Raffel for the cupholder failures in an effort to make Raffel "look like the bad guy." (PTX113; PTX154 at 1.) Man Wah also was found in contempt of the preliminary injunction issued by the Court for selling at least 1,400 pieces of furniture containing infringing cupholders between March 21, 2019, and November 2019. (Dkt. 210 at 5-8.)

As outlined below, Raffel seeks to recover its (i) e-discovery vendor costs; (ii) expert witness costs; (iii) courtroom information technology vendor costs; (iv) trial lodging costs; (v) deposition costs; (vi) mediator costs; and (vii) supersedeas bond costs.

### E-Discovery Vendor Costs

Raffel's e-discovery vendor costs relate to hosting/storing the large volume of documents produced by the parties in this case, document intake, and user licenses. Similar to *Dropbox*, the e-discovery vendor fees Raffel requests were "necessary given the large volume of discovery in this case" (over the span of three and a half years) and are "largely related to hosting the voluminous documents produced by [defendant]," as well as reviewing and hosting Raffel's own document productions. 2017 U.S. Dist. LEXIS 33325, at *18 (awarding plaintiff $236,055.23 in e-discovery vendor fees under Section 1117(a) because such fees were necessary given the large volume of discovery in the case). Here, the discovery vendor fees were necessary and should be awarded.

### Expert Witness Costs

Raffel's expert costs include the fees and expenses charged by Ronald Kemnitzer and Richard Conroy. Their testimony was critical to Raffel's claims and damages determination at summary judgment and trial. That is, the use of Raffel's experts was critical in aiding the jury's understanding of the complex legal issues at hand, including patent validity, trade dress infringement, misappropriation, and false marking, as well as the appropriate measure of damages for those claims. As a result, these costs should be awarded under the Lanham Act.

### Courtroom Technology

Raffel incurred costs for its courtroom information technology vendor. Raffel's courtroom technology vendor was essential for playing live and recorded video testimony of

Man Wah's out-of-the country and unexpectedly unavailable witnesses, including Guy Ray and Linhua Huang. The vendor was also critical in preparing videos for deposition designations and evidentiary and demonstrative exhibits at trial. Raffel's courtroom information technology vendor made the handling and presentation of a large number of critical exhibits possible. Indeed, Raffel's courtroom technology vendor was critical to the Court's ability to view documents and follow-along during trial. (*See, e.g.*, 6/7/22 Trial Tr. at 316:20-23 ("The Court: Mr. Scheller, while the witness is identifying the document, the I.T. person want to take a look at my monitor? Because I cannot see what you're seeing you're at right now. Yeah, please, if you'll approach.").) Accordingly, Raffel should be awarded its fees associated with its courtroom technology vendor.

### *Travel and Lodging Costs*

Raffel should also be awarded its costs for attorney and witness lodging during trial, as well as costs for travel and lodging for depositions. Both lodging costs and travel costs were necessarily and reasonably incurred because the depositions took place out-of-state and the trial was held in Milwaukee when Raffel's counsel resides in Madison, Wisconsin. Thus, Raffel should be allowed to recover its lodging and travel costs associated with depositions and trial.

### *Mediator Costs*

Raffel should also be awarded its share of the mediator costs. Mediator "fees are recoverable under the statutes at issue [including 15 U.S.C. §1117] as part of 'reasonable attorney's fees' customarily charged to the client." *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 U.S. Dist. LEXIS 144973 (C.D. Cal. 2010). Thus, the Court should award mediator costs.

***Supersedeas Bond Costs***

Raffel should further be awarded the costs for securing and maintaining the supersedeas bond needed for the preliminary injunction. Federal courts have a long history of awarding bond premiums as reasonable costs, especially when required to secure rights under a preliminary injunction. Section 1117 provides the Court wide discretion to award costs associated with the action. Here, Raffel had no choice but to pay for a bond to secure its rights under the preliminary injunction. Those bond premiums should be recoverable.

**VI.     The Court Should Enter a Permanent Injunction Prohibiting Man Wah from Using Raffel's Patent and Trade Dress.**

For a permanent injunction, a plaintiff must demonstrate: (i) that it has suffered an irreparable injury; (ii) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury (iii) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (iv) that the public interest would not be disserved by a permanent injunction. *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 156-57 (2010). These principles apply equally to disputes arising under the Patent and Lanham Acts. *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006); *N. Am. Van Lines v. N. Am. Moving & Storage*, 2020 U.S. Dist. LEXIS 23842, at *13 (N.D. Ind. Feb. 10, 2020).

Here, all four factors counsel in favor of a permanent injunction.

**A.     Irreparable Harm and Inadequate Remedy at Law**

An irreparable injury is one that cannot be redressed by the available legal remedies, such as an award of money damages. *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 323 F. Supp. 3d 1071, 1075 (W.D. Wis. 2018). The first two factors – irreparable harm[4] and inadequate remedy

---

[4] Pursuant to 15 U.S.C. § 1116(a), Raffel is entitled to a rebuttable presumption of irreparable harm because it won its trade dress claim against Man Wah.

at law – tend to coalesce when the question is whether a prevailing party is entitled to a permanent injunction at the close of a case. *Id.*

Here, Raffel has suffered reputational damage and loss of market share as a result of Man Wah's infringement. *Id.* (damages to reputation and market share recognized as irreparable harms because they have long-term effects that cannot readily be quantified and would not completely be remedied by the payment of royalties on the infringing products actually sold) (citing *Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1345 (Fed. Cir. 2013)); *Spectrum Brands, Inc. v. I&J Apparel, LLC,* 2017 U.S. Dist. LEXIS 80999, at *5 (W.D. Wis. May 25, 2017) (loss of goodwill alone is sufficient for a finding of irreparable harm, and finding such a loss in the continued sale of infringing products by defendants).

At trial, multiple witnesses testified that Man Wah's infringement caused Raffel to suffer reputational damage and to lose market share. (6/7/22 Trial Tr. at 249:16-21; 6/8/22 Trial Tr. at 574:17-575:21). And as discussed above, Man Wah even discouraged its employees from ordering Raffel's products, fining one employee for buying too many Raffel products, to enable Man Wah to sell more of the infringing products. (PTX86 (email from Linli Li to Man Wah CEO Guy Ray describing Man Wah fining an employee for purchasing from Raffel); Li 12/20/19 Dep. Tr. at 52:19-53:21, 54:4-9.) Man Wah CEO Guy Ray also confirmed "there's no doubt" that a defective, infringing cupholder "can hurt a company's credibility" and reputation. (6/13/22 Trial Tr. at 1132:1-22.) The bottom line is that without an injunction Raffel would continue to suffer loss of reputation and market share. This could result in the loss of future business that cannot be readily quantified and thus cannot not be adequately remediated by money damages. *Standard Process, Inc. v. AVC Infinite, LLC,* 2020 U.S. Dist. LEXIS 5098, at *18-19 (W.D. Wis. Jan. 9, 2020).

Moreover, without permanent injunctive relief, Raffel would need to repeatedly file suit any time Man Wah infringe Raffel's patent and trade dress rights in the future. The jury here already found that Man Wah demonstrated a complete disregard of Raffel's rights by awarding $97.5 million in punitive damages. (Dkt. 439.) The Court also already found Man Wah's complete disregard for its legal obligation and this Court's authority when it found Man Wah in contempt for continuing to sell infringing cupholders in violation of the preliminary injunction. (*See* Dkt. 210 at 5-8.) *See Kinsey v. Jambow, Ltd.,* 76 F. Supp. 3d 708, 714 (N.D. Ill. 2014) (entering permanent injunction and noting that "[w]ithout a permanent injunction, the defendants will likely continue their infringing conduct").

Finally, although Man Wah may argue that Raffel's request for an injunction is moot because it has stopped selling the infringing cupholders, "[t]he fact that the defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place." *Ultratec,* 323 F. Supp. 3d at 1078 (quotation omitted). Here, there is no evidence establishing that further infringement will never take place. Indeed, Man Wah's prior disregard for Raffel's patent and trade dress rights undermines any promise not to infringe in the future.

Accordingly, these two factors weigh in favor of a permanent injunction.

## B.     Balance of Hardships

The balance of hardships between Raffel and Man Wah supports a permanent injunction. This factor assesses the relative effect on the parties of granting or denying an injunction. *Apple Inc. v. Samsung Elecs. Co.,* 809 F.3d 633, 645 (Fed. Cir. 2015). In *Apple*, the Federal Circuit affirmed the district court's decision to award a permanent injunction, stating, "[o]n this record, it is clear—Samsung will suffer relatively little harm from Apple's injunction, while Apple is

deprived of its exclusivity and forced to compete against its own innovation usurped by its largest and fiercest competitor." *Id.* at 646.

Here, like in *Apple*, the record is clear. Man Wah, a multi-billion-dollar company, will suffer relatively little harm from Raffel's injunction. (6/10/22 Trial Tr. at 844:2-3.) Indeed, Mah Wah claims it no longer uses the infringing product. Raffel, on the other hand, would be deprived of its exclusivity, forced to compete with Man Wah and its subsidiary, RMT, against its own innovations. (6/8/22 Trial Tr. at 519:7-18.) And without an injunction Raffel will be unable to protect its patent and trade dress and stop Man Wah's non-conforming sales. (6/7/22 Trial Tr. at 224:16-228:12.) *See also Spectrum Brands.*, 2017 U.S. Dist. LEXIS 80999, at *5-6 (balance of harms weighed in favor of trademark owner where no harm would be suffered by an infringer that is enjoined from selling only infringing products). Any harm to Man Wah in requiring it to comply with trademark and patent law "merits no equitable consideration." *Otter Prods., LLC v. Wang,* 2019 U.S. Dist. LEXIS 52916, at *17 (D. Colo. Mar. 28, 2019).

As such, this factor weighs in favor of a permanent injunction.

### C.     Public Interest

Finally, the public interest factor weighs in favor of granting a permanent injunction against Man Wah. The public interest is generally served by granting an injunction against infringers. *Apple*, 809 F.3d at 647 ("[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions."). Here, the public interest favors upholding Raffel intellectual property rights and preventing customer confusion and further harm to Raffel. *Standard Process,* 2020 U.S. Dist. LEXIS 5098, at *18-19 (citing *Spectrum Brands*, 2017 U.S. Dist. LEXIS 80999, at *6). Indeed, the "public has a greater interest in acquiring new technology through the protections provided by the Patent Act than it has in buying 'cheaper knock-offs.'" *Douglas*

*Dynamics*, 717 F.3d at 1346 (reversing district court's denial of a permanent injunction). Man Wah infringed Raffel's trade dress and patent by selling cheaper knock-off cupholders. (PTX204; 6/13/22 Trial Tr. at 1124:8-1125:2.) The public interest favors protecting Raffel's innovations over Man Wah providing the market with defective knockoffs.

As such, the public interest is served by entering a permanent injunction.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment consistent with the jury's verdicts and in accordance with the arguments set forth above.

Dated: August 5, 2022

**MICHAEL BEST & FRIEDRICH LLP**

By:   /s/ John C. Scheller
    John C. Scheller, SBN 1031247
    Shane A. Brunner, SBN 1034128
    Tanya M. Salman, SBN 1089151
    One South Pinckney Street, Suite 700
    P.O. Box 1806
    Madison, WI 53701-1806
    Telephone: 608.257.3501
    Facsimile: 608.283.2275
    Email:  jcscheller@michaelbest.com
          kmalbridge@michaelbest.com
          sabrunner@michaelbest.com
          tmsalman@michaelbest.com

MICHAEL BEST & FRIEDRICH LLP
Melanie J. Reichenberger, SBN 1061510
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Telephone: 414.271.6560
Facsimile: 414.277.0656
Email:
  mjreichenberger@michaelbest.com

MICHAEL BEST & FRIEDRICH LLP
Brianna J. Siebken
444 West Lake Street, Suite 3200
Chicago, IL  60606-0030
Telephone: 312.222.0800
Facsimile: 312.222.0818
Email:  bjsiebken@michaelbest.com

MICHAEL BEST & FRIEDRICH LLP
J. Ryan Gray, SBN 1104649
2501 Blue Ridge Road, Suite 390
Raleigh, NC 27607-6479
Telephone: 984.220.8750
Facsimile: 877.398.5240
Email: jrgray@michaelbest.com

**CASIMIR JONES, S.C.**
Tyler J. Sisk, SBN 1054892
David A. Casimir, SBN 1036453
2275 Deming Way, Suite 310
Middleton, WI 53562
Telephone: 608.662.1277
Facsimile: 608.662.1276
Email:   tjsisk@casimirjones.com
         dacasimir@casimirjones.com

**DAVIS GOLDBERG GALPER PLLC**
Lanny J. Davis
1120 20th St. NW, Suite 700 N
Washington, DC  20036
Telephone:  202.899.3827
Email:  ldavis@dggpllc.com

**Attorneys For Plaintiff Raffel Systems, LLC**